# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>       Plaintiff,<br><br>      v.<br><br>MICHAEL J. LINDELL,<br><br>       Defendant. | Index No.<br><br>**SUMMONS** |

TO:    Michael J. Lindell
        1715 FM 842,
        Lufkin, TX 75901-3119

**YOU ARE HEREBY SUMMONED** to answer the Notice of Motion for Summary

Judgment in Lieu of Complaint and supporting papers in this action, and to serve a copy of your

response to such motion on the undersigned attorneys for Plaintiff, Federal Express Corporation

no later than ten (10) days before the date on which the motion is noticed to be heard (December

19, 2025); and in case of your failure to appear or respond, judgment will be taken against you

by default for the relief demanded.

Venue in this Court is proper pursuant to CPLR Section 503.  Plaintiff designates New

York County as the place of trial.

Dated:  October 17, 2025
         New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

By:   *Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

1

DMS_US.373691595.2

Case 1:25-cv-10053-JGK Document 1-1 Filed 12/03/25 Page 3 of 37

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

FEDERAL EXPRESS CORPORATION,

Plaintiff,

v.

MICHAEL J. LINDELL,

Defendant.

Index No.

**NOTICE OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT**

---

PLEASE TAKE NOTICE that, upon the Affirmation of Jason Bernhardt and Affirmation of Larry Puszko, both sworn to on October 16, 2025, and the Exhibits attached thereto, and the accompanying Memorandum of Law in Support of Motion for Summary Judgment in Lieu of Complaint by Plaintiff, Federal Express Corporation ("FedEx"), the undersigned attorneys will move this Court in the Motion Submission Part, 60 Centre Street, Room 130, New York, New York, on the 19th day of December, 2025, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an Order pursuant to section 3213 of the New York Civil Practice Law and Rules ("CPLR") granting summary judgment in lieu of complaint in favor of FedEx in an amount equal to $2,677,933.31, along with prejudgment and post-judgment interest, all fees and expenses (including costs of suit and attorneys' fees), and such other and further relief as the Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 3213, answering papers, if any, are required to be served upon the undersigned counsel at least ten (10) days prior to the return date of this Motion.

DMS_US.373691593.2

Dated: October 17, 2025
      New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

By:  *Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

DMS_US.373691593.2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION, | |
| Plaintiff, | Index No. |
| v. | |
| MICHAEL J. LINDELL, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT

FAEGRE DRINKER BIDDLE
& REATH LLP
1177 Avenue of the Americas, 41st Floor New
York, New York 10036

*Counsel for Federal Express Corporation*

DMS_US.373691592.2

Case 1:25-cv-10053-JGK   Document 1-1   Filed 12/03/25   Page 6 of 37

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………………. 4

STATEMENT OF FACTS …………………………………………………………………. 4

ARGUMENT …………………………………………………………………………….. 10

CONCLUSION …………………………………………………………………………… 12

2

DMS_US.373691592.2

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Steinberg v. Metro Ent. Corp.*,
    534 N.Y.S.2d 995 (1st Dept. 1988) …………………………………………….. 10

*Strategic Funding Source, Inc. v. Cap. Siding & Constr. LLC*,
    231 N.Y.S.3d 361 (N.Y. Sup. Ct., Albany Cnty. 2025) …………………………… 11

*IOU Cent. Inc. v. Soundview Petroleum, Inc.*,
    223 N.Y.S.3d 530 (N.Y. Sup. Ct., Bronx Cnty. 2025) ………………………….. 11

*GLD Sponsor Member, LLC v. BN Holdings Tr.*,
    204 N.Y.S.3d 922 (N.Y. Sup. Ct., N.Y. Cnty. 2024) …………………………… 12


**Other Authorities**                                                                             **Page(s)**

CPLR 3213 …………………………………………………………………….. 11,12

CPLR 5402 …………………………………………………………………….. 10

CPLR 5406 …………………………………………………………………….. 11

DMS_US.373691592.2

Plaintiff, Federal Express Corporation ("FedEx"), by and through undersigned counsel, respectfully submits this memorandum of law in support of its motion for summary judgment in lieu of complaint pursuant to Section 3213 of the New York Civil Practice Law and Rules ("CPLR").

## PRELIMINARY STATEMENT

This action arises out of a dispute between FedEx and Michael J. Lindell ("Lindell"), the owner of My Pillow, Inc. ("My Pillow").  My Pillow owed FedEx nearly $9 million for shipping services for which My Pillow failed to pay.  My Pillow was only allowed to achieve this level of debt based on the fraud of Lindell, who repeatedly misrepresented My Pillow's willingness and ability to pay for shipments placed with FedEx in order to induce FedEx to continue shipping for My Pillow.

In late February and early June 2025, FedEx filed a complaint against Lindell and My Pillow asserting claims for breach of contract, unjust enrichment, and fraud.  After neither defendant responded to or otherwise answered the complaints filed by FedEx, the United States District Court for the Western District of Tennessee, Western Division entered a default judgment against Lindell and My Pillow.  FedEx now files this motion for summary judgment in lieu of complaint against Lindell based on the default judgment.

## STATEMENT OF FACTS

Federal Express Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee. *See* Affirmation of Jason Bernhardt in Support of Motion for Summary Judgment in Lieu of Complaint ("Bernhardt Affirmation"), at ¶ 3.  Upon information and belief, Lindell is a natural person who is a citizen of and domiciled in the State of Minnesota and may be served at 1715

4

DMS_US.373691592.2

FM 842, Lufkin, TX 75901-3119, or any other place where he may be found.  Bernhardt Affirmation, at ¶ 4.  Upon information and belief, Lindell, through My Pillow, regularly conducts business within the State of New York by continually contracting to supply goods within the state.

