UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. LINDELL,<br><br>   Defendant. | Case No. 25-cv-10053 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF FEDERAL EXPRESS<br>CORPORATION'S MOTION FOR SUMMARY JUDGMENT</u>**

FAEGRE DRINKER BIDDLE
& REATH LLP

Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

-and-

Ryan M. Messina (*Pro Hac Vice*)
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801
(302) 467-4200
ryan.messina@faegredrinker.com

*Counsel for Federal Express Corporation*

## TABLE OF CONTENTS

**Page(s)**

STATEMENT OF FACTS ………………………………………………………………. 1

ARGUMENT ………………………………………………………………………… 7

CONCLUSION ……………………………………………………………………….. 9

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) …………………………………….. 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) …………………………………………. 7, 8

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) ………………………………… 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ………………… 7

*United States v. Barteck*, No. 23 MISC. 205 (LGS),
    2024 WL 1604631 (S.D.N.Y. Apr. 12, 2024) ……………………………………………… 8

*Wiener v. AXA Equitable Life Ins. Co.*, 113 F.4th 201, 213 (2d Cir. 2024) ……………………… 9


**Other Authorities**

Fed. R. Civ. P. 56  ……………………………………………………………………… 7, 8

28 U.S. Code § 1963  ………………………………………………………………………... 8

Fed. R. App. P. 4  ………………………………………………………………………….. 9

Plaintiff, Federal Express Corporation ("FedEx"), by and through undersigned counsel, respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 seeking summary judgment (this "Summary Judgment Motion") in favor of FedEx and against Defendant, Michael J. Lindell ("Lindell").  Specifically, FedEx respectfully requests that this Court register and adopt the Tennessee Judgment (as defined below) against Lindell, and in favor of FedEx, in the amount of $2,677,933.31 in compensatory damages, plus court costs and postjudgment interest.

## STATEMENT OF FACTS

1.      Lindell owns My Pillow, Inc. ("My Pillow").

2.      In February 2021, FedEx and MP Distribution, LLC (the predecessor of My Pillow) entered into a Transportation Services Agreement (the "Contract").  Puszko Affirmation, at ¶ 2.[3] Over the next several years, the Contract was amended several times to adjust pricing and allow for corporate changes requested by My Pillow's representatives, employees and agents.  *Id*.  On January 10, 2024, My Pillow signed an Amendment to the Contract which set forth the existing terms and conditions under which My Pillow was authorized to ship packages through the FedEx enterprise.  Puszko Affirmation, at ¶ 3.

3.      In January 2024, My Pillow started slow paying its invoices.  Puszko Affirmation, at ¶ 4.  By December 2024, My Pillow materially violated the terms of its Contract with FedEx when it stopped making payments altogether and which left invoices going back to September 2024 open and unpaid.  *Id*.  Despite multiple promises to pay by Lindell and various suggested payment plans, delinquencies increased.  *Id*.  As a result, per the terms of the Contract, FedEx

---

[3]      The *Affirmation of Larry Puszko in Support of Motion for Summary Judgment in Lieu of Complaint* ("Puszko Affirmation") was filed at NYSCEF Doc. No. 5 (N.Y. Sup. Ct., N.Y. Cnty., Index No. 659206/2025) and is also attached hereto as **Exhibit D**.

placed My Pillow's account on a cash-only basis and stopped shipping for My Pillow as of December 2024. *Id*.

4. On January 13, 2025, My Pillow was sent written notice advising that its shipping accounts with FedEx would be terminated altogether in thirty (30) days due to non-payment of outstanding invoices. Puszko Affirmation, at ¶ 5. Demand was also made for payment of all outstanding invoices, then totaling more than $8.5 million. *Id*. My Pillow was advised that if payment was not received within thirty (30) days, FedEx would exercise all legal rights and remedies available to it. *Id*. Despite the foregoing notification and demand, My Pillow has not made any payments since receipt of the January 2025 letter. *Id*.

