UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. LINDELL,<br><br>Defendant. | **Case No. 25-cv-10053**<br><br>**Oral Argument Requested** |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

PROCEDURAL POSTURE ........ 1

FACTUAL BACKGROUND ........ 2

ARGUMENT ........ 7

I. STANDARD OF REVIEW ........ 7

II. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT ........ 7

III. FEDEX'S SERVICE OF ITS INITIAL COMPLAINT ON MY PILLOW WAS INVALID AND THE COMPLAINT IS THUS INOPERATIVE. ........ 8

IV. DEFENDANT HAS MOVED TO VACATE FEDEX'S DEFAULT JUDGMENT IN TENNESSEE. ........ 11

A. Standard to Vacate Pursuant to Federal Rule of Civil Procedure 60(b). ........ 11

B. Defendant Meets the Requirements of Rule 60(b)(1). ........ 13

C. The Relevant Factors under United Coin Meter Support the Tennessee Court Vacating the Default Judgment. ........ 17

D. The Substantial Amount of the Default Judgments Strongly Supports Their Vacation. ........ 26

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

## Cases


*Amernational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970 (6th Cir. 1991), *cert. denied*, 501 U.S. 1233 (1991) .......... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 7

*Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924 (E.D. Tenn. 2002) .......... 9

*Blois v. Friday*, 612 F.2d 938 (5th Cir. 1980)(per curiam) .......... 12

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .......... 7

*Cunningham v. Lexington Doc Prep, LLC*, No. 3:15-cv-467, 2017 U.S. Dist. LEXIS 116018, 2017 WL 3149579 (M. D. Tenn. July 25, 2017), *adopted by Cunningham v. Lexington Doc Prep, LLC*, No. 3:15-cv-00467, 2017 U.S. Dist. LEXIS 128861, at *1 (M.D. Tenn. Aug. 14, 2017) .......... 9, 11

*Dassault Systemes, SA v. Childress*, 663 F.3d 832 (6th Cir. 2011) .......... 18, 20

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) .......... 24

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990) .......... 24

*Doss v. Connexion Point, LLC*, No. 2:21-cv-2756-MSN-atc, 2024 U.S. Dist. LEXIS 100035 (W.D. Tenn. June 5, 2024) .......... 19

*Edwards v. Travelers Ins. of Hartford*, 563 F.2d 105 (6th Cir. 1977) .......... 20

Fed. R. Civ. P. 60(b) .......... passim

*Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653 (3d Cir. 1982) .......... 19

*Fifth Third Bank v. Mytelka*, No. 04-271-C, 2009 U.S. Dist. LEXIS 61884 (W.D. Ky. July 10, 2009) .......... 18

*Greenstone v. Cambex Corp.*, 975 F.2d 22 (1st Cir. 1992) .......... 23, 24

*Hall v. Haynes*, 319 S.W.3d 564 (Tenn. 2010) .......... 9, 10

*Heinrich v. Waiting Angels Adoption Servs*., 668 F.3d 393 (6th Cir. 2012) .......... 23

*Invst Fin. Grp. v. Chem-Nuclear Sys.*, 815 F.2d 391 (6th Cir. 1987) .......... 12

*Jackson* v. Beech, 636 F.2d 831 (1980) .......... 12

*Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372 (D.C. Cir. 1980) .......... 19, 20

*Kerzer v. Kingly Mfg.*, 156 F.3d 396 (2d Cir. 1998) ........ 7

*Key Bank of Me. v. Tablecloth Textile Co. Corp.*, 74 F.3d 349 (1st Cir. 1996) ........ 25

*Kulac v. City of New York*, 88 F.3d 63 (2d Cir. 2006) ........ 7

*Marquette Transp. Co. Gulf-Inland, LLC v. Arroyo Terminals, LLC*, No. 25-651, 2026 LX 65232 (E.D. La. Jan. 5, 2026) ........ 19

*McVicker v. Donnelly*, 95 F.R.D. 353 (E.D. Pa. 1982) ........ 14

*Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12 Civ. 0052 (JPO), 2013 U.S. Dist. LEXIS 61877, 2013 WL 1809637 (S.D.N.Y. Apr. 30, 2013) ........ 15

*Nelson v. Metalsa Structural Prods., Inc.*, Civil Action No. 3:21-CV-293-CHB, 2023 U.S. Dist. LEXIS 227669 (W.D. Ky. June 14, 2023) ........ 16

*Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG)(RER), 2018 U.S. Dist. LEXIS 197155 (E.D.N.Y. Nov. 16, 2018), *adopted by Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG)(RER), 2019 U.S. Dist. LEXIS 4055 (E.D.N.Y. Jan. 8, 2019) ........ 15

*Pioneer Inv. Service Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993) ........ 13

*Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22-CV-2256-ARR-JRC, 2025 LX 435865 (E.D.N.Y. Oct. 16, 2025 ........ 15

*Rooks v. American Brass Co.*, 263 F.2d 166 (6th Cir. 1959)(per curiam) ........ 13, 20

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981) ........ 26

*Sream Inc. v. Saakshi Enters.*, No. 16-cv-1408 (NG) (RML), 2017 U.S. Dist. LEXIS 93182 (E.D.N.Y. June 14, 2017) ........ 15

*Tepe v. Whirlpool Corp.*, No. 22-5826, 2023 U.S. App. LEXIS 13818 (6th Cir. June 2, 2023) ........ 10

*Thompson v. American Home Assur. Co.*, 95 F.3d 429 (6th Cir. 1995) ........ 12, 16

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741 (6th Cir. 2014) ........ 20

*Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951) ........ 26

*United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839 (6th Cir. 1983) ........ passim

*Van Eman v. Keuffel & Esser of N.J., Inc.*, No. C.A. 87-359-II, 1988 Tenn. App. LEXIS 388 (Tenn. Ct. App. June 15, 1998) ........ 22

*Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790 (6th Cir. 2002) ........ 16, 17

**Rules**

CPLR 302 .......... 8

Fed. R. Civ. P. 12(h) .......... 8

Fed. R. Civ. P. 56 .......... 1

Fed. R. Civ. P. 56(c) .......... 7

Fed. R. Civ. P. 60 .......... passim

Fed. R. Civ. P. 9(b) .......... 20, 22

Local Civil Rule 56.1(b) .......... 1

**Other Authorities**

4A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1097 (3d ed. 2002) .......... 9

Defendant Michael J. Lindell ("Defendant" or "Lindell"), by and through his undersigned counsel, hereby opposes the Motion for Summary Judgment of Plaintiff Federal Express Corporation ("Plaintiff" or "FedEx"). Defendants rely herein upon their Counterstatement of Material Facts Pursuant to Local Civil Rule 56.1(b) ("CSMF"), the Declarations of Michael J. Lindell ("Lindell Dec."), Jeremiah Pilon ("Pilon Dec."), Joe Schmieg ("Schmieg Dec."), Barbara Podlucky Berens ("Berens Dec.") and to the exhibits attached thereto.