In February 2021, FedEx and MP Distribution, LLC (the predecessor of My Pillow) entered into a Transportation Services Agreement (the "Contract").  *See* Affirmation of Larry Puszko in Support of Motion for Summary Judgment in Lieu of Complaint ("Puszko Affirmation"), at ¶ 2.  Over the next several years, the Contract was amended several times to adjust pricing and allow for corporate changes requested by My Pillow's representatives, employees and agents.  *Id*.  On January 10, 2024, My Pillow signed an Amendment to the Contract which set forth the existing terms and conditions under which My Pillow was authorized to ship packages through the FedEx enterprise.  Puszko Affirmation, at ¶ 3.

In January 2024, My Pillow started slow paying its invoices.  Puszko Affirmation, at ¶ 4.  By December 2024, My Pillow materially violated the terms of its Contract with FedEx when it stopped making payments altogether and which left invoices going back to September 2024 open and unpaid.  *Id*.  Despite multiple promises to pay by Lindell and various suggested payment plans, delinquencies increased.  *Id*.  As a result, per the terms of the Contract, FedEx placed My Pillow's account on a cash-only basis and stopped shipping for My Pillow as of December 2024.  *Id*.

On January 13, 2025, My Pillow was sent written notice advising that its shipping accounts with FedEx would be terminated altogether in thirty (30) days due to non-payment of outstanding invoices.  Puszko Affirmation, at ¶ 5.  Demand was also made for payment of all outstanding invoices, then totaling more than $8.5 million.  *Id*.  My Pillow was advised that if

5

DMS_US.373691592.2

payment was not received within thirty (30) days, FedEx would exercise all legal rights and remedies available to it. *Id*. Despite the foregoing notification and demand, My Pillow has not made any payments since receipt of the January 2025 letter. *Id*.

My Pillow was only allowed to continue shipping with FedEx and to incur the outstanding debt currently owed because of repeated, intentional misrepresentations made by Lindell that were specifically designed to, and actually did, induce FedEx to allow My Pillow to continue shipping on credit with FedEx, even though Lindell knew the representations he was making were false when they were made and that neither he nor My Pillow had any intention of actually satisfying the debt owed to FedEx. Puszko Affirmation, at ¶ 6.

A continuing theme in Lindell's communications with FedEx was that funds were available, on the way, and that FedEx would receive payment at any moment bringing My Pillow's debt current. Puszko Affirmation, at ¶ 7. The misrepresentations started in the fall of 2024 with the FrankSpeech (now known as Mike Lindell Media, Corp.) initial public offering that was controlled by Lindell. *Id*. On August 29, 2024, FrankSpeech announced it was going public and offered stock shares for sale to the public. *Id*. Leading up to this announcement, Lindell represented to a FedEx Senior Manager of Revenue Service Operations that Lindell would generate at least $20,000,000 in funds from the IPO and that he would use these funds to pay My Pillow's debt to FedEx. *Id*. Lindell followed this conversation with text messages to assure FedEx of his representations including on August 7, 2024 saying "Good news is we are merging as we speak . . . but can't announce until we get the name change. Then we will have the funds for backend." *Id*. In this context, "backend" referred to the oldest invoices owed by My Pillow, which, at that time, went as far back as January 2024. *Id*.

6

DMS_US.373691592.2

On August 27, 2024, Lindell again assured the FedEx Senior Manager to keep shipping on credit for My Pillow promising that funds were on their way. Puszko Affirmation, at ¶ 8. Lindell texted: "Larry I have great news!!!!  Stock approved . . . live Thursday", referring to the FrankSpeech IPO which had not yet been made public. *Id*. Lindell did not use the funds he generated from this IPO to pay My Pillow's debt to FedEx as he had promised. *Id*.

Shortly thereafter, Lindell promised FedEx that it would get paid from various loans Lindell was obtaining. Puszko Affirmation, at ¶ 9. This included a collateralized loan in the amount of $25,000,000 and a bridge loan Lindell was going to obtain to provide cash flow for My Pillow until the $25,000,000 collateralized loan was finalized. *Id*.

On September 10, 2024, Lindell texted the FedEx Senior Manager assuring him of the funding by providing a letter on My Pillow letterhead, purportedly signed by Jeremiah Pilon, as Deputy General Counsel for My Pillow. Puszko Affirmation, at ¶ 10. The letter was very specific stating: "I am writing to inform [FedEx] that we have secured collateralized funding in the amount of $25 million. This letter is to confirm FedEx's payment priority from the secured funds amounting to $25 million. The $25 million of secured funds are set for disbursement on or before September 30, 2024. We have allotted payment from this dipersment [sic] to FedEx in the amount of $3,000,000 on the date of disbursement." *Id*. Whatever funds Lindell derived from these loans were not used to pay My Pillow's debt to FedEx as Lindell promised. *Id*.

Lindell also promised FedEx that it would get paid from a high-end stock option opportunity he was offered. Puszko Affirmation, at ¶ 11. Specifically, Lindell promised that the money received from the purchase and sale of specific stock options would generate sufficient funding by January 2025 to fully pay FedEx. *Id*. Lindell stated that the investment included

7

DMS_US.373691592.2

SpacEx stock, which was projected to produce high dollar returns that would be used to pay FedEx. *Id*.