5. My Pillow was only allowed to continue shipping with FedEx and to incur the outstanding debt currently owed because of repeated, intentional misrepresentations made by Lindell that were specifically designed to, and actually did, induce FedEx to allow My Pillow to continue shipping on credit with FedEx, even though Lindell knew the representations he was making were false when they were made and that neither he nor My Pillow had any intention of actually satisfying the debt owed to FedEx. Puszko Affirmation, at ¶ 6.

6. A continuing theme in Lindell's communications with FedEx was that funds were available, on the way, and that FedEx would receive payment at any moment bringing My Pillow's debt current. Puszko Affirmation, at ¶ 7. The misrepresentations started in the fall of 2024 with the FrankSpeech (now known as Mike Lindell Media, Corp.) initial public offering that was controlled by Lindell. *Id*. On August 29, 2024, FrankSpeech announced it was going public and offered stock shares for sale to the public. *Id*. Leading up to this announcement, Lindell represented to a FedEx Senior Manager of Revenue Service Operations that Lindell would generate at least $20,000,000 in funds from the IPO and that he would use these funds to pay My

2

Pillow's debt to FedEx. *Id.* Lindell followed this conversation with text messages to assure FedEx of his representations including on August 7, 2024 saying "Good news is we are merging as we speak . . . but can't announce until we get the name change. Then we will have the funds for backend." *Id.* In this context, "backend" referred to the oldest invoices owed by My Pillow, which, at that time, went as far back as January 2024. *Id.*

7.     On August 27, 2024, Lindell again assured the FedEx Senior Manager to keep shipping on credit for My Pillow promising that funds were on their way. Puszko Affirmation, at ¶ 8. Lindell texted: "Larry I have great news!!!! Stock approved . . . live Thursday", referring to the FrankSpeech IPO which had not yet been made public. *Id.* Lindell did not use the funds he generated from this IPO to pay My Pillow's debt to FedEx as he had promised. *Id.*

8.     Shortly thereafter, Lindell promised FedEx that it would get paid from various loans Lindell was obtaining. Puszko Affirmation, at ¶ 9. This included a collateralized loan in the amount of $25,000,000 and a bridge loan Lindell was going to obtain to provide cash flow for My Pillow until the $25,000,000 collateralized loan was finalized. *Id.*

9.     On September 10, 2024, Lindell texted the FedEx Senior Manager assuring him of the funding by providing a letter on My Pillow letterhead, purportedly signed by Jeremiah Pilon, as Deputy General Counsel for My Pillow. Puszko Affirmation, at ¶ 10. The letter was very specific stating: "I am writing to inform [FedEx] that we have secured collateralized funding in the amount of $25 million. This letter is to confirm FedEx's payment priority from the secured funds amounting to $25 million. The $25 million of secured funds are set for disbursement on or before September 30, 2024. We have allotted payment from this dipersment [sic] to FedEx in the amount of $3,000,000 on the date of disbursement." *Id.* Whatever funds Lindell derived from these loans were not used to pay My Pillow's debt to FedEx as Lindell promised. *Id.*

3

10.     Lindell also promised FedEx that it would get paid from a high-end stock option opportunity he was offered.  Puszko Affirmation, at ¶ 11.  Specifically, Lindell promised that the money received from the purchase and sale of specific stock options would generate sufficient funding by January 2025 to fully pay FedEx.  *Id*.  Lindell stated that the investment included SpacEx stock, which was projected to produce high dollar returns that would be used to pay FedEx. *Id*.

11.     On December 20, 2024, Lindell texted the FedEx Senior Manager to assure him the funding was forthcoming stating "The broker called and it sounds like the stock should be for sure in January."  Puszko Affirmation, at ¶ 12.  This too never happened and whatever funds Lindell generated from this stock scheme were not used to pay FedEx.  *Id.*

12.     Similarly, Lindell repeatedly promised that he was personally going to pay FedEx for My Pillow's shipping debts if the company was not able to generate sufficient funds to pay its own debts.  Puszko Affirmation, at ¶ 13.  At one point, on November 30, 2024, Lindell sent the FedEx Senior Manager an investment statement identifying an investment account with Forte Capital Group, held in Lindell's name, indicating investment assets of almost $14,000,000.  *Id*.