## PRELIMINARY STATEMENT

Defendant opposes Plaintiff's motion for summary judgment, as there are material questions of fact that require resolution. These questions of fact include: (i) whether this Court has personal jurisdiction over Defendant; and (ii) whether the underlying default judgment rendered against Defendant in Tennessee was properly made, and whether it will be vacated by way of the motion pending in Tennessee. Because Plaintiff cannot meet its burden under Fed. R. Civ. P. 56, its motion should be denied.

## PROCEDURAL POSTURE

On October 27, 2025, Plaintiff filed a Notice for Summary Judgment in Lieu of Complaint against Defendant in New York Supreme Court, New York County, Index No. 659206/2025. On December 3, 2025, Defendant removed that action to this Court. ECF 1. On March 18, 2026, the Court ordered Plaintiff to file a Complaint and a Motion for Summary Judgment by March 31, 2026, Defendant to respond by April 21, 2026, and Plaintiff to reply by May 1, 2026. ECF 7.

Plaintiff filed a Complaint against Defendant (ECF 9) and a Motion for Summary Judgment (ECF 10-12) on March 31, 2026. On April 20, 2026, the Court granted Defendant's

letter motion for adjournment of the dates by which Defendant would respond to the Complaint and the Motion for Summary Judgment, to May 12, 2026. ECF 15.

## FACTUAL BACKGROUND

Michael J. Lindell ("Lindell") is the Chief Executive Officer of defendant My Pillow, Inc. ("My Pillow"). CSMF ¶ 1. For years, My Pillow relied on Plaintiff Federal Express Corporation "FedEx" to ship My Pillow products to customers. CSMF ¶ 2. For years, My Pillow paid millions of dollars to FedEx on a timely basis. CSMF ¶ 3. Beginning in mid-2022, My Pillow began suffering a string of what were at that point in time inexplicable financial reversals, which have recently been revealed to be triggered as a result of Operation Arctic Frost, which had targeted My Pillow. CSMF ¶ 4 & Berens Dec. Exs. A, C, G.

My Pillow's merchant server imposed a new, $5,000,000.00 hold on the funds in My Pillow's account, which forced My Pillow to find another merchant server. CSMF ¶ 5. Fox News dropped all of My Pillow's advertising based on an alleged payment dispute. CSMF ¶ 6 & Berens Dec. Ex. E. But Fox News dropped My Pillow even though at that point in time, My Pillow only owed an amount that was within My Pillow's then-credit limit with Fox News. CSMF ¶ 7 & Berens Dec. Ex. E. Fox News also decreased the window of time in which My Pillow was required to pay for advertising, from twelve down to eight weeks. CSMF ¶ 8 & Berens Dec. Ex. E.

In June of 2022, Walmart, which was at that time My Pillow's biggest retailer, removed all of My Pillow products from its physical stores. CSMF ¶ 9 & Berens Dec. Ex. B. Lindell believes that Walmart's actions made no economic sense because at that point in time, My Pillow was one of Walmart's top selling products of all time. CSMF ¶ 10 & Berens Dec. Ex. B. My Pillow's bank was subpoenaed for My Pillow financial records in the context of Arctic Frost

and as a result, My Pillow's bank terminated its relationship with My Pillow. CSMF ¶ 11 & Berens Dec. Ex. C.

During this time, American Express also slashed My Pillow's credit line by 90%, decreasing it from $1,000,000.00 to $100,000.00 without warning and demanded payment within 24 hours. CSMF ¶ 12 & Berens Dec. Ex. D. American Express took these steps despite the fact that My Pillow had never been late on its payments before and the amount then owed to American Express was within My Pillow's credit limit and terms. CSMF ¶ 13 & Berens Dec. Ex. D.

When faced with these financial setbacks, Lindell sought various options to keep My Pillow in business and pay its bills, vendors, and employees. CSMF ¶ 14 & Berens Dec. Ex. F. During this time, Lindell was texting and speaking with FedEx about My Pillow almost daily. CSMF ¶ 15. During these regular calls and texts exchanges with FedEx, Lindell mentioned various ways in which My Pillow was hoping to obtain funds. CSMF ¶ 16. Lindell openly discussed the current status of those potential, future financial alternatives with FedEx and also indicated to FedEx that those financial alternatives were in the control of other, third parties and not My Pillow or Lindell. CSMF ¶ 17 & Berens Dec. Ex. F. Even though Lindell was in regular contact with FedEx personnel during the period of time before FedEx sued, during these numerous communications, both in telephone calls and texts, Lindell was never informed about FedEx's lawsuit against My Pillow and Lindell in Tennessee, any of the filings in the lawsuit, or the Court's entry of the default and then the default judgment against My Pillow and Lindell. CSMF ¶ 18.

FedEx claims it served its initial Complaint on an employee of My Pillow, Joe Schmieg. CSMF ¶ 19. Schmieg holds the title of vice president of sales. CSMF ¶ 20. In that role,

however, Schmieg is not an executive officer of My Pillow because he has never been elected by My Pillow's Board of Directors as is required by My Pillow's by-laws in order to be a corporate executive. CSMF ¶ 21. Schmieg has never had any executive responsibilities, he makes no strategic decisions, and he is not and has never been authorized to accept service on behalf of My Pillow. CSMF ¶ 22. Schmieg is not and has never been authorized to sign for any court or other legal documents on behalf of My Pillow. CSMF ¶ 23.

Lindell was never informed about this attempted service and never saw the initial Complaint at that point in time, only learning about it after default judgment had been entered against My Pillow and Lindell and FedEx began to try and collect on the default judgments. CSMF ¶ 24.