On December 20, 2024, Lindell texted the FedEx Senior Manager to assure him the funding was forthcoming stating "The broker called and it sounds like the stock should be for sure in January." Puszko Affirmation, at ¶ 12. This too never happened and whatever funds Lindell generated from this stock scheme were not used to pay FedEx. *Id*.

Similarly, Lindell repeatedly promised that he was personally going to pay FedEx for My Pillow's shipping debts if the company was not able to generate sufficient funds to pay its own debts. Puszko Affirmation, at ¶ 13. At one point, on November 30, 2024, Lindell sent the FedEx Senior Manager an investment statement identifying an investment account with Forte Capital Group, held in Lindell's name, indicating investment assets of almost $14,000,000. *Id*.

From late October 2024 through December 2024, Lindell also repeatedly represented to FedEx that he had as much as $5,000,000 being held in an "escrow account" by his merchant server due to a UCC-1 filing that he signed to secure a loan with a merchant cash advance lender at a very high interest rate. Puszko Affirmation, at ¶ 14. Lindell advised that he obtained a release of the UCC-1 filing but was having some trouble obtaining a release of the escrow funds. *Id*. Lindell promised that he was going to obtain a return of the funds and use them to pay the My Pillow debt to FedEx, but that never happened. *Id*.

With respect to all of these representations made by Lindell, he made them at a time that he was informed FedEx was in the process of revoking My Pillow's credit privileges, stopping shipments for My Pillow altogether, or turning over My Pillow's accounts to debt collectors. Puszko Affirmation, at ¶ 15. Thus, Lindell made representations to prevent each of these things from happening, but Lindell knew his representations were false when they were made and he

8

specifically intended FedEx to rely on the representations to keep shipments moving through the FedEx system on credit.

FedEx did rely on Lindell's representations and allowed My Pillow to continue shipping on credit. Puszko Affirmation, at ¶ 16. Between August of 2024 and the time that FedEx terminated My Pillow's accounts, the My Pillow debt ballooned from approximately $5.5M to $8.8M based solely on the misrepresentations made by Lindell. *Id*. Indeed, had Lindell fulfilled his representations, FedEx would not have suffered this increase in debt owed by My Pillow and would have either stopped shipping for My Pillow altogether or revoked My Pillow's credit privileges so that any shipments made would have to be pre-paid in advance. *Id*.

Based on the above, on February 27, 2025, FedEx filed a complaint (the "Original Complaint") against My Pillow in the United States District Court for the Western District of Tennessee, Western Division asserting claims for breach of contract and unjust enrichment. *See* Docket No. 1 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). My Pillow was served with the Original Complaint on March 4, 2025. *See* Docket No. 12 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

On June 6, 2025, FedEx filed a First Amended Complaint (the "First Amended Complaint") against both My Pillow and Lindell, now adding a fraud claim against Lindell. *See* Docket No. 13 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). On the same day, both Lindell and My Pillow were served with the First Amended Complaint. *See* Docket No. 15, 16 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

After neither Lindell nor My Pillow responded to or otherwise answered the Original Complaint or the First Amended Complaint despite their deadlines to do so, on July 7, 2025, FedEx requested that the Clerk enter default as to both defendants so that FedEx could proceed

9

DMS_US.373691592.2

with a Motion for Default Judgment to establish the damages to be awarded as to each defendant. *See* Docket No. 17 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The clerk entered a default against Lindell and My Pillow on July 8, 2025. *See* Docket No. 18 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

On July 10, 2025, FedEx filed a Motion for Entry of Default Judgment against Lindell and My Pillow. *See* Docket No. 19 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

On August 1, 2025, the United States District Court for the Western District of Tennessee, Western Division entered an Order Granting Motion for Entry of Default Judgment, finding My Pillow liable to FedEx in the amount of $8,809,056.31 in compensatory damages and finding Lindell jointly and severally liable to FedEx in the amount of $2,677,933.31 in compensatory damages (the "Default Judgment"). *See* Docket No. 24, 25 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The Court additionally awarded court costs and 4.08% yearly in postjudgment interest pursuant to 28 U.S.C. § 1961(a). *Id*.

FedEx has not received any amount owed to it pursuant to the Default Judgment. Puszko Affirmation, at ¶ 17; Bernhardt Affirmation, at ¶ 10.

## ARGUMENT

Pursuant to CPLR 5402, when an authenticated copy of a foreign judgment is filed in the office of any county clerk of the state of New York, the foreign judgment is treated in the same manner as a judgment of the Supreme Court of the State of New York. CPLR 5402. However, since the Default Judgment was entered by default, it may not be directly filed with the Court Clerk pursuant to CPLR 5402. *See Steinberg v. Metro Ent. Corp.*, 534 N.Y.S.2d 995, 996 (1st Dept. 1988) ("Article 54 does not apply to foreign judgments obtained by a default in appearance[.]").

10

DMS_US.373691592.2

CPLR 5406 does provide that "[t]he right of a judgment creditor to proceed by an action on the judgment or a motion for summary judgment in lieu of complaint, instead of proceeding under this article, remains unimpaired." CPLR 5406. Thus, where the foreign judgment was entered upon default, the plaintiff may proceed pursuant to CPLR 3213 for summary judgment in lieu of complaint. *See Strategic Funding Source, Inc. v. Cap. Siding & Constr. LLC*, 231 N.Y.S.3d 361, at \*3 (N.Y. Sup. Ct., Albany Cnty. 2025) (internal citation omitted) ("Pursuant to CPLR [] 3213, where, as here, the action is 'based on . . . any judgment' [including one by default], the accelerated process of commencing the action upon the motion for summary judgment in lieu of complaint is authorized."). Section 3213 of the CPLR specifically provides in relevant part: "[w]hen an action is based upon . . . any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint." CPLR 3213.