13.     From late October 2024 through December 2024, Lindell also repeatedly represented to FedEx that he had as much as $5,000,000 being held in an "escrow account" by his merchant server due to a UCC-1 filing that he signed to secure a loan with a merchant cash advance lender at a very high interest rate.  Puszko Affirmation, at ¶ 14.  Lindell advised that he obtained a release of the UCC-1 filing but was having some trouble obtaining a release of the escrow funds. *Id*.  Lindell promised that he was going to obtain a return of the funds and use them to pay the My Pillow debt to FedEx, but that never happened.  *Id*.

4

14.     With respect to all of these representations made by Lindell, he made them at a time that he was informed FedEx was in the process of revoking My Pillow's credit privileges, stopping shipments for My Pillow altogether, or turning over My Pillow's accounts to debt collectors. Puszko Affirmation, at ¶ 15.  Thus, Lindell made representations to prevent each of these things from happening, but Lindell knew his representations were false when they were made and he specifically intended FedEx to rely on the representations to keep shipments moving through the FedEx system on credit.

15.     FedEx did rely on Lindell's representations and allowed My Pillow to continue shipping on credit.  Puszko Affirmation, at ¶ 16.  Between August of 2024 and the time that FedEx terminated My Pillow's accounts, the My Pillow debt ballooned from approximately $5.5M to $8.8M based solely on the misrepresentations made by Lindell.  *Id*.  Indeed, had Lindell fulfilled his representations, FedEx would not have suffered this increase in debt owed by My Pillow and would have either stopped shipping for My Pillow altogether or revoked My Pillow's credit privileges so that any shipments made would have to be pre-paid in advance.  *Id*.

16.     Based on the above, on February 27, 2025, FedEx filed a complaint (the "Original Complaint") against My Pillow in the United States District Court for the Western District of Tennessee, Western Division asserting claims for breach of contract and unjust enrichment.  *See* Docket No. 1 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).  My Pillow was served with the Original Complaint on March 4, 2025.  *See* Docket No. 12 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

17.     On June 6, 2025, FedEx filed a First Amended Complaint (the "First Amended Complaint") against both My Pillow and Lindell, now adding a fraud claim against Lindell.  *See* Docket No. 13 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).  On the same day, both Lindell and My

Pillow were served with the First Amended Complaint. *See* Docket No. 15, 16 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

18.   After neither Lindell nor My Pillow responded to or otherwise answered the Original Complaint or the First Amended Complaint despite their deadlines to do so, on July 7, 2025, FedEx requested that the Clerk enter default as to both defendants so that FedEx could proceed with a Motion for Default Judgment to establish the damages to be awarded as to each defendant. *See* Docket No. 17 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The clerk entered a default against Lindell and My Pillow on July 8, 2025. *See* Docket No. 18 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

19.   On July 10, 2025, FedEx filed a Motion for Entry of Default Judgment against Lindell and My Pillow. *See* Docket No. 19 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

20.   On August 1, 2025, the United States District Court for the Western District of Tennessee, Western Division entered an Order Granting Motion for Entry of Default Judgment, finding My Pillow liable to FedEx in the amount of $8,809,056.31 in compensatory damages and finding Lindell jointly and severally liable to FedEx in the amount of $2,677,933.31 in compensatory damages (the "Tennessee Judgment"). *See* Docket No. 24, 25 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The Court additionally awarded court costs and postjudgment interest. *Id*.

21.   Lindell did not appeal the Tennessee Judgment. *See generally*, W.D. Tenn. Case 2:25-cv-02222-JPM-atc.

22.     FedEx has not received any amount owed to it pursuant to the Tennessee Judgment. Puszko Affirmation, at ¶ 17; Bernhardt Affirmation, at ¶ 10.[4]

23.     On October 17, 2025, FedEx filed a Motion for Summary Judgment in Lieu of Complaint against Lindell pursuant to New York Civil Practice Law and Rules ("CPLR") 3213 in the Supreme Court of the Stat of New York, County of New York requesting that a judgment be entered in favor of FedEx in an amount equal to $2,677,933.31, along with prejudgment and post-judgment interest, all fees and expenses (including costs of suit and attorneys' fees), and such other and further relief as the Court deems just and proper (the "State Court Summary Judgment Action"). NYSCEF Doc. No. 2 (N.Y. Sup. Ct., N.Y. Cnty., Index No. 659206/2025).