In June of 2025, someone handed Lindell what FedEx claims was its First Amended Complaint (the "First Amended Complaint") in this case. CSMF ¶ 25. At that time, Lindell was in Colorado in the midst of a contentious federal jury trial. CSMF ¶ 26. When the person approached Lindell, Lindell was out in the courthouse hallway during a several minute break. CSMF ¶ 27. Lindell was one of the defendants in that trial and the plaintiff was seeking millions of dollars from another defendant and Lindell. CSMF ¶ 28. Lindell was focused solely on that ongoing federal jury trial. CSMF ¶ 29. Lindell barely registered that someone had handed him documents. CSMF ¶ 30. Lindell believed that the encounter was either related to the Colorado trial or a maneuver by the media personnel, who were closely following the jury trial. CSMF ¶ 31. Lindell does not know what happened to the documents, which Lindell never read because he was in the midst of the trial and he immediately returned to the courtroom and continued to focus on those proceedings. CSMF ¶ 32.

Neither My Pillow nor Lindell ever received any other documents, notifications, or court

filings in the Tennessee matter. CSMF ¶ 33. Even though FedEx attested that its motion for default judgment was mailed to My Pillow and Lindell, those documents were never received. CSMF ¶ 34. My Pillow and Lindell never received a copy of the Court's Order granting FedEx's motion for default judgment until after FedEx began its collection activities. CSMF ¶ 35. My Pillow and Lindell were never aware of the FedEx lawsuit until after the default judgments had been entered in favor of FedEx and FedEx started its collection activities even though Lindell was in almost constant contact with FedEx during that period of time. CSMF ¶ 36. My Pillow and Lindell would have responded timely if they had been aware of the pending default and subsequent default judgment; they were not. CSMF ¶ 37.

Lindell understands that FedEx alleges that Lindell knew he was making false statements about various potential financial options when Lindell mentioned them to FedEx. That is not true. CSMF ¶ 38. At the time Lindell made various statements to FedEx, Lindell in good faith believed them to be true. CSMF ¶ 39. In addition, Lindell made sure that FedEx understood during these communications that Lindell was relying on third parties to keep their word to Lindell or go through with the actions they had promised Lindell. CSMF ¶ 40. Lindell understand that FedEx claims that he was making statements that he then knew to be false about an IPO involving FrankSpeech. That is not the case. CSMF ¶ 41. Lindell had no control over the ultimate success of that IPO, which was not as successful as others had promised Lindell. CSMF ¶ 42. Lindell never received any funds as a result on this IPO. CSMF ¶ 43.

FedEx also takes issue with Lindell's discussions about what it calls a stock option opportunity as well as potential loans Lindell was trying to obtain. CSMF ¶ 44. At the time Lindell discussed these various potential opportunities with FedEx, Lindell believed all of the statements he made were true. CSMF ¶ 45. Lindell also had no control over these potential

financial alternatives and the stock option opportunity and the loans third parties were promising did not materialize. CSMF ¶ 46. Furthermore, Arctic Frost, Lindell now knows, precluded My Pillow or Lindell from obtaining loans or accessing other financial opportunities, including those Lindell discussed with FedEx. CSMF ¶ 47.

FedEx charged My Pillow approximately $1,300,000.00 in late fees even though My Pillow was paying timely. CSMF ¶ 48. It took more than a year to get even a partial credit for those late fees. CSMF ¶ 49. My Pillow has never recovered about $500,000.00 of those improper late fees. CSMF ¶ 50. FedEx's delay in providing credit for those late fees had an extraordinarily damaging financial impact on My Pillow during a time when My Pillow, as Lindell now has learned, was under attack by Arctic Frost. CSMF ¶ 51. In addition, FedEx unilaterally and without justification changed the material terms of the parties' arrangement by, among other things, decreasing the number of days for the due date of My Pillow's payments from 60 days, to 45 days, to 30 days, even though My Pillow was still paying, and at the same time, FedEx increased the amount of the late fees that it would charge for allegedly late payments. CSMF ¶ 52. FedEx even began to refuse to allow My Pillow to pay cash for shipping. CSMF ¶ 53.

Lindell is a resident of Minnesota. CSMF ¶ 54. Lindell has never been a resident of New York. CSMF ¶ 55. Lindell has no contacts with New York that relate to FedEx. CSMF ¶ 56. Lindell was never in New York when he had dealings with FedEx. CSMF ¶ 57. Lindell was principally in Minnesota during all of his interactions with FedEx. CSMF ¶ 58. No one with whom Lindell dealt at FedEx was a New York resident or otherwise located in New York. CSMF ¶ 59. There were no documents with FedEx that were executed by Lindell in New York. CSMF ¶ 60. My Pillow is an employee-owned company. CSMF ¶ 61. Although Lindell owns

shares of My Pillow, he is not the "owner." CSMF ¶ 62.

On February 27, 2025, FedEx filed the Original Complaint (Berens Dec. Ex. H) against My Pillow in the United States District Court for the Western District of Tennessee, Western Division. CSMF ¶ 63 & Berens Dec. Ex. H. On June 6, 2025, FedEx filed the First Amended Complaint against both My Pillow and Lindell. CSMF ¶ 64 & Berens Dec. Ex. I. On May 12, 2026, Defendant moved to vacate the default judgment against him secured by FedEx in Tennessee. CSMF ¶ 65 & Berens Dec. Ex. J.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the prevailing party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-50 (1986). Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kerzer v. Kingly Mfg*., 156 F.3d 396, 400 (2d Cir. 1998); *Kulac v. City of New York*, 88 F.3d 63, 71 (2d Cir. 2006).

### II. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT

Both Defendant and Plaintiff are non-domicilaries. Although jurisdiction can arise over non-domiciliaries in certain circumstances, no such circumstances are alleged in the Complaint.

CPLR 302. Indeed, Defendant has no contacts with New York that could give rise to jurisdiction:

- Lindell is a resident of Minnesota.
- Lindell has never been a resident of New York.
- Lindell has no contacts with New York that relate to FedEx.
- Lindell was never in New York when he had dealings with FedEx.
- Lindell was principally in Minnesota during all of his interactions with FedEx.
- No one with whom Lindell dealt at FedEx was a New York resident or otherwise located in New York.
- There were no documents with FedEx that were executed by Lindell in New York.

CSMF ¶¶ 54-62.

Because the Court lacks personal jurisdiction over Defendant, this case should proceed no further, pursuant to Fed. R. Civ. P. 12(h). At a bare minimum, there are material questions of fact as to whether this Court has personal jurisdiction over Defendant that should prevent the Court from granting summary judgment to Plaintiff.