"As a general rule, to establish its prima facie entitlement to judgment as a matter of law in an action upon a judgment, a plaintiff must produce an authenticated or exemplified copy of a judgment entered in its favor and against the defendant, and make a showing that the judgment has not been satisfied in whole or in part." *IOU Cent. Inc. v. Soundview Petroleum, Inc.*, 223 N.Y.S.3d 530, \*1 (N.Y. Sup. Ct., Bronx Cnty. 2025). "The plaintiff must also show that the defendant was properly served with the summons and motion papers in the instant action." *Id*. (internal citations omitted).

To avoid summary judgment, "the defendant in a CPLR 3213 motion-action must file opposition papers that 'set forth . . . any defenses he may have on the merits and . . . lay bare his evidentiary proof supporting any such defenses.' If a defendant fails altogether to oppose the CPLR 3213 motion, the motion-action will be treated as unopposed and resolved accordingly,

11

without need for a separate application to the clerk or default-judgment motion under CPLR 3215." *GLD Sponsor Member, LLC v. BN Holdings Tr.*, 204 N.Y.S.3d 922, *2 (N.Y. Sup. Ct., N.Y. Cnty. 2024)* (internal citations omitted).

Here, because the Default Judgment was entered by Default, FedEx may proceed pursuant to CPLR 3213 for summary judgment in lieu of complaint. To establish its prima facie entitlement to judgment as a matter of law, FedEx has produced an authenticated copy of the judgment entered in its favor and against Lindell and has shown that the judgment has not been satisfied in whole or in part. Specifically, Mr. Bernhardt attached an authenticated copy of the Default Judgment to the Bernhardt Affirmation as Exhibit A. Moreover, Mr. Bernhardt and Mr. Puszko affirmed that "FedEx has not received any amount owed to it pursuant to the Default Judgment." Puszko Affirmation, at ¶ 17; Bernhardt Affirmation, at ¶ 10. FedEx will also properly serve Lindell with the summons and motion papers in the instant action. Accordingly, FedEx is entitled to summary judgment in lieu of complaint against Lindell.

**CONCLUSION**

For the foregoing reasons, FedEx respectfully requests that this Court grant its motion for summary judgment in lieu of complaint pursuant to CPLR Section 3213 and enter judgment for FedEx in an amount equal to $2,677,933.31, along with prejudgment and post-judgment interest, all fees and expenses (including costs of suit and attorneys' fees), and such other and further relief as this Court deems just and proper.

12

DMS_US.373691592.2

Dated: October 17, 2025
New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

*/s/ Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

13

DMS_US.373691592.2

Case 1:25-cv-10053-JGK    Document 1-1    Filed 12/03/25    Page 18 of 37

**CERTIFICATION PURSUANT TO 22 N.Y.C.R.R. SECTION 202.8-b**

I, Marsha J. Indych, hereby certify that the word count of this Memorandum of Law in Support of Motion for Summary Judgment in Lieu of Complaint complies with the word count limits of 22 N.Y.C.R.R. Section 202.8-b and Commercial Division Rule 17 (22 N.Y.C.R.R. § 202.70.17(iii)). According to the word-processing system used to prepare this Memorandum, the total word count for all printed text exclusive of the material omitted under 22 N.Y.C.R.R. § 202.8b(c) and Commercial Division Rule 17 is 2,748 words.

Dated: October 17, 2025
New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

*/s/ Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

14

DMS_US.373691592.2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION, | Index No. |
| Plaintiff, | **AFFIRMATION OF JASON BERNHARDT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT** |
| v. | |
| MICHAEL J. LINDELL, | |
| Defendant. | |

I, Jason Bernhardt, affirm as follows under the penalty of perjury:

1.      I am in-house counsel at Federal Express Corporation ("FedEx").  I am fully familiar with the facts set forth in this Affirmation, based upon, among other things, my own personal knowledge and my role at FedEx.  FedEx has authorized me to submit this Affirmation in support of its Motion for Summary Judgment in Lieu of Complaint, pursuant to CPLR Section 3213.

2.      This action arises out of a dispute between FedEx and Michael J. Lindell ("Lindell"), the owner of My Pillow, Inc. ("My Pillow") regarding almost $9,000,000 in unpaid shipping charges and related fees owed for shipments FedEx provided to My Pillow.

3.      Federal Express Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee.

4.      Upon information and belief, Lindell is a natural person who is a citizen of and domiciled in the State of Minnesota and may be served at 1715 FM 842, Lufkin, TX 75901-3119, or any other place where he may be found.