24.     On or about December 2, 2025, Lindell was served with the State Court Summary Judgment Action.  Docket No. 4.

25.     On December 3, 2025, Lindell removed the State Court Summary Judgment Action to this Court.  NYSCEF Doc. No. 8 (N.Y. Sup. Ct., N.Y. Cnty., Index No. 659206/2025).

26.     On March 18, 2026, this Court entered an Order requiring FedEx to file a complaint and motion for summary judgment by March 31, 2026.  Docket No. 7.

## ARGUMENT

27.     Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A summary judgment motion is the procedural mechanism which enables a court to isolate and dispose of claims which are factually unsupported.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

---

[4]     The Affirmation of Jason Bernhardt in Support of Motion for Summary Judgment in Lieu of Complaint ("Bernhardt Affirmation") was filed at NYSCEF Doc. No. 4 (N.Y. Sup. Ct., N.Y. Cnty., Index No. 659206/2025) and is attached hereto as **Exhibit C**.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the entry of summary judgment is appropriate if the pleadings, depositions, written discovery responses, and affidavits indicate that there is no genuine issue of material fact as a matter of law.  *See* Fed. R. Civ. P. 56(c).

28.    Once the initial burden is satisfied by the movant, the burden shifts to the non-movant to articulate specific facts validating the existence of a genuine issue of material fact.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

29.    Pursuant to 28 U.S. Code § 1963, "[a] judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown."  Upon registration, the judgment will "have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."  *Id*.

30.    The Tennessee Judgment, entered by the United States District Court for the Western District of Tennessee, Western Division, was a judgment in an action for the recovery of money because the Tennessee District Court found Lindell jointly and severally liable to FedEx in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.  *See United States v. Barteck*, No. 23 MISC. 205 (LGS), 2024 WL 1604631 (S.D.N.Y. Apr. 12, 2024) ("Whether a judgment is eligible for registration under § 1963 turns on the nature of the judgment, not the nature of the originating action. . . . Monetary restitution is a judgment for the recovery of money[.]").

31.    Attached hereto as **Exhibit A** is a certified copy of the Tennessee Judgment.

32.    The Tennessee Judgment was entered on August 1, 2025. *See* Docket No. 24, 25 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The deadline for Lindell to appeal the Tennessee Judgment was September 1, 2025 pursuant to Fed. R. App. P. 4(a)(1)(A). Lindell did not appeal the Tennessee Judgment. Thus, the Tennessee Judgment is a final judgment. *See Wiener v. AXA Equitable Life Ins. Co.*, 113 F.4th 201, 213 (2d Cir. 2024) (noting that the failure to file a notice of appeal within 30 days divests the Circuit Court of appellate jurisdiction).

33.    FedEx has not received any amount owed to it pursuant to the Tennessee Judgment. Puszko Affirmation, at ¶ 17; Bernhardt Affirmation, at ¶ 10.

34.    Thus, there is no genuine issue of material fact that FedEx is entitled, as a matter of law, to have the Tennessee Judgment registered and adopted by the United States District Court for the Southern District of New York.

## CONCLUSION

WHEREFORE, FedEx respectfully requests that this Court (1) enter the proposed order attached hereto as **Exhibit B** granting the Summary Judgment Motion; (2) register and adopt the Tennessee Judgment finding Lindell jointly and severally liable to FedEx in the amount of $2,677,933.31 in compensatory damages, plus court costs and postjudgment interest; and (3) grant such other relief as the Court deems just and proper.