## III. FEDEX'S SERVICE OF ITS INITIAL COMPLAINT ON MY PILLOW WAS INVALID AND THE COMPLAINT IS THUS INOPERATIVE.

Plaintiff's entire case in New York is based on the presumed validity of the judgment it obtained against Lindell in Tennessee. As a threshold matter, there is a genuine issue of material fact concerning whether service of FedEx's initial Complaint upon My Pillow was invalid because it was left with an individual, Joseph Schmieg, who was not authorized to accept service on behalf of My Pillow. Under both Tennessee law and the federal rules, "[i]n the context of serving process, the record must contain 'evidence that the defendant intended to confer upon

[the] agent the specific authority to receive and accept service of process for the defendant.'" *Hall v. Haynes*, 319 S.W.3d 564, 573 (Tenn. 2010) (*quoting Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002)(alterations in original)).

When analyzing this question:

> Agency for this purpose is held to a rigorous standard. 'The bare fact that an alleged agent actually accepts process for the defendant is not enough to constitute valid service of process. There must be evidence that the defendant intended to confer upon its agent the specific authority to receive and accept service of process for the defendant. *Arthur*, 249 F. Supp. 2d at 929 (*quoting* 4A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1097 (3d ed. 2002)).

Report and Recommendation, *Cunningham v. Lexington Doc Prep, LLC*, No. 3:15-cv-467, 2017 U.S. Dist. LEXIS 116018, at *6, 2017 WL 3149579 (M. D. Tenn. July 25, 2017), *adopted by Cunningham v. Lexington Doc Prep, LLC*, No. 3:15-cv-00467, 2017 U.S. Dist. LEXIS 128861, at *1 (M.D. Tenn. Aug. 14, 2017).

When obtaining its default judgments in Tennessee against Lindell and My Pillow, FedEx did not present any evidence that Schmieg was authorized to accept service of process on behalf of My Pillow. And FedEx will be unable to present any such evidence because Schmieg is not so authorized. Lindell Dec. ¶ 12; Pilon Dec. ¶ 3.

Schmieg holds the title of vice president of sales, but in that role, he is not an executive officer of My Pillow because he has never been elected by My Pillow's Board of Directors (which is required by My Pillow's by-laws in order to be a corporate executive, *see* Lindell Dec. ¶ 12), he has never had any executive responsibilities, he makes no strategic decisions, and he is not and never has been authorized to bind My Pillow or accept service of process on behalf of My Pillow. *See* Lindell Dec. ¶ 12; Schmieg Dec. ¶¶ 1, 2; Pilon Dec. ¶ 3.

Valid service requires that the person who accepts service must be appointed as agent by the company specifically for that purpose; failure to meet this requirement renders service

defective because:

> Acting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process. Nor is the mere fact of acceptance of process sufficient to establish agency by appointment.

*Hall*, 319 S.W.3d at 573; *accord Tepe v. Whirlpool Corp*., No. 22-5826, 2023 U.S. App. LEXIS 13818, at *5 (6th Cir. June 2, 2023)(quoting *Hall*, 319 S.W.3d at 573).

Here, My Pillow has never appointed or otherwise authorized Schmieg to accept service on behalf of My Pillow, *see* Lindell Dec. ¶ 12; Pilon Dec. ¶ 3; Schmieg Dec. ¶¶ 2, 3; and Schmieg's alleged acceptance of the initial Complaint also fails to establish his agency by appointment. *Hall*, 319 S.W.3d at 573.

Furthermore, the allegations set forth in FedEx's First Amended Complaint confirm that it knew the identity of the only individuals who are authorized to accept service on behalf of My Pillow, that is, Lindell or Doug Wardlow (whom FedEx alleges was My Pillow's registered agent), and *not Schmieg*:

> My Pillow, Inc. is a Minnesota corporation with its principal place of business in Chaska, Minnesota. *It may be served with this Complaint through either its registered agent for service, Doug Wardlow, or its CEO Michael Lindell both located at 1550 Audubon Road, Chaska, MN 55318.*

Berens Dec. Ex. I ¶ 2 (emphasis added). This admission confirms the inadequacy of service on Schmieg.

Based on the foregoing, it is clear that service of the initial Complaint on Schmieg was invalid, and thus, FedEx's initial Complaint was entirely without legal effect. *See, e.g.*, *Tepe v. Whirlpool Corp*., No.: 1:22-CV-136-KAC-SKL, 2023 U.S. App. LEXIS 13818, at *4-5 (E.D. Tenn. Sept. 12, 2022)(when granting defendant's motion to dismiss plaintiff's complaint for insufficient service of process, finding that plaintiff's "first and second attempts at service are insufficient because they were not made to a qualifying officer or agent of Whirlpool"), *aff'd*

*Tepe v. Whirlpool Corp*., 2023 U.S. App. LEXIS 13818, at *4-6 (when affirming district court's decision that plaintiff's service attempts were improper, ruling that "the record must contain 'evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant'" and plaintiff failed to proffer such evidence) (quotation omitted)); *see* Report and Recommendation, *Cunningham*, 2017 U.S. Dist. LEXIS 116018, at *8 (determining that the individual served with the complaint was not an agent authorized to accept service on behalf of defendants, and therefore concluding "that plaintiff has failed to establish that these defendants were properly served; this court therefore lacked jurisdiction to enter a default or default judgment against them; and that the judgment should be set aside and void pursuant to Federal Rule of Civil Procedure 60(b)(4).").

Service of the original Complaint in Tennessee upon My Pillow was invalid, and thus everything that followed, including the purported service of the First Amended Complaint upon Lindell in the hallway of a Colorado courthouse, and the defaults that followed therefrom, were also of no legal effect. At a minimum, this represents a second material question of fact that should prevent the Court from granting FedEx's motion for summary judgment.

## IV. DEFENDANT HAS MOVED TO VACATE FEDEX'S DEFAULT JUDGMENT IN TENNESSEE.

On May 12, 2026, Defendant moved to vacate the default judgment against him secured by FedEx in Tennessee, which default judgment serves as the entire basis for this action. Berens Dec. Ex. J. As reflected below, Defendant is likely to succeed in his effort to vacate that default judgment, but – at minimum – the uncertainty surrounding the validity of the default judgment is a material question of fact that should prevent this Court from granting FedEx's motion.

### A. Standard to Vacate Pursuant to Federal Rule of Civil Procedure 60(b).

When considering a motion to set aside a default judgment pursuant to Fed. R. Civ. P.