5.      On February 27, 2025, FedEx filed a complaint (the "Original Complaint") against My Pillow in the United States District Court for the Western District of Tennessee,

1

DMS_US.373927117.1

Western Division asserting claims for breach of contract and unjust enrichment. *See* Docket No. 1 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). My Pillow was served with the Original Complaint on March 4, 2025. *See* Docket No. 12 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

6.    On June 6, 2025, FedEx filed a First Amended Complaint (the "First Amended Complaint") against both My Pillow and Lindell, now adding a fraud claim against Lindell. *See* Docket No. 13 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). On the same day, both Lindell and My Pillow were served with the First Amended Complaint. *See* Docket No. 15, 16 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

7.    After neither Lindell nor My Pillow responded to or otherwise answered the Original Complaint or the First Amended Complaint despite their deadlines to do so, on July 7, 2025, FedEx requested that the Clerk enter default as to both defendants so that FedEx could proceed with a Motion for Default Judgment to establish the damages to be awarded as to each defendant. *See* Docket No. 17 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The clerk entered a default against Lindell and My Pillow on July 8, 2025. *See* Docket No. 18 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

8.    On July 10, 2025, FedEx filed a Motion for Entry of Default Judgment against Lindell and My Pillow. *See* Docket No. 19 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

9.    On August 1, 2025, the United States District Court for the Western District of Tennessee, Western Division entered an Order Granting Motion for Entry of Default Judgment, finding My Pillow liable to FedEx in the amount of $8,809,056.31 in compensatory damages and finding Lindell jointly and severally liable to FedEx in the amount of $2,677,933.31 in compensatory damages (the "Default Judgment"). *See* Docket No. 24, 25 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The Court additionally awarded court costs and 4.08% yearly in

2

DMS_US.373927117.1

Case 1:25-cv-10053-JGK   Document 1-1   Filed 12/03/25   Page 21 of 37

postjudgment interest pursuant to 28 U.S.C. § 1961(a). *Id.* An authenticated copy of the Default

Judgment is attached hereto as **Exhibit A**.

10.    FedEx has not received any amount owed to it pursuant to the Default Judgment

I affirm this 16th day of October 2025, under the penalties of perjury under the laws of

New York, which may include a fine or imprisonment, that the foregoing is true, and I

understand that this document may be filed in an action or proceeding in a court of law.

_____

Jason Bernhardt

3

## CERTIFICATION PURSUANT TO 22 N.Y.C.R.R. SECTION 202.8-b

I, Marsha J. Indych, hereby certify that the word count of this Affirmation complies with the word count limits of 22 N.Y.C.R.R. Section 202.8-b and Commercial Division Rule 17 (22 N.Y.C.R.R. § 202.70.17(iii)). According to the word-processing system used to prepare this Affirmation, the total word count for all printed text exclusive of the material omitted under 22 N.Y.C.R.R. § 202.8b(c) and Commercial Division Rule 17 is 593 words.

Dated: October 17, 2025  
New York, New York

FAEGRE DRINKER BIDDLE  
& REATH LLP

By: */s/ Marsha J. Indych*  
Marsha J. Indych  
1177 Avenue of the Americas,  
41st Floor  
New York, New York 10036  
(212) 248-3140  
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

4

DMS_US.373927117.1

**EXHIBIT A**

DMS_US.373927117.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-02222-JPM-atc |
| | ) | |
| v. | ) | |
| | ) | |
| MY PILLOW, INC. and | ) | |
| MICHAEL J. LINDELL, | ) | |
| | ) | |
| Defendants. | ) | |

## JUDGMENT

**JUDGMENT BY COURT.** This action having come before the Court on Plaintiff's Motion for Entry of Default Judgment, (ECF No. 19), and the Court having entered an Order Granting Motion for Default Judgment, (ECF No. 24),

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Court's Order, judgment is entered in favor of Plaintiff and against Defendant My Pillow, Inc., in the amount of $8,809,056.31, and against Defendant Michael J. Lindell jointly and severally in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.

**APPROVED:**

/s/ Jon P. McCalla
_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

August 1, 2025
_____
Date

CERTIFIED TRUE COPY
WENDY R. OLIVER, CLERK

DEPUTY CLERK

**FILED: NEW YORK COUNTY CLERK 10/17/2025 07:52 PM**
INDEX NO. 659206/2025
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 10/17/2025

Case 1:25-cv-10053-JGK    Document 1-1    Filed 12/03/25    Page 25 of 37

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-02222-JPM-atc |
| | ) | |
| v. | ) | |
| | ) | |
| MY PILLOW, INC. and | ) | |
| MICHAEL J. LINDELL, | ) | |
| | ) | |
| Defendants. | ) | |

## JUDGMENT

**JUDGMENT BY COURT.** This action having come before the Court on Plaintiff's Motion for Entry of Default Judgment, (ECF No. 19), and the Court having entered an Order Granting Motion for Default Judgment, (ECF No. 24),

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Court's Order, judgment is entered in favor of Plaintiff and against Defendant My Pillow, Inc., in the amount of $8,809,056.31, and against Defendant Michael J. Lindell jointly and severally in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.

**APPROVED:**

/s/ Jon P. McCalla
_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

August 1, 2025
_____
Date

CERTIFIED TRUE COPY
WENDY R. OLIVER, CLERK

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-02222-JPM-atc |
| | ) | |
| v. | ) | |
| | ) | |
| MY PILLOW, INC. and | ) | |
| MICHAEL J. LINDELL, | ) | |
| | ) | |
| Defendants. | ) | |

**JUDGMENT**

**JUDGMENT BY COURT.** This action having come before the Court on Plaintiff's Motion for Entry of Default Judgment, (ECF No. 19), and the Court having entered an Order Granting Motion for Default Judgment, (ECF No. 24),

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Court's Order, judgment is entered in favor of Plaintiff and against Defendant My Pillow, Inc., in the amount of $8,809,056.31, and against Defendant Michael J. Lindell jointly and severally in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.