Dated:  March 31, 2026

FAEGRE DRINKER BIDDLE
& REATH LLP

/s/        *Ryan M. Messina*
Ryan M. Messina (*Pro Hac Vice*)
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801
(302) 467-4200
ryan.messina@faegredrinker.com

-and-

Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

10

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,    ) | |
|        ) | |
|      Plaintiff,     ) | Case No. 2:25-cv-02222-JPM-atc |
|        ) | |
| v.       ) | |
|        ) | |
| MY PILLOW, INC. and     ) | |
| MICHAEL J. LINDELL,     ) | |
|        ) | |
|      Defendants.     ) | |

## JUDGMENT

**JUDGMENT BY COURT.** This action having come before the Court on Plaintiff's Motion for Entry of Default Judgment, (ECF No. 19), and the Court having entered an Order Granting Motion for Default Judgment, (ECF No. 24),

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Court's Order, judgment is entered in favor of Plaintiff and against Defendant My Pillow, Inc., in the amount of $8,809,056.31, and against Defendant Michael J. Lindell jointly and severally in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.

**APPROVED:**

/s/ Jon P. McCalla

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

August 1, 2025
Date

CERTIFIED TRUE COPY
WENDY R. OLIVER, CLERK

DEPUTY CLERK

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. LINDELL,<br><br>Defendant. | Case No. 25-cv-10053 |

## ORDER GRANTING PLAINTIFF, FEDERAL EXPRESS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Upon the Summary Judgment Motion, the accompanying Memorandum of Law,[5] Plaintiff's Rule 56.1 Statement of Undisputed Material Facts, and upon all prior proceedings and pleadings,

**IT IS HEREBY ORDERED** that:

1.      The Summary Judgment Motion is granted;

2.      The judgment of the United States District Court for the Western District of Tennessee, Western Division, finding Michael J. Lindell jointly and severally liable to Federal Express Corporation in the amount of $2,677,933.31 in compensatory damages, plus court costs and postjudgment interest, is hereby registered and adopted by this Court pursuant to 28 U.S. Code § 1963.

---

[5]      Defined terms shall have the meaning ascribed to them in the *Memorandum of Law in Support of Plaintiff Federal Express Corporation's Motion for Summary Judgment.*

1

3. This Court shall retain jurisdiction over the implementation of this order.

Dated:

_____
**HON. JOHN G. KOELTL**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT C**

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FEDERAL EXPRESS CORPORATION,

        Plaintiff,

        v.

MICHAEL J. LINDELL,

        Defendant.

Index No.

**AFFIRMATION OF JASON BERNHARDT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT**

I, Jason Bernhardt, affirm as follows under the penalty of perjury:

1. I am in-house counsel at Federal Express Corporation ("FedEx"). I am fully familiar with the facts set forth in this Affirmation, based upon, among other things, my own personal knowledge and my role at FedEx. FedEx has authorized me to submit this Affirmation in support of its Motion for Summary Judgment in Lieu of Complaint, pursuant to CPLR Section 3213.

2. This action arises out of a dispute between FedEx and Michael J. Lindell ("Lindell"), the owner of My Pillow, Inc. ("My Pillow") regarding almost $9,000,000 in unpaid shipping charges and related fees owed for shipments FedEx provided to My Pillow.

3. Federal Express Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee.

4. Upon information and belief, Lindell is a natural person who is a citizen of and domiciled in the State of Minnesota and may be served at 1715 FM 842, Lufkin, TX 75901-3119, or any other place where he may be found.

5. On February 27, 2025, FedEx filed a complaint (the "Original Complaint") against My Pillow in the United States District Court for the Western District of Tennessee,

1

DMS_US.373927117.1

Case 1:25-cv-10053-JGK    Document 12    Filed 03/31/26    Page 21 of 32

Western Division asserting claims for breach of contract and unjust enrichment. *See* Docket No. 1 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). My Pillow was served with the Original Complaint on March 4, 2025. *See* Docket No. 12 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

6. On June 6, 2025, FedEx filed a First Amended Complaint (the "First Amended Complaint") against both My Pillow and Lindell, now adding a fraud claim against Lindell. *See* Docket No. 13 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). On the same day, both Lindell and My Pillow were served with the First Amended Complaint. *See* Docket No. 15, 16 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