60(b), courts consider three factors:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

*United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839, 845 (6th Cir. 1983) (quotation omitted). The movant must also satisfy one of Rule 60(b)'s express requirements. *See, e.g.*, *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1995)(ruling that when determining a motion to set aside a default judgment, the court is to consider the *United Coin Meter* factors and must also find that the movant meets "one of the specific requirements of Rule 60(b)"). Rule 60(b) of the Federal Rules of Civil Procedure provides in part that:

> (b) [T]he court may relieve a party. . .from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reasons justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(1), (4), (6). The Sixth Circuit has ruled that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter,* 705 F.2d at 845. As a result, "[i]n considering a motion to set aside entry of a judgment by default a district court must apply Rule 60(b) 'equitably and liberally ... to achieve substantial justice.'" *Id.* at 844-45 (*quoting Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980)(per curiam)).

The Sixth Circuit has further determined that when evaluating a motion to vacate a default judgment, "the court should . . . construe[] all ambiguous or disputed facts in the light most favorable to the defendant[], any doubt should be resolved in favor of the defendant." *Invst Fin. Grp. v. Chem-Nuclear Sys.*, 815 F.2d 391, 398 (6th Cir. 1987) (*quoting Jackson* v. Beech, 636 F.2d 831, 838 (1980)(internal quotations omitted) (alterations in the original).

When analyzing the requirements of Rule 60(b)(1) and the three relevant *United Coin*

*Meter* factors in light of the case law holding that default judgments are disfavored, and that the Court is to apply Rule 60(b) liberally, Defendant is confident that his pending motion to vacate the default judgment will be granted.

**B. Defendant Meets the Requirements of Rule 60(b)(1).**

The Tennessee court may set aside a default judgment pursuant to Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect." Defendant meets those requirements. *First*, the service of the initial FedEx Complaint on Schmieg was invalid, as set forth above, and Lindell and My Pillow were never aware of this attempted service on My Pillow until after the default judgments were entered and FedEx started its collection efforts. Lindell Dec. ¶ 13; Pilon Dec. ¶ 2. Thus, in addition to the legal invalidity of the initial Complaint as a result of the defective service, *see supra*, any failure to respond to the initial Complaint is also excused on the basis of surprise. *Cf. Rooks v. American Brass Co.*, 263 F.2d 166, 168 (6th Cir. 1959)(per curiam)(affirming vacation of default judgment under Rule 60(b)(1) despite plaintiff's proper service of the complaint at the named defendant's residence where his wife had received the complaint and failed to inform him of the service based in part on her mistaken belief that the lawsuit was against the named defendant's company and so she passed the complaint on to her husband's business manager, who also mistook the complaint for a suit involving only the company).

*Second*, Defendant's failure to respond to the First Amended Complaint, the motion for default, and the motion for a default judgment should be excused under Rule 60(b)(1) on the basis of excusable neglect, inadvertence, and surprise.

The United States Supreme Court has adopted a "flexible understanding" of what constitutes "excusable neglect" under various procedural rules, *see Pioneer Inv. Service Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 389 (1993), including Rule 60(b)(1). The

Supreme Court determined that excusable neglect under Rule 60(b) specifically "encompasses situations in which the failure to comply with a filing deadline is attributable to *negligence*." *Id.* at 394 (emphasis added).

As to the First Amended Complaint, Lindell was ambushed in a courthouse hallway while on a very short break taken by the court during a contentious federal trial in Colorado when he was handed some papers. Lindell Dec. ¶ 14. The courthouse was swarming with media personnel and Lindell was facing possible liability for potentially millions of dollars in damages in that trial. *Id.* Lindell was understandably focused solely on that federal trial and had no idea what had been handed to him. *Id*. He thought that the encounter was either a media ploy or some papers related to that Colorado case, and he never read the papers. *Id*. In fact, Lindell was so engrossed in the federal trial that he does not know what ever happened to the materials that were handed to him. *Id*.

Under the foregoing circumstances, Lindell acted, at most, with inadvertence and excusable neglect when he did not examine papers that were handed to him in another state, in unfamiliar circumstances, and while he totally immersed in the throes of a federal trial, and believed the documents were either a media tactic or were a part of the Colorado federal trial.

Based on the foregoing, Defendant is confident that the Tennessee court will conclude that he satisfied the conditions to set aside the default judgment under Rule 60(b)(1) as a result of inadvertence and excusable neglect. *See, e.g.*, *McVicker v. Donnelly*, 95 F.R.D. 353, 355 (E.D. Pa. 1982)(when vacating default judgment under Rule 60(b)(1), holding that defendant's "confusion resulting from the time proximity and subject matter similarity of the two proceedings clearly demonstrate that defendant's failure to respond constitutes excusable neglect")(internal quotation marks omitted); *Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No.

22-CV-2256-ARR-JRC, 2025 LX 435865, at *16 (E.D.N.Y. Oct. 16, 2025)(finding excusable neglect under Rule 60(b)(1) when setting aside default judgment because there is "some doubt that a party received the pleading on which default is based [and thus] the default is not deemed willful"); *Sream Inc. v. Saakshi Enters.*, No. 16-cv-1408 (NG) (RML), 2017 U.S. Dist. LEXIS 93182, at *5-6 (E.D.N.Y. June 14, 2017) (denying motion to enter default judgment and finding that defendant's default was not willful but was instead caused by its attorney's negligence, which resulted in the complaint being put in the wrong file at the law firm); *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12 Civ. 0052 (JPO), 2013 U.S. Dist. LEXIS 61877, 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013)(setting aside default judgment based, inter alia, on the court's finding of excusable neglect where defendant confused papers from two separate lawsuits and the entry of default judgment was not the result of defendant's strategic decision); Report and Recommendation, *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG)(RER), 2018 U.S. Dist. LEXIS 197155, at *5-6 (E.D.N.Y. Nov. 16, 2018) (recommending that default judgment should be vacated even though plaintiff's service of the complaint on the secretary of state was proper and defendant failed to receive complaint solely because of its own negligence in failing to provide the secretary of state with its current address because defendant's negligence alone was not enough to justify denial of its motion to vacate), *adopted by Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG)(RER), 2019 U.S. Dist. LEXIS 4055, at *3 (E.D.N.Y. Jan. 8, 2019).