**APPROVED:**

/s/ Jon P. McCalla
_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

August 1, 2025
_____
Date

**CERTIFIED TRUE COPY**
WENDY R. OLIVER, CLERK
_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

FEDERAL EXPRESS CORPORATION,    )
    )
    Plaintiff,    )    Case No. 2:25-cv-02222-JPM-atc
    )
v.    )
    )
MY PILLOW, INC. and    )
MICHAEL J. LINDELL,    )
    )
    Defendants.    )

## JUDGMENT

**JUDGMENT BY COURT.** This action having come before the Court on Plaintiff's Motion for Entry of Default Judgment, (ECF No. 19), and the Court having entered an Order Granting Motion for Default Judgment, (ECF No. 24),

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Court's Order, judgment is entered in favor of Plaintiff and against Defendant My Pillow, Inc., in the amount of $8,809,056.31, and against Defendant Michael J. Lindell jointly and severally in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.

**APPROVED:**

/s/ Jon P. McCalla
_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

August 1, 2025
_____
Date

CERTIFIED TRUE COPY
WENDY R. OLIVER, CLERK

_____
DEPUTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

FEDERAL EXPRESS CORPORATION,

      Plaintiff,

      v.

MICHAEL J. LINDELL,

      Defendant.

Index No.

**AFFIRMATION OF LARRY PUSZKO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT**

---

I, Larry Puszko, affirm as follows under the penalty of perjury:

1. I am a Senior Manager of Revenue Services Operations at Federal Express Corporation ("FedEx"). I am fully familiar with the facts set forth in this Affirmation, based upon, among other things, my own personal knowledge and my role at FedEx. FedEx has authorized me to submit this Affirmation in support of its Motion for Summary Judgment in Lieu of Complaint, pursuant to CPLR Section 3213.

2. In February 2021, FedEx and MP Distribution, LLC (the predecessor of My Pillow, Inc. ("My Pillow") entered into a Transportation Services Agreement (the "Contract"). Over the next several years, the Contract was amended several times to adjust pricing and allow for corporate changes requested by My Pillow's representatives, employees and agents.

3. On January 10, 2024, My Pillow signed an Amendment to the Contract which set forth the existing terms and conditions under which My Pillow was authorized to ship packages through the FedEx enterprise.

4. In January 2024, My Pillow started slow paying its invoices. By December 2024, My Pillow materially violated the terms of its Contract with FedEx when it stopped making payments altogether and which left invoices going back to September 2024 open and unpaid.

1

DMS_US.373927116.1

Despite multiple promises to pay by the owner of My Pillow, Michael J. Lindell ("Lindell") and various suggested payment plans, delinquencies increased. As a result, per the terms of the Contract, FedEx placed My Pillow's account on a cash-only basis and stopped shipping for My Pillow as of December 2024.

5. On January 13, 2025, My Pillow was sent written notice advising that its shipping accounts with FedEx would be terminated altogether in thirty (30) days due to non-payment of outstanding invoices. Demand was also made for payment of all outstanding invoices, then totaling more than $8.5 million. My Pillow was advised that if payment was not received within thirty (30) days, FedEx would exercise all legal rights and remedies available to it. Despite the foregoing notification and demand, My Pillow has not made any payments since receipt of the January 2025 letter.

6. My Pillow was only allowed to continue shipping with FedEx and to incur the outstanding debt currently owed because of repeated, intentional misrepresentations made by Lindell that were specifically designed to, and actually did, induce FedEx to allow My Pillow to continue shipping on credit with FedEx, even though Lindell knew the representations he was making were false when they were made and that neither he nor My Pillow had any intention of actually satisfying the debt owed to FedEx.

7. A continuing theme in Lindell's communications with FedEx was that funds were available, on the way, and that FedEx would receive payment at any moment bringing My Pillow's debt current. The misrepresentations started in the fall of 2024 with the FrankSpeech (now known as Mike Lindell Media, Corp.) initial public offering that was controlled by Lindell. On August 29, 2024, FrankSpeech announced it was going public and offered stock shares for sale to the public. Leading up to this announcement, Lindell represented to me that he would

2

DMS_US.373927116.1

generate at least $20,000,000 in funds from the IPO and that he would use these funds to pay My Pillow's debt to FedEx. Lindell followed this conversation with text messages to assure FedEx of his representations including on August 7, 2024 saying "Good news is we are merging as we speak . . . but can't announce until we get the name change. Then we will have the funds for backend." In this context, "backend" referred to the oldest invoices owed by My Pillow, which, at that time, went as far back as January 2024.

8. On August 27, 2024, Lindell again assured me to keep shipping on credit for My Pillow promising that funds were on their way. Lindell texted: "Larry I have great news!!!! Stock approved . . . live Thursday", referring to the FrankSpeech IPO which had not yet been made public. Lindell did not use the funds he generated from this IPO to pay My Pillow's debt to FedEx as he had promised.

9. Shortly thereafter, Lindell promised me that FedEx would get paid from various loans Lindell was obtaining. This included a collateralized loan in the amount of $25,000,000 and a bridge loan Lindell was going to obtain to provide cash flow for My Pillow until the $25,000,000 collateralized loan was finalized.

10. On September 10, 2024, Lindell texted me assuring me of the funding by providing a letter on My Pillow letterhead, purportedly signed by Jeremiah Pilon, as Deputy General Counsel for My Pillow. The letter was very specific stating: "I am writing to inform [FedEx] that we have secured collateralized funding in the amount of $25 million. This letter is to confirm FedEx's payment priority from the secured funds amounting to $25 million. The $25 million of secured funds are set for disbursement on or before September 30, 2024. We have allotted payment from this dipersment [sic] to FedEx in the amount of $3,000,000 on the date of

3

DMS_US.373927116.1

disbursement." Whatever funds Lindell derived from these loans were not used to pay My Pillow's debt to FedEx as Lindell promised.