7. After neither Lindell nor My Pillow responded to or otherwise answered the Original Complaint or the First Amended Complaint despite their deadlines to do so, on July 7, 2025, FedEx requested that the Clerk enter default as to both defendants so that FedEx could proceed with a Motion for Default Judgment to establish the damages to be awarded as to each defendant. *See* Docket No. 17 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The clerk entered a default against Lindell and My Pillow on July 8, 2025. *See* Docket No. 18 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

8. On July 10, 2025, FedEx filed a Motion for Entry of Default Judgment against Lindell and My Pillow. *See* Docket No. 19 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc).

9. On August 1, 2025, the United States District Court for the Western District of Tennessee, Western Division entered an Order Granting Motion for Entry of Default Judgment, finding My Pillow liable to FedEx in the amount of $8,809,056.31 in compensatory damages and finding Lindell jointly and severally liable to FedEx in the amount of $2,677,933.31 in compensatory damages (the "Default Judgment"). *See* Docket No. 24, 25 (W.D. Tenn. Case 2:25-cv-02222-JPM-atc). The Court additionally awarded court costs and 4.08% yearly in

DMS_US.373927117.1

Case 1:25-cv-10053-JGK    Document 12    Filed 03/31/26    Page 22 of 32

postjudgment interest pursuant to 28 U.S.C. § 1961(a). *Id.* An authenticated copy of the Default

Judgment is attached hereto as **Exhibit A**.

10. FedEx has not received any amount owed to it pursuant to the Default Judgment

I affirm this 16th day of October 2025, under the penalties of perjury under the laws of

New York, which may include a fine or imprisonment, that the foregoing is true, and I

understand that this document may be filed in an action or proceeding in a court of law.

_____

Jason Bernhardt

3

Case 1:25-cv-10053-JGK    Document 12    Filed 03/31/26    Page 23 of 32

**CERTIFICATION PURSUANT TO 22 N.Y.C.R.R. SECTION 202.8-b**

I, Marsha J. Indych, hereby certify that the word count of this Affirmation complies with

the word count limits of 22 N.Y.C.R.R. Section 202.8-b and Commercial Division Rule 17 (22

N.Y.C.R.R. § 202.70.17(iii)).  According to the word-processing system used to prepare this

Affirmation, the total word count for all printed text exclusive of the material omitted under 22

N.Y.C.R.R. § 202.8b(c) and Commercial Division Rule 17 is 593 words.

Dated:  October 17, 2025
        New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

By:  */s/ Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

4

DMS_US.373927117.1

**EXHIBIT A**

DMS_US.373927117.1

5

Case 1:25-cv-10053-JGK    Document 12    Filed 03/31/26    Page 25 of 32

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-02222-JPM-atc |
| | ) | |
| v. | ) | |
| | ) | |
| MY PILLOW, INC. and | ) | |
| MICHAEL J. LINDELL, | ) | |
| | ) | |
| Defendants. | ) | |

## JUDGMENT

**JUDGMENT BY COURT.** This action having come before the Court on Plaintiff's Motion for Entry of Default Judgment, (ECF No. 19), and the Court having entered an Order Granting Motion for Default Judgment, (ECF No. 24),

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Court's Order, judgment is entered in favor of Plaintiff and against Defendant My Pillow, Inc., in the amount of $8,809,056.31, and against Defendant Michael J. Lindell jointly and severally in the amount of $2,677,933.31, plus an award of court costs and post-judgment interest.

**APPROVED:**

/s/ Jon P. McCalla
_____

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

August 1, 2025
_____
Date

CERTIFIED TRUE COPY
WENDY R. OLIVER, CLERK

_____
DEPUTY CLERK

**EXHIBIT D**

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FEDERAL EXPRESS CORPORATION,

        Plaintiff,

        v.

MICHAEL J. LINDELL,

        Defendant.

Index No.