It is also noteworthy that Lindell was in regular contact with FedEx personnel during the period of time before FedEx sued, yet during these numerous communications, both in telephone calls and texts, Lindell was never informed about this lawsuit, any of the filings in the lawsuit, or the Court's entry of the default and then the default judgment. Lindell Dec. ¶ 16; *cf. Weiss v. St.*

*Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 795 (6th Cir. 2002)(when affirming vacation of a default judgment under Rule 60(b)(1), indicating that plaintiff's arguments in support of default judgment were "somewhat disingenuous" where there was frequent contact between the parties' attorneys "prior to the initiation of this suit, but [plaintiff's counsel] elected not to notify them [defendant's counsel] of the filing of the lawsuit, the entry of default or the default judgment"). Indeed, neither Lindell nor My Pillow were ever provided with or otherwise received notice of the filings in the lawsuit in support of the default or the Court's entry of the default judgments until after FedEx began its efforts to collect. *Id.* ¶ 16; Pilon Dec. ¶ 4. Thus, Lindell and My Pillow only learned of the existence of the lawsuit after the Tennessee Court entered default judgments in FedEx's favor and FedEx began its collection activities. Lindell Dec. ¶¶ 15, 16; Pilon ¶ 4.

When considering such a lack of notice, courts have ruled that "[s]uch a circumstance falls within the ambit of 'mistake, inadvertence, surprise or excusable neglect' as contemplated by Rule 60(b)(1)." *Nelson v. Metalsa Structural Prods., Inc.*, Civil Action No. 3:21-CV-293-CHB, 2023 U.S. Dist. LEXIS 227669, at *7 (W.D. Ky. June 14, 2023)(vacating default judgment based on defendant's lack of knowledge of lawsuit until after default judgment was entered); *id.* at *9 (after considering Rule 60(b)(1) and all *United Coin Meter* factors, vacating default judgment based on finding that defendant "has offered good cause for why it did not previously respond to Plaintiff's Complaint or participate in this case: it never received notice of the litigation").

As a result, Defendant is confident that the default judgment will be set aside under Rule 60(b)(1) on the basis of surprise. *See, e.g.*, *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996)(when affirming the district court's vacation of a default judgment,

concluding that defendant "clearly established surprise, as its agent attested that [defendant] was unaware that a lawsuit had been filed until after the default judgment had been entered. Assuming *arguendo* that service of process … was acceptable in these circumstances, the lack of actual notice of a lawsuit is a sufficient reason for the district court to set aside a judgment under Rule 60").

### *C.* The Relevant Factors under United Coin Meter Support the Tennessee Court Vacating the Default Judgment.

All three of the factors set forth in *United Coin Meter* also support the grant of Defendants' pending motion in Tennessee.

1. *Defendants Did Not Engage in Any Culpable Conduct*.

The Sixth Circuit has ruled that a party seeking to vacate a default judgment satisfies its burden for purposes of this *United Coin Meter* factor regarding culpable conduct "by meeting the requirements of Rule 60(b)(1), that is, by demonstrating that his default was the product of mistake, inadvertence, surprise, or excusable neglect." *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002)(internal quotation marks omitted); *see id*. at 795 (when affirming the vacation of a default judgment under Rule 60(b)(1), finding that default judgment was not "the result of deliberate, willful, conduct" of the defendant and that plaintiff's arguments were "somewhat disingenuous" where there was frequent contact between the parties' attorneys "prior to the initiation of this suit, but [plaintiff's counsel] elected not to notify them [defendant's counsel] of the filing of the lawsuit, the entry of default or the default judgment").

Here, as set forth above, the default judgment should be set aside under Rule 60(b)(1) for inadvertence, excusable neglect, and surprise. Thus, in accordance with *Weiss*, this showing also satisfies this *United Coin Meter* factor that Defendant did not engage in culpable conduct. *Weiss*, 283 F.3d at 794.

Moreover, Defendant never received any of the pleadings related to either FedEx's motion for default or its motion for default judgment and the Tennessee docket reflects no certificate of service for FedEx's motion to enter default,[1] further demonstrating that Defendant did not engage in any culpable conduct. *See, e.g.*, *Fifth Third Bank v. Mytelka*, No. 04-271-C, 2009 U.S. Dist. LEXIS 61884, at *14-15 (W.D. Ky. July 10, 2009)(when vacating default judgment, finding that defendant did not engage in culpable conduct where, inter alia, he denied receiving copies of either the motion for default or the motion for default judgment filed by the plaintiff until three years after the court entered default judgment and "[a] review of the record reveals that neither of these motions includes a certificate of service").

This lack of notice further confirms that Defendant did not take any action to thwart the Tennessee proceeding intentionally or otherwise behaved with reckless disregard for the effect of their conduct in that matter, the standard adopted by the Sixth Circuit for determining culpable conduct. *Amernational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970, 978 (6th Cir. 1991) (internal quotations omitted)(ruling that "[i]n order to be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings"), *cert. denied*, 501 U.S. 1233 (1991); *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 844 (6th Cir. 2011); *id*. (ruling analysis under Rule 60(b)(1) applied when reversing the district court's entry of default judgment against the defendant based on its failure to respond to discovery).

Based on the foregoing, Defendant is confident that the Tennessee court will find that this factor favors the granting of his pending motion to vacate FedEx's default judgment.

---

[1] FedEx certified that it had mailed its motion for entry of default judgment to Defendants, *see supra*, but neither My Pillow nor Lindell received that mailing. Lindell Dec. ¶ 15; Pilon Dec. ¶ 5.

2. *FedEx Will Not Be Prejudiced if the Default Judgment Is Set Aside*.

A plaintiff's prejudice is narrowly defined for purposes of evaluating this factor under *United Coin Meter*. A delay in any potential recovery is insufficient. *See, e.g.*, *Doss v. Connexion Point, LLC*, No. 2:21-cv-2756-MSN-atc, 2024 U.S. Dist. LEXIS 100035, at *11 (W.D. Tenn. June 5, 2024)(noting delay alone fails to show prejudice under *United Coin Meter* when granting defendant's motion to aside a default and denying plaintiff's motion for entry of a default judgment). As the Sixth Circuit has ruled, "[m]ere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." *United Coin Meter Co.*, 705 F.2d at 845 (*citing Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980) and *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656-57 (3d Cir. 1982)).

Rather, courts have determined that a plaintiff is deemed to be prejudiced only if there has been a loss of relevant evidence or some other occurrence, such as increased difficulties in discovery or a greater chance for fraud, which impairs the plaintiff's ability to pursue its claims. *See Doss,* 2024 U.S. Dist. LEXIS 100035, at *11 (citing Sixth Circuit rulings on motions to set aside default judgments pursuant to Rule 60(b)(1) when granting defendant's motion to set aside a default).