11. Lindell also promised me that FedEx would get paid from a high-end stock option opportunity he was offered. Specifically, Lindell promised that the money received from the purchase and sale of specific stock options would generate sufficient funding by January 2025 to fully pay FedEx. Lindell stated that the investment included SpacEx stock, which was projected to produce high dollar returns that would be used to pay FedEx.

12. On December 20, 2024, Lindell texted me to assure me the funding was forthcoming stating "The broker called and it sounds like the stock should be for sure in January." This too never happened and whatever funds Lindell generated from this stock scheme were not used to pay FedEx.

13. Similarly, Lindell repeatedly promised that he was personally going to pay FedEx for My Pillow's shipping debts if the company was not able to generate sufficient funds to pay its own debts. At one point, on November 30, 2024, Lindell sent me a photo of an investment statement identifying an investment account with Forte Capital Group, held in Lindell's name, indicating investment assets of almost $14,000,000.

14. From late October 2024 through December 2024, Lindell also repeatedly represented that he had as much as $5,000,000 being held in an "escrow account" by his merchant server due to a UCC-1 filing that he signed to secure a loan with a merchant cash advance lender at a very high interest rate. Lindell advised that he obtained a release of the UCC-1 filing but was having some trouble obtaining a release of the escrow funds. Lindell promised that he was going to obtain a return of the funds and use them to pay the My Pillow debt to FedEx, but that never happened.

4

DMS_US.373927116.1

15. With respect to all of these representations made by Lindell, he made them at a time that he was informed FedEx was in the process of revoking My Pillow's credit privileges, stopping shipments for My Pillow altogether, or turning over My Pillow's accounts to debt collectors.

16. FedEx did rely on Lindell's representations and allowed My Pillow to continue shipping on credit. Between August of 2024 and the time that FedEx terminated My Pillow's accounts, the My Pillow debt ballooned from approximately $5.5M to $8.8M based solely on the misrepresentations made by Lindell. Indeed, had Lindell fulfilled his representations, FedEx would not have suffered this increase in debt owed by My Pillow and would have either stopped shipping for My Pillow altogether or revoked My Pillow's credit privileges so that any shipments made would have to be pre-paid in advance. If I had known that Lindell's representations were false, My Pillow's credit privileges and ability to ship with FedEx without pre-paying for shipments would have ended at least by mid-September 2024. After that time, My Pillow's debt increased by $2,677,933.31

17. FedEx has not received any amount owed to it pursuant to the Default Judgment.

I affirm this 16th day of October, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
Larry Puszko

DMS_US.373927116.1

5

INDEX NO. 659206/2025

## CERTIFICATION PURSUANT TO 22 N.Y.C.R.R. SECTION 202.8-b

I, Marsha J. Indych, hereby certify that the word count of this Affirmation complies with the word count limits of 22 N.Y.C.R.R. Section 202.8-b and Commercial Division Rule 17 (22 N.Y.C.R.R. § 202.70.17(iii)). According to the word-processing system used to prepare this Affirmation, the total word count for all printed text exclusive of the material omitted under 22 N.Y.C.R.R. § 202.8b(c) and Commercial Division Rule 17 is 1,400 words.

Dated: October 17, 2025
      New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

By: */s/ Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

6

DMS_US.373927116.1



UCS-840
(rev. 12/16/2024)

# REQUEST FOR JUDICIAL INTERVENTION

**SUPREME** COURT, COUNTY OF **NEW YORK**

Index No: _____     Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | Judge Assigned |
| | RJI Filed Date |

**CAPTION**     Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

FEDERAL EXPRESS CORPORATION

Plaintiff(s)/Petitioner(s)

-against-

MICHAEL J. LINDELL

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING**     Check only one box and specify where indicated.

**COMMERICIAL**
- ⚪ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ⚪ Contract
- ⚪ Insurance (where insurance company is a party, except arbitration)
- ⚪ UCC (includes sales and negotiable instruments)
- ⦿ Other Commercial (*specify*): Fraud
  *NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ⚪ Asbestos
- ⚪ Environmental (*specify*): _____
- ⚪ Medical, Dental or Podiatric Malpractice
- ⚪ Motor Vehicle
- ⚪ Products Liability (*specify*): _____
- ⚪ Other Negligence (*specify*): _____
- ⚪ Other Professional Malpractice (specify): _____
- ⚪ Other Tort (specify): _____

**MATRIMONIAL**
- ⚪ Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**     Specify how many properties the application includes: _____
- ⚪ Condemnation
- ⚪ Mortgage Foreclosure (*specify*): ⚪Residential  ⚪Commercial
  Property Address: _____
  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ⚪ Partition
  *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ⚪ Tax Certiorari (*specify*):  Section:_____  Block:_____  Lot:_____
- ⚪ Tax Foreclosure
- ⚪ Other Real Property (*specify*): _____

**SPECIAL PROCEEDINGS**
- ⚪ Child-Parent Security Act (*specify*): ⚪Assisted Reproduction  ⚪Surrogacy Agreement
- ⚪ CPLR Article 75 – Arbitration  [see *NOTE* in **COMMERCIAL** section]
- ⚪ CPLR Article 78 – Proceeding against a Body or Officer
- ⚪ Election Law
- ⚪ Extreme Risk Protection Order
- ⚪ MHL Article 9.60 – Kendra's Law
- ⚪ MHL Article 10 – Sex Offender Confinement (*specify*): ⚪Initial  ⚪Review
- ⚪ MHL Article 81 (Guardianship)
- ⚪ Other Mental Hygiene (*specify*): _____
- ⚪ Other Special Proceeding (*specify*): _____