**AFFIRMATION OF LARRY PUSZKO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT**

I, Larry Puszko, affirm as follows under the penalty of perjury:

1.      I am a Senior Manager of Revenue Services Operations at Federal Express Corporation ("FedEx"). I am fully familiar with the facts set forth in this Affirmation, based upon, among other things, my own personal knowledge and my role at FedEx. FedEx has authorized me to submit this Affirmation in support of its Motion for Summary Judgment in Lieu of Complaint, pursuant to CPLR Section 3213.

2.      In February 2021, FedEx and MP Distribution, LLC (the predecessor of My Pillow, Inc. ("My Pillow") entered into a Transportation Services Agreement (the "Contract"). Over the next several years, the Contract was amended several times to adjust pricing and allow for corporate changes requested by My Pillow's representatives, employees and agents.

3.      On January 10, 2024, My Pillow signed an Amendment to the Contract which set forth the existing terms and conditions under which My Pillow was authorized to ship packages through the FedEx enterprise.

4.      In January 2024, My Pillow started slow paying its invoices. By December 2024, My Pillow materially violated the terms of its Contract with FedEx when it stopped making payments altogether and which left invoices going back to September 2024 open and unpaid.

1

DMS_US.373927116.1

Despite multiple promises to pay by the owner of My Pillow, Michael J. Lindell ("Lindell") and various suggested payment plans, delinquencies increased. As a result, per the terms of the Contract, FedEx placed My Pillow's account on a cash-only basis and stopped shipping for My Pillow as of December 2024.

5. On January 13, 2025, My Pillow was sent written notice advising that its shipping accounts with FedEx would be terminated altogether in thirty (30) days due to non-payment of outstanding invoices. Demand was also made for payment of all outstanding invoices, then totaling more than $8.5 million. My Pillow was advised that if payment was not received within thirty (30) days, FedEx would exercise all legal rights and remedies available to it. Despite the foregoing notification and demand, My Pillow has not made any payments since receipt of the January 2025 letter.

6. My Pillow was only allowed to continue shipping with FedEx and to incur the outstanding debt currently owed because of repeated, intentional misrepresentations made by Lindell that were specifically designed to, and actually did, induce FedEx to allow My Pillow to continue shipping on credit with FedEx, even though Lindell knew the representations he was making were false when they were made and that neither he nor My Pillow had any intention of actually satisfying the debt owed to FedEx.

7. A continuing theme in Lindell's communications with FedEx was that funds were available, on the way, and that FedEx would receive payment at any moment bringing My Pillow's debt current. The misrepresentations started in the fall of 2024 with the FrankSpeech (now known as Mike Lindell Media, Corp.) initial public offering that was controlled by Lindell. On August 29, 2024, FrankSpeech announced it was going public and offered stock shares for sale to the public. Leading up to this announcement, Lindell represented to me that he would

2

DMS_US.373927116.1

generate at least $20,000,000 in funds from the IPO and that he would use these funds to pay My Pillow's debt to FedEx. Lindell followed this conversation with text messages to assure FedEx of his representations including on August 7, 2024 saying "Good news is we are merging as we speak . . . but can't announce until we get the name change. Then we will have the funds for backend." In this context, "backend" referred to the oldest invoices owed by My Pillow, which, at that time, went as far back as January 2024.

8. On August 27, 2024, Lindell again assured me to keep shipping on credit for My Pillow promising that funds were on their way. Lindell texted: "Larry I have great news!!!! Stock approved . . . live Thursday", referring to the FrankSpeech IPO which had not yet been made public. Lindell did not use the funds he generated from this IPO to pay My Pillow's debt to FedEx as he had promised.

9. Shortly thereafter, Lindell promised me that FedEx would get paid from various loans Lindell was obtaining. This included a collateralized loan in the amount of $25,000,000 and a bridge loan Lindell was going to obtain to provide cash flow for My Pillow until the $25,000,000 collateralized loan was finalized.