Under the facts of the dispute in Tennessee, there will be no loss of evidence or other legally cognizable prejudice to FedEx, and thus, this factor favors the granting of Defendant's pending motion in Tennessee to vacate FedEx's default judgment. *See Marquette Transp. Co. Gulf-Inland, LLC v. Arroyo Terminals, LLC*, No. 25-651, 2026 LX 65232, at *8-9 (E.D. La. Jan. 5, 2026)(when vacating default judgment even though defendant had failed to attend the hearing on the plaintiff's motion despite receiving notification from the court about the hearing, ruling

that "[w]hile Plaintiff may be inconvenienced by having to litigate its claims against Defendant on the merits, requiring a party to prove its claims does not qualify as prejudice").

3. *Defendants Have Meritorious Defenses to FedEx's Claims*.

As to this factor, the Sixth Circuit has ruled that "[i]n determining whether a defaulted defendant has a meritorious defense 'likelihood of success is not the measure.'" *United Coin Meter* Co., 705 F.2d at 845 (quoting *Keegel*, 627 F.2d at 734). "Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Id*. (citing *Rooks*, 263 F.2d at 169). Moreover, "even conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843 (internal quotations omitted). In the Tennessee matter, Defendant has made a show of defenses sufficient to meet this standard.

a. Lindell Has Meritorious Defenses to FedEx's Fraud Claim.

FedEx's First Amended Complaint named Lindell as a defendant for the first time, asserting a fraud claim against him. Lindell has several meritorious defenses to this claim.

i. Legal Standard for Evaluating FedEx's Fraud Claim against Lindell.

When analyzing FedEx's fraud claim, state law governs the substance of the claim and Fed. R. Civ. P. 9(b) governs the pleading requirements. *See, e.g.*, *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014)(providing that applicable state law governs the substance of tort claims and Rule 9(b) governs the pleading requirements).

ii. FedEx's Fraud Claim Fails Because It is Based Solely on Future Events Over Which Lindell Had No Control.

A fraud claim based on future events is fatally flawed under Tennessee law. *See, e.g.*, *Edwards v. Travelers Ins. of Hartford*, 563 F.2d 105, 110 (6th Cir. 1977)(to state an actionable

fraud claim under Tennessee law, "[f]irst, there must be a representation of an existing or past fact and not an opinion or a conjecture as to future events").

FedEx's Tennessee fraud claim is based entirely on Lindell's alleged mention of future events that were clearly in the control of third parties on whose representations and promised actions Lindell reasonably relied, and thus those challenged statements fail to support a viable fraud claim under Tennessee law (and also undercut FedEx's conclusory allegations that Lindell "knew" his statements were false when made). *See infra* (discussing allegations regarding Lindell's purported knowledge of falsity).

FedEx alleges that Lindell made several fraudulent representations about the planned initial public offering ("IPO") of a private company, FrankSpeech, in which Lindell was involved. Berens Dec. Ex. I ¶ 14 (emphasis added). The allegations regarding this IPO clearly refer to future events. *See id*. Furthermore, Lindell clearly had no control over the ultimate success of the IPO; it was not as successful as anticipated, and Lindell never received any funds as a result of this IPO. Lindell Dec. ¶ 17. Thus, Lindell's pre-IPO alleged statements about the IPO fail to support a viable fraud claim in Tennessee.

As to a potential "stock option opportunity" purportedly mentioned by Lindell, FedEx alleges that "Lindell also *promised* FedEx that it would get paid from a high-end stock option opportunity he was offered." Berens Dec. Ex. I ¶ 16 (emphasis added). FedEx's own description of this opportunity, on its face, clearly supports Lindell's meritorious defenses to FedEx's fraud claim premised on this incident: it is based on alleged "promise[s]" solely involving "forthcoming" events that were (and are) clearly outside of Lindell's control. *Id.*; *see also* Lindell Dec. ¶ 17. As a result, Lindell's purported representations regarding this "opportunity" fail to support a viable fraud claim under Tennessee law.

FedEx also claims Lindell was liable for fraud based on several potential loans. Berens Dec. Ex. I ¶ 15 (emphasis added). Again, FedEx's allegations in Tennessee are based solely on future events, in this case, potential loans that Lindell was hoping to obtain. *Id.* These loans were also future events beyond Lindell's control, and the loans that third parties had promised to Lindell never materialized. Lindell Dec. ¶ 17. All of FedEx's other allegations in support of its fraud claim based on Lindell's purported statements are also founded on the claimed nonoccurrence of future events. *See generally* Berens Dec. Ex. I.

FedEx's reliance solely on purported promises regarding future events fails to support a viable fraud claim against Lindell in Tennessee as a matter of law. *See, e.g.*, *Van Eman v. Keuffel & Esser of N.J., Inc.*, No. C.A. 87-359-II, 1988 Tenn. App. LEXIS 388, at *15 (Tenn. Ct. App. June 15, 1998)(holding that fraud claim under Tennessee law may not be predicated on statements or opinions as to future events). Lindell has a meritorious defense to FedEx's fraud claim for purposes of the third *United Coin Meter* factor.

iii. FedEx's General Allegations regarding Lindell's Purported Knowledge of Falsity Fail to Meet the Pleading Requirements of Fed. R. Civ. P. 9(b).

FedEx's fraud claim against Lindell in Tennessee also fails to meet the pleading standards in Fed. R. Civ. P. 9(b) because it never sets forth any specific facts (as opposed to generic assertions) which support the contention that Lindell *knew* that the statements challenged by FedEx were false at the time they were allegedly made. There are only three paragraphs in the First Amended Complaint that touch on Lindell's purported knowledge of falsity at the time they were made. Paragraph 13 of FedEx's First Amended Complaint baldly asserts that "Lindell knew the representations he was making were false when they were made and that neither he nor My Pillow had any intention of actually satisfying the debt owed to FedEx." Berens Dec. Ex. I ¶

13. Paragraph 19 of the First Amended Complaint sets forth the same generalized allegation as to Lindell, asserting that he "knew his representations were false when they were made." *Id.* ¶ 19. Paragraph 30 of the First Amended Complaint baldly asserts that Lindell's alleged statements were "intentionally made by [Lindell] recklessly or with knowledge that the representations were false when made." *Id.* ¶ 30.