**OTHER MATTERS**
- ⚪ Certificate of Incorporation/Dissolution  [see *NOTE* in **COMMERCIAL** section]
- ⚪ Emergency Medical Treatment
- ⚪ Habeas Corpus
- ⚪ Local Court Appeal
- ⚪ Mechanic's Lien
- ⚪ Name Change/Sex Designation Change
- ⚪ Pistol Permit Revocation Hearing
- ⚪ Sale or Finance of Religious/Not-for-Profit Property
- ⚪ Other (*specify*): _____

**STATUS OF ACTION OR PROCEEDING**     Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ⦿ | ⚪ | If yes, date filed: _10/17/2025_ |
| Has a summons and complaint or summons with notice been served? | ⚪ | ⦿ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ⦿ | ⚪ | If yes, judgment date: _08/01/2025_ |

**NATURE OF JUDICIAL INTERVENTION**     Check one box only and enter additional information where indicated.

- ⚪ Infant's Compromise
- ⚪ Extreme Risk Protection Order Application
- ⚪ Note of Issue/Certificate of Readiness
- ⚪ Notice of Medical, Dental or Podiatric Malpractice     Date Issue Joined: _____
- ⦿ Notice of Motion     Relief Requested: Judgment - Summary in Lieu of Complaint     Return Date: _12/19/2025_
- ⚪ Notice of Petition     Relief Requested: _____     Return Date: _____
- ⚪ Order to Show Cause     Relief Requested: _____     Return Date: _____
- ⚪ Other Ex Parte Application     Relief Requested: _____
- ⚪ Partition Settlement Conference
- ⚪ Request for Preliminary Conference
- ⚪ Residential Mortgage Foreclosure Settlement Conference
- ⚪ Waiver of Court Costs, Fees, and Expenses
- ⚪ Writ of Habeas Corpus
- ⚪ Other (specify): _____

1 of 2

Case 1:25-cv-10053-JGK   Document 1-1   Filed 12/03/25   Page 35 of 37

**RELATED CASES**  List any related actions.  For Matrimonial cases, list any related criminal or Family Court cases.  If none, leave blank.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES**  For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided.
If additional space is required, complete and attach the **RJI ADDENDUM (UCS-840A)**.

| Un-Rep | Parties — List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants — For represented parties, provide attorney's name, firm name, address, phone and email.  For unrepresented parties, provide party's address, phone and email. | Issue Joined — For each defendant, indicate if issue has been joined. | Insurance Carriers — For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: FEDERAL EXPRESS CORPORATION  Role(s): Plaintiff | MARSHA INDYCH, FAEGRE DRINKER BIDDLE & REATH LLP, 1177 Avenue of the Americas 41st Floor, New York, NY 10036, 212-248-3140, marsha.indych@faegredrinker.com | ◉ YES  ○ NO | |
| ☒ | Name: MICHAEL J. LINDELL  Role(s): Defendant | 1715 FM 842, Lufkin, TX 75901-3119 | ○ YES  ◉ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: __12/19/2025__

_/s/ MARSHA J INDYCH_

_____
Signature

__4542510__
Attorney Registration Number

**MARSHA J INDYCH**
Print Name



**New York State Unified Court System**

# Request for Judicial Intervention
# Commercial Division Addendum

**Supreme Court
County of New York**

| **Plaintiff/Petitioner** (persons/entities that started the case): <br> Federal Express Corporation | **Index #:** |
|---|---|
| **Defendant/Respondent** (persons/entities the case is against): <br> Michael J. Lindell | |

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g., unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g., sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; technology transactions and/or commercial disputes involving or arising out of technology; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code, excluding those concerning individual cooperative or condominium units

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions (without consideration of the monetary threshold)

☐ Commercial class actions (without consideration of the monetary threshold)

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g., directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures (without consideration of the monetary threshold)

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues (where the applicable agreement provides for the arbitration to be heard outside the United States, the monetary threshold set forth in 22 NYCRR 202.70(a) shall not apply)

 **ADA Accommodations** ada@nycourts.gov     **Spoken or Sign Language Interpreters** interpreter@nycourts.gov    **COURT Help** **1-800-COURT-NY** **(268-7869)**

**UCS-840C** (01/2024)          Page **2** of **2**        **Index #:**

Plaintiff/Petitioner's claim for compensatory damages, exluding punitive damages, interest, costs and counsel fees claimed:  $2677933.31

Plaintiff/Petitioner's claim for equitable or declaratory relief, including a brief description of the intended benefit, right being protected, or injury being averted through the equitable or declaratory relief sought and its monetary value:

Defendant/Respondent's counterclaims:

 • For counterclaims seeking monetary relief, provide a brief description of the claim, including the amount of compensatory damages sought, excluding punitive damages, interest, costs, and counsel fees claimed

 • For counterclaims seeking equitable or declaratory relief, provide a brief description, including the intended benefit, right being protected, or injury being averted through the relief sought and its monetary value

I request that this case is assigned to the Commercial Division. I certify that the case meets the Commercial Division's jurisdictional requirements as set forth in 22 NYCRR 202.70(a), (b) and (c).

 Dated:   10/17/2025                        MARSHA J INDYCH
                                                                   Signature

                                                                   MARSHA J INDYCH
                                                                   Print Name

*This form was generated by NYSCEF*

2 of 2