10. On September 10, 2024, Lindell texted me assuring me of the funding by providing a letter on My Pillow letterhead, purportedly signed by Jeremiah Pilon, as Deputy General Counsel for My Pillow. The letter was very specific stating: "I am writing to inform [FedEx] that we have secured collateralized funding in the amount of $25 million. This letter is to confirm FedEx's payment priority from the secured funds amounting to $25 million. The $25 million of secured funds are set for disbursement on or before September 30, 2024. We have allotted payment from this dipersment [sic] to FedEx in the amount of $3,000,000 on the date of

3

DMS_US.373927116.1

disbursement." Whatever funds Lindell derived from these loans were not used to pay My Pillow's debt to FedEx as Lindell promised.

11.    Lindell also promised me that FedEx would get paid from a high-end stock option opportunity he was offered. Specifically, Lindell promised that the money received from the purchase and sale of specific stock options would generate sufficient funding by January 2025 to fully pay FedEx. Lindell stated that the investment included SpacEx stock, which was projected to produce high dollar returns that would be used to pay FedEx.

12.    On December 20, 2024, Lindell texted me to assure me the funding was forthcoming stating "The broker called and it sounds like the stock should be for sure in January." This too never happened and whatever funds Lindell generated from this stock scheme were not used to pay FedEx.

13.    Similarly, Lindell repeatedly promised that he was personally going to pay FedEx for My Pillow's shipping debts if the company was not able to generate sufficient funds to pay its own debts. At one point, on November 30, 2024, Lindell sent me a photo of an investment statement identifying an investment account with Forte Capital Group, held in Lindell's name, indicating investment assets of almost $14,000,000.

14.    From late October 2024 through December 2024, Lindell also repeatedly represented that he had as much as $5,000,000 being held in an "escrow account" by his merchant server due to a UCC-1 filing that he signed to secure a loan with a merchant cash advance lender at a very high interest rate. Lindell advised that he obtained a release of the UCC-1 filing but was having some trouble obtaining a release of the escrow funds. Lindell promised that he was going to obtain a return of the funds and use them to pay the My Pillow debt to FedEx, but that never happened.

4

DMS_US.373927116.1

15.     With respect to all of these representations made by Lindell, he made them at a time that he was informed FedEx was in the process of revoking My Pillow's credit privileges, stopping shipments for My Pillow altogether, or turning over My Pillow's accounts to debt collectors.

16.     FedEx did rely on Lindell's representations and allowed My Pillow to continue shipping on credit. Between August of 2024 and the time that FedEx terminated My Pillow's accounts, the My Pillow debt ballooned from approximately $5.5M to $8.8M based solely on the misrepresentations made by Lindell. Indeed, had Lindell fulfilled his representations, FedEx would not have suffered this increase in debt owed by My Pillow and would have either stopped shipping for My Pillow altogether or revoked My Pillow's credit privileges so that any shipments made would have to be pre-paid in advance. If I had known that Lindell's representations were false, My Pillow's credit privileges and ability to ship with FedEx without pre-paying for shipments would have ended at least by mid-September 2024. After that time, My Pillow's debt increased by $2,677,933.31

17.     FedEx has not received any amount owed to it pursuant to the Default Judgment.

I affirm this 16th day of October, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
Larry Puszko

DMS_US.373927116.1

5

Case 1:25-cv-10053-JGK    Document 12    Filed 03/31/26    Page 32 of 32

**CERTIFICATION PURSUANT TO 22 N.Y.C.R.R. SECTION 202.8-b**

I, Marsha J. Indych, hereby certify that the word count of this Affirmation complies with the word count limits of 22 N.Y.C.R.R. Section 202.8-b and Commercial Division Rule 17 (22 N.Y.C.R.R. § 202.70.17(iii)).  According to the word-processing system used to prepare this Affirmation, the total word count for all printed text exclusive of the material omitted under 22 N.Y.C.R.R. § 202.8b(c) and Commercial Division Rule 17 is 1,400 words.

Dated:  October 17, 2025
       New York, New York

FAEGRE DRINKER BIDDLE
& REATH LLP

By:  */s/ Marsha J. Indych*
Marsha J. Indych
1177 Avenue of the Americas,
41st Floor
New York, New York 10036
(212) 248-3140
marsha.indych@faegredrinker.com

*Counsel for Federal Express Corporation*

6

DMS_US.373927116.1