The formulaic, conclusory allegations in those three paragraphs regarding Lindell's purported knowledge of the falsity of various statements at the time they were made are insufficient to state a viable fraud claim as a matter of law in the Tennessee matter. As the Sixth Circuit has noted, "'[t]he courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.'" *Heinrich v. Waiting Angels Adoption Servs*., 668 F.3d 393, 406 (6th Cir. 2012)(*quoting Greenstone v. Cambex Corp*., 975 F.2d 22, 25 (1st Cir. 1992)(internal quotation marks in the original). As set forth *supra*, there are no specific facts alleged in the First Amended Complaint "that make it reasonable to believe" that Lindell knew the challenged statements were false. This provides another meritorious defense to FedEx's fraud claim against Lindell. *See id*.

Furthermore, Lindell believed all the statements he made in calls and set forth in texts to FedEx at the time they were made, providing further support of this meritorious defense to FedEx's fraud claim.[2] Lindell Dec. ¶ 17.

iv. FedEx's Allegations of Fraud Fail Based on Its Express Reliance on Future, Intervening Events.

[2] Pilon also believed in good faith that the statements set forth in his letter, which was quoted in Paragraph 15 of the First Amended Complaint (Berens Dec. Ex. I), were true at the time he wrote that letter. Pilon Dec. ¶ 7.

FedEx's fraud claim in Tennessee is based solely on future, intervening events, such as a prospective IPO, a "stock option opportunity," and potential loans.[3] *See* Berens Dec. Ex. I ¶¶ 13, 19, 30; *see supra* (quoting same). When relying on such intervening events, a plaintiff may not simply allege fraud by hindsight but must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statements regarding forthcoming events were untrue or misleading when made. As set forth above, FedEx failed to do so. This provides yet another meritorious defense to FedEx's fraud claim. *See, e.g.*, *Denny v. Barber*, 576 F.2d 465, 469-70 (2d Cir. 1978)(where bank's finances declined because of, inter alia, the 1970's oil embargo and New York City's near-bankruptcy in 1975, plaintiff's contention that defendants should have disclosed the downturn in the company's fortunes earlier was insupportable; plaintiff could not allege "fraud by hindsight"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (ruling that the plaintiff may not simply allege that the difference between a company's earlier statements claiming the company's strong financial health and later statements revealing the company's failing health "must be" attributable to fraud), *cert. denied*, 498 U.S. 941 (1990); *see also Greenstone*, 975 F.2d at 25-26 (holding that the mere fact that the company was eventually sued does not mean, as was alleged, that defendants acted fraudulently in omitting to reveal this fact before the lawsuit was filed).

Based on the foregoing, Lindell has several meritorious defenses to FedEx's fraud claim, and thus, this third *United Coin Mete*r factor supports vacation of the default judgment in Tennessee against Lindell.

[3] Lindell further contends that Arctic Frost may well have destroyed any possibility of obtaining loans relied on by FedEx as well as other future events on which FedEx bases its fraud claim. Lindell Dec. ¶ 17; *see also supra* (setting forth financial disasters trigged by Arctic Frost).

b. My Pillow Has Meritorious Defenses to FedEx's Claims.

My Pillow also has meritorious defenses to FedEx's breach of contract and unjust enrichment claims. *First*, FedEx wrongfully charged My Pillow more than $1,300,000.00 in late fees despite the fact that My Pillow was paying FedEx on a timely basis. Lindell Dec. ¶ 18. This not only materially breached the parties' contract but was one of the events that triggered the financial disasters that My Pillow was suffering.[4] *Id.* ¶ 18.

*Second*, FedEx unilaterally and without justification changed the material terms of the parties' arrangement by, inter alia, decreasing the number of days for the due date of My Pillow's payments from 60 days, to 45 days, to 30 days, even though My Pillow was still paying FedEx, and at the same time, FedEx increased the amount of the late fees that it was charging for allegedly late payments. *Id.* ¶ 18. *Third*, FedEx even began to refuse to allow My Pillow to pay cash for shipping. *Id.*

As a result of FedEx's actions, the damages alleged by FedEx claims are incorrect, and My Pillow disputes the amount of the default judgments. *See Key Bank of Me. v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 354-55 (1st Cir. 1996)(recognizing that dispute as to the damages amount is a meritorious defense for purposes of a Rule 60(b)(1) motion).

Furthermore, FedEx not only breached the parties' agreement, but it also breached its duty of good faith and fair dealing by refusing to accept cash payments from My Pillow. FedEx's inequitable conduct provides My Pillow with a meritorious defense to FedEx's unjust enrichment claim because a party with unclean hands is precluded from obtaining equitable

[4] Although FedEx ultimately gave My Pillow partial credit for those improper late fees, it nonetheless still shorted My Pillow by about $500,000.00. Lindell Dec. ¶ 18. And FedEx's delay in providing credit for those late fees had an extraordinarily damaging impact on My Pillow during a time, as My Pillow has now learned, when My Pillow was under attack by Arctic Frost. *Id.*

relief. *See, e.g.*, *Spirit Broadband, LLC v. Armes*, No. M2015-00559-COA-R3-CV, 2017 Tenn. App. LEXIS 49, at *24 (Tenn. Ct. App. Jan. 27, 2017)(affirming application of unclean hands doctrine to bar plaintiff's recovery on a promissory note).

Based on the foregoing, the third *United Coin Meter* factor also supports My Pillow's motion to vacate FedEx's default judgment against My Pillow.

### D. The Substantial Amount of the Default Judgments Strongly Supports Their Vacation.

The Tennessee court entered default judgment against My Pillow in the amount of $8,809,056.31, and against My Pillow and Lindell in the amount of $2,677,933.31. Courts have recognized that "[m]atters involving large sums of money should not be determined by default judgments if it can be reasonably avoided." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)(citation omitted)(vacating default judgment based on, inter alia, the amount of that default judgment); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981)(when reversing district court's denial of motion to vacate a default judgment, citing the amount of the judgment as one of the factors supporting that reversal because in cases where "the amount of money involved is very great, [that] itself militat[es] in favor of a full trial on the merits").

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment should be denied.

Dated: New York, New York
May 12, 2026

PARNESS LAW FIRM, PLLC

By: /s/ Hillel I. Parness

Hillel I. Parness
136 Madison Ave., 6th Floor
New York, New York 10016
(212) 447-5299
hip@hiplaw.com
*Attorneys for Defendant Michael Lindell*

## LOCAL CIVIL RULE 7.1(c) CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), the total number of words in the foregoing memorandum of law, inclusive of footnotes and exclusive of the caption, indices, tables, signature blocks, and certificates, is 8,272.

Dated: May 12, 2026

/s/ Hillel I. Parness
Hillel I. Parness