# EXHIBIT J

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE WESTERN
DIVISION

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MY PILLOW, INC. and MICHAEL J. LINDELL,<br><br>Defendants. | Civil Action NO. 2:25-cv-02222-JPM-atc<br><br>**DEFENDANTS' MOTION TO SET ASIDE THE DEFAULT JUDGMENTS** |

**COME NOW** Defendants, My Pillow, Inc. (hereinafter "My Pillow") and Michael J. Lindell (hereinafter "Lindell") (collectively referred to as "Defendants"), and submit this Motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the Clerk's Entry of Default (ECF No. 18), entered on July 8, 2025. Defendants submit that there is good cause to set aside the default judgment. In support of the same, Defendants would submit the contemporaneously filed Defendants' Memorandum of Law in Support of their Motion To Set Aside the Default Judgments, and state unto the Court as follows:

Plaintiff Federal Express Corporation (hereinafter "FedEx") sued Defendant, My Pillow, Inc. (hereinafter "My Pillow"), on February 27, 2025, asserting breach of contract and unjust enrichment claims. See Compl. (Dkt. No. 1). FedEx's attempt to serve its initial Complaint and summons on My Pillow in March of 2025 was not valid because the Complaint was left with an

individual, Joseph Schmieg, see 3/18/25 Certificate of Service (Dkt. No. 12), who has never been authorized to accept service on behalf of the company.

On June 6, 2025, FedEx filed its First Amended Complaint, alleging the same two claims against My Pillow but also adding Defendant Michael J. Lindell (hereinafter "Lindell") as a defendant, asserting only one claim against Lindell, for fraud based on Lindell's purported statements regarding the possibility of My Pillow's ability to make future payments.

On July 7, 2025, a mere thirty-one days later, FedEx raced to the court to ask the Clerk to enter a default against My Pillow and Lindell. On August 1, 2025, this Court entered default judgments against My Pillow and Lindell.

There are several reasons for the Court to set aside the default judgments in this case that are expounded further in Defendants' Memorandum of Law in Support of their Motion To Set Aside the Default Judgments. First, the applicable federal rule of civil procedure and the other factors the Court is to consider in making its determination favor the lifting of the default judgments against My Pillow and Lindell. Defendants thus ask the Court to grant their motion. Second, there is a strong preference for claims to be decided on their merits. Third, the entry of default judgments in such significant amounts is even more disfavored.

## CONCLUSION AND PRAYER FOR RELIEF

In conclusion, the Defendant prays that the Court set aside the default entered on February 2, 2024 and allow Defendant to proceed with a responsive pleading and/or motion. Defendant further prays for any such additional relief, either general or specific, that the Court deems appropriate.

**WHEREFORE, PREMISES CONSIDERED**, Defendants respectfully pray that this Court set aside the default judgments entered on July 8, 2025 and allow Defendants to proceed

with responsive pleadings and/or motions. Defendants further pray for any such additional relief, either general or specific, that the Court deems appropriate..

Respectfully submitted,

By: /s/ Jason M. Goldstein
Jason M. Goldstein (BPR No. 034735)
HARKAVY SHAINBERG KAPLAN PLC
*Attorneys for Cedar Bluff Properties Corp. and Stephen Stansell*
6060 Poplar Ave, Suite 140
Memphis TN 38119
(901) 866-5357
(901) 866-5357 (fax)
Email: jgoldstein@harkavyshainberg.com

## CERTIFICATE OF CONSULTATION

I hereby certify pursuant to Local Rule 7.2(a)(1)(B) that on May 12, 2026, I attempted to confer by email and telephone with Jason R. Bernhardt with regard to the relief requested in the foregoing motion.

By: /s/ Jason M. Goldstein
Jason M. Goldstein

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of May, 2026, the foregoing pleading was served via the Court's ECF system upon the following counsel of record:

Jason R. Bernhardt, Esq.
Federal Express Corporation
3620 Hacks Cross Road
Building B – 3rd Floor

Case 2:25-cv-02221-JPM-atc Document 17-14 Filed 05/12/25 Page 4 of 4 PageID

Memphis, Tennessee
jasonbernhardt@fedex.com

By: /s/ Jason M. Goldstein
Jason M. Goldstein

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE WESTERN
DIVISION

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MY PILLOW, INC. and MICHAEL J. LINDELL,<br><br>Defendants. | Civil Action NO. 2:25-cv-02222-JPM-atc<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO SET ASIDE THE DEFAULT JUDGMENTS** |

## INTRODUCTION

Plaintiff Federal Express Corporation (hereinafter "FedEx") sued Defendant My Pillow, Inc. (hereinafter "My Pillow") on February 27, 2025, asserting breach of contract and unjust enrichment claims. *See* Compl. (Dkt. No. 1). FedEx's attempt to serve its initial Complaint and summons on My Pillow in March of 2025 was not valid because the Complaint was left with an individual, Joseph Schmieg, *see* 3/18/25 Certificate of Service (Dkt. No. 12), who has never been authorized to accept service on behalf of the company.[1]

On June 6, 2025, FedEx filed its First Amended Complaint, alleging the same two claims against My Pillow but also adding Defendant Michael J. Lindell (hereinafter

[1] *See infra* (discussing same).

"Lindell") as a defendant, asserting only one claim against Lindell, for fraud based on Lindell's purported statements regarding the possibility of My Pillow's ability to make future payments.

On July 7, 2025, a mere thirty-one days later, FedEx raced to the court to ask the Clerk to enter a default against My Pillow and Lindell. On August 1, 2025, this Court entered default judgments against My Pillow and Lindell.

There are several reasons for the Court to set aside the default judgments in this case. *First*, the applicable federal rule of civil procedure and the other factors the Court is to consider in making its determination favor the lifting of the default judgments against My Pillow and Lindell. Defendants thus ask the Court to grant their motion. *Second*, there is a strong preference for claims to be decided on their merits. *Third*, the entry of default judgments in such significant amounts is even more disfavored.

**BACKGROUND**

For years, My Pillow relied on FedEx to ship My Pillow products to customers. *See* Declaration of Michael J. Lindell dated May 11, 2026 ("Lindell Decl.") ¶ 2. And for years, My Pillow paid millions of dollars to FedEx on a timely basis. *Id.*

Beginning in mid-2022, however, My Pillow began suffering a string of what were then inexplicable financial reversals, which have recently been revealed to be triggered as a result of Operation Arctic Frost.[2] Lindell Decl. ¶ 3. In June of 2022, Walmart, which

[2] Operation Arctic Frost ("Arctic Frost") is the label that has been given to an investigation launched under the Biden administration in April 2022 that targeted, inter alia, eight Republican senators, various individuals, and My Pillow. *See* Declaration of Barbara P. Berens dated May 11, 2026 ("Berens Decl.") Ex. A (*Q&A: Arctic Frost With*

was, according to Lindell, "by far and away [the] number one" retail partner of My Pillow, removed My Pillow products from its physical stores.[3] *See* Lindell Decl. ¶ 6. Walmart's actions made no economic sense as Lindell revealed that the "MyPillow line is 'one of the top-selling products in the history of Walmart.'"[4] *See id.* ¶ 6.

My Pillow's bank was subpoenaed for My Pillow financial records in the context of Arctic Frost,[5] and as a result, My Pillow's bank terminated its relationship with My Pillow. *Id.* ¶ 7.

American Express suddenly slashed My Pillow's credit line by 90%, decreasing it from $1,000,000.00 to $100,000.00 without warning,[6] and demanded payment within 24

---

*U.S. Senator Chuck Grassley* (Oct. 17, 2025)(located at https://www.grassley. senate.gov/news/news-releases/ qanda-arctic frost#:~:text=Q:%20What%20is%20); *id*. Ex. C (Subpoena Tracker List, compiled by Senate Judiciary Committee Staff, at 2)(highlighting added)(listing of subpoenas issued in the context of Arctic Frost, including a subpoena to My Pillow's bank, Central Bank, seeking documents related to My Pillow)(located at https://www. grassley.senate.gov/ imo/media/doc/arctic_frost197_subpoena_tracker_compiled_by_ sjc_staff.pdf); *id.* Ex. G (U.S. Senate Committee on the Judiciary, Press Release: *NEW: Jack Smith Subpoenaed Records for Over 400 Republican Targets As Part of Arctic Frost* (Oct. 29, 2025)(located at https://www.judiciary.senate.gov/press/rep/releases/new-jack-smith-subpoenaed-records-for-over-400-republican-targets-as-part-of-arctic-frost).

[3] Berens Decl. Ex. B (Cheryl Teh, *Mike Lindell Says Walmart Is 'Canceling' Him and Pulling His Products*, BUSINESS INSIDER June 16, 2022)(located at https://www.business insider.com/ mike-lindell-says-walmart-is-canceling-him-pulling-his-products-2022-6).

[4] *Id*.

[5] The Senate Judiciary Committee's listing of the Arctic Frost subpoenas reveals that My Pillow's bank had been subpoenaed for its records in the context of Arctic Frost. *See* Berens Decl. Ex. C (*Subpoena Tracker List*, compiled by the Senate Judiciary Committee Staff, at 2)(highlighting added)(indicating that Central Bank had been subpoenaed for My Pillow bank records)(located at https://www.grassley.senate.gov/imo/media/doc/ arcticfrost197subpoena_tracker_compiled_by_sjc_staff.pdf).

[6] Berens Decl. Ex. D (Kwan Wei Kevin Tan, *Mike Lindell Says American Express Slashed MyPillow's Credit Line*, BUSINESS INSIDER, Sept. 27, 2023)(located at

hours. *Id.* ¶ 8. American Express took these steps despite the fact that My Pillow had NEVER been late on its payments before, and the amount then owed to American Express was within My Pillow's credit limit and terms. *Id*.

In addition, My Pillow's merchant server imposed a new $5,000,000.00 hold on the funds in My Pillow's account, which forced My Pillow to find another merchant server. Lindell Decl. ¶ 4.[7]

My Pillow suffered yet another blow when Fox News dropped all of its advertising based on an alleged payment dispute. *Id*. ¶ 5. Yet Fox News took this action while My Pillow only owed an amount that was within My Pillow's then-credit limit with Fox News. *Id*. Fox News also decreased the window of time in which My Pillow was required to pay for advertising, from twelve weeks down to eight weeks. *Id*.[8]

When faced with financial setback after setback, Lindell sought various options to keep My Pillow in business and pay its bills, vendors, and employees. Lindell Decl. ¶ 9. During this time, Lindell was texting and speaking with FedEx about My Pillow almost daily. *Id*. ¶ 10. During these regular calls and texts exchanges with FedEx, Lindell

---

https://www.businessinsider.com/mike-lindell-says-american-express-slashed-mypillow-credit-line-2023-9).

[7] *See also* Berens Decl. Ex. F (Giulia Carbonaro, *Mike Lindell Insists MyPillow Is Not Going Out of Business*, NEWSWEEK, Oct. 27, 2023)(reporting that Lindell stated that "We're being defunded, debanked … American Express debanked [My Pillow] 'out of the blue.'")(located at https://www.newsweek.com/mike-lindell-insists-mypillow-not-going-out-business-1838612).

[8] *See also* Berens Decl. Ex. E (Steve Karnowski, *Fox News stops running MyPillow commercials in a payment dispute with election denier Mike Lindell*, The Associated Press, Jan. 12, 2024)(located at https://apnews.com/article/mile-lindell-mypillow-fox-news-election-denier-437fd518ce33eb2f8ee22588bd6a5ed8).

mentioned various ways in which My Pillow was hoping to obtain funds, and Lindell openly discussed the current status of those potential financial alternatives with FedEx. *Id*. ¶¶ 9, 10; *see also infra* (describing those potential alternatives in detail).

All of those options, however, were contingent on either the fulfillment of the promised future performance of independent third parties and/or the occurrence of future events outside of Lindell's control. *Id*. ¶ 10. And Lindell made clear to FedEx on many occasions that neither Lindell nor My Pillow controlled those third parties' future actions and/or the completion of future events. *Id*. ¶ 10; *see also infra* (describing this in detail).

In February of 2025, FedEx filed its initial Complaint in this Court. *See* Compl. (Dkt. No. 1). As noted *supra*, the initial Complaint named only My Pillow as a defendant and asserted breach of contract and unjust enrichment claims. *See generally id*.

In March of 2025, Joe Schmieg, an employee at My Pillow who was not and never has been authorized to accept service on behalf of My Pillow, *see* Declaration of Joe Schmieg dated May 11, 2026 ("Schmieg Decl.") ¶¶ 1, 2; was allegedly handed FedEx's initial Complaint according to the certificate of service. *See* 3/7/25 Affidavit of Service (Dkt. No. 12). Lindell was never informed about this incident and never saw that document. Lindell Decl. ¶ 13; Declaration of Jeremiah Pilon dated May 11, 2026 ("Pilon Decl.") ¶ 2 (My Pillow's General Counsel attesting that he did not know about this attempted service).

On June 6, 2025, Lindell was handed what was allegedly the First Amended Complaint when Lindell was out in the hall during a several-minute break while attending a jury trial in Colorado federal district court in which Lindell was a defendant

and the plaintiff was seeking millions of dollars from Lindell and another defendant. Lindell Decl. ¶ 14; *see* 6/6/25 Affidavits of Service (Dkt. Nos. 15 & 16). Lindell was focused solely on the ongoing federal jury trial and barely registered that someone had handed him documents. Lindell Decl. ¶ 14. He believed that the encounter was either related to that Colorado trial or a maneuver by the media personnel, who were closely following the jury trial. *Id*. Lindell does not know what happened to the documents, which he never read because he was in the midst of a contentious federal trial and immediately returned to the courtroom and continued to focus on those proceedings. *Id*.

FedEx's First Amended Complaint alleges the same two claims against My Pillow, for breach of contract and unjust enrichment. *See* First. Am. Compl. ¶¶ 22-28 (Dkt. No. 13). It added for the first time a fraud claim against Lindell based solely on future events, *see id*. ¶¶ 29-30, all of which were outside of Lindell's control and in the control of third parties, circumstances that Lindell had openly explained and discussed with FedEx prior to it commencing this action. Lindell Decl. ¶ 10; *see infra* (discussing fraud claims in greater detail).

Only thirty-one days later, on July 7, 2025, FedEx moved the Clerk for entry of the default against My Pillow and Lindell, which was entered on July 8, 2025. *See* 7/7/25 Request for Clerk's Entry of Default (Dkt. No. 17); 7/8/25 Clerk's Entry of Default (Dkt. No. 18). My Pillow and Lindell never received copies of these filings at that point in time, only learning of the filings after FedEx began its collection activities. Lindell Decl. ¶¶ 15, 16.

On July 10, 2025, FedEx moved for entry of the default judgments. See 7/10/25 Motion for Entry of Default Judgment (Dkt. No. 19). Even though FedEx certified that this motion was mailed to My Pillow and Lindell, *id*. at 3; they never received the documents. Lindell Decl. ¶ 15; Pilon Decl. ¶ 5.

On August 1, 2025, this Court entered default judgments against My Pillow and Lindell. *See* 8/1/25 Order Granting Motion for Default Judgment (Dkt. No. 24). Lindell and My Pillow never received a copy of that Order until after FedEx began its collection activities. Lindell Decl. ¶¶ 15, 16; Pilon Decl. ¶ 4.

Lindell and My Pillow never received any other documents, notifications, or court filings in this matter and My Pillow and Lindell were never aware of the FedEx lawsuit until after the default judgments had been entered in favor of FedEx, even though Lindell was in almost constant contact with FedEx during that time. Lindell Decl. ¶¶ 11, 16. My Pillow and Lindell would have responded timely if they had been aware of the pending default and subsequent default judgments, which they were not. Lindell Decl. ¶ 16; Pilon Decl. ¶ 6.

Defendants contend that they meet the requirements to vacate FedEx's default judgments and therefore ask the Court to grant their motion.

## LEGAL ARGUMENT

### I. FEDEX'S SERVICE OF ITS INITIAL COMPLAINT ON MY PILLOW WAS INVALID AND THE COMPLAINT IS THUS INOPERATIVE.

As a threshold matter, the service of FedEx's initial Complaint was invalid because it was left with an individual, Joseph Schmieg, *see* 3/18/25 Certificate of Service

(Dkt. No. 12), who is not authorized to accept service on behalf of My Pillow. Under both Tennessee law and the federal rules, "[i]n the context of serving process, the record must contain 'evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant.'" *Hall v. Haynes*, 319 S.W.3d 564, 573 (Tenn. 2010)(quoting *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002)(alterations in original)).

When analyzing this question:

> Agency for this purpose is held to a rigorous standard. 'The bare fact that an alleged agent actually accepts process for the defendant is not enough to constitute valid service of process. There must be evidence that the defendant intended to confer upon its agent the specific authority to receive and accept service of process for the defendant. *Arthur*, 249 F. Supp. 2d at 929 (quoting 4A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1097 (3d ed. 2002)).

Report and Recommendation, *Cunningham v. Lexington Doc Prep, LLC*, No. 3:15-cv-467, 2017 U.S. Dist. LEXIS 116018, at *6, 2017 WL 3149579 (M. D. Tenn. July 25, 2017), *adopted by Cunningham v. Lexington Doc Prep, LLC*, No. 3:15-cv-00467, 2017 U.S. Dist. LEXIS 128861, at *1 (M.D. Tenn. Aug. 14, 2017).

When obtaining its default judgments, FedEx did not present any evidence that Schmieg was authorized to accept service of process on behalf of My Pillow. And FedEx will be unable to present any such evidence because Schmieg is not so authorized. Lindell Decl. ¶ 12; Pilon Decl. ¶ 3.

Schmieg holds the title of vice president of sales, *see* 3/18/25 Certificate of Service, but in that role, he is not an executive officer of My Pillow because he has never been elected by My Pillow's Board of Directors (which is required by My Pillow's by-

laws in order to be a corporate executive, *see* Lindell Decl. ¶ 12), he has never had any executive responsibilities, he makes no strategic decisions, and he is not and never has been authorized to bind My Pillow or accept service of process on behalf of My Pillow. *See* Lindell Decl. ¶ 12; Schmieg Decl. ¶¶ 1, 2; Pilon Decl. ¶ 3.

Valid service requires that the person who accepts service must be appointed as agent by the company specifically for that purpose; failure to meet this requirement renders service defective because:

> Acting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process. Nor is the mere fact of acceptance of process sufficient to establish agency by appointment.

*Hall*, 319 S.W.3d at 573; *accord Tepe v. Whirlpool Corp*., No. 22-5826, 2023 U.S. App. LEXIS 13818, at *5 (6th Cir. June 2, 2023)(quoting *Hall*, 319 S.W.3d at 573).

Here, My Pillow has never appointed or otherwise authorized Schmieg to accept service on behalf of My Pillow, *see* Lindell Decl. ¶ 12; Pilon Decl. ¶ 3; Schmieg Decl. ¶¶ 2, 3; and Schmieg's alleged acceptance of the initial Complaint also fails to establish his agency by appointment. *Hall*, 319 S.W.3d at 573.

Furthermore, the allegations set forth in FedEx's First Amended Complaint confirm that it knew the identity of the only individuals who are authorized to accept service on behalf of My Pillow, that is, Lindell or Doug Wardlow (whom FedEx alleges was My Pillow's registered agent), and *not Schmieg*:

> My Pillow, Inc. is a Minnesota corporation with its principal place of business in Chaska, Minnesota. *It may be served with this Complaint through either its registered agent for service, Doug Wardlow, or its CEO Michael Lindell both located at 1550 Audubon Road, Chaska, MN 55318.*

First Am. Compl. ¶ 2 (emphasis added). This admission confirms the inadequacy of service on Schmieg.

Based on the foregoing, it is clear that service of the initial Complaint on Schmieg was invalid, and thus, FedEx's initial Complaint is without legal effect, and the Court should so rule. *See, e.g.*, *Tepe v. Whirlpool Corp.*, No.: 1:22-CV-136-KAC-SKL, 2023 U.S. App. LEXIS 13818, at *4-5 (E.D. Tenn. Sept. 12, 2022)(when granting defendant's motion to dismiss plaintiff's complaint for insufficient service of process, finding that plaintiff's "first and second attempts at service are insufficient because they were not made to a qualifying officer or agent of Whirlpool"), *aff'd Tepe v. Whirlpool Corp.*, 2023 U.S. App. LEXIS 13818, at *4-6 (when affirming district court's decision that plaintiff's service attempts were improper, ruling that "the record must contain 'evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant'" and plaintiff failed to proffer such evidence) (quotation omitted)); *see* Report and Recommendation, *Cunningham*, 2017 U.S. Dist. LEXIS 116018, at *8 (determining that the individual served with the complaint was not an agent authorized to accept service on behalf of defendants, and therefore concluding "that plaintiff has failed to establish that these defendants were properly served; this court therefore lacked jurisdiction to enter a default or default judgment against them; and that the judgment should be set aside and void pursuant to Federal Rule of Civil Procedure 60(b)(4).").

## II. THE COURT SHOULD VACATE FEDEX'S DEFAULT JUDGMENTS.

### A. Standard to Vacate Pursuant to Federal Rule of Civil Procedure 60(b).

When considering a motion to set aside a default judgment pursuant to Fed. R. Civ. P. 60(b), the Court is to consider three factors:

1. Whether the plaintiff will be prejudiced;
2. Whether the defendant has a meritorious defense; and
3. Whether culpable conduct of the defendant led to the default.

*United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839, 845 (6th Cir. 1983) (quotation omitted). The movant must also satisfy one of Rule 60(b)'s express requirements. *See, e.g.*, *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1995)(ruling that when determining a motion to set aside a default judgment, the court is to consider the *United Coin Meter* factors and must also find that the movant meets "one of the specific requirements of Rule 60(b)"). Rule 60(b) of the Federal Rules of Civil Procedure provides in part that:

> (b) [T]he court may relieve a party. . .from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reasons justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(1), (4), (6). The Sixth Circuit has ruled that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter,* 705 F.2d at 845. As a result, "[i]n considering a motion to set aside entry of a judgment by default a district court must apply Rule 60(b) 'equitably and liberally ... to

achieve substantial justice.'" *Id.* at 844-45 (quoting *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980)(per curiam)).

The Sixth Circuit has further determined that when evaluating a motion to vacate a default judgment, "the court should . . . construe[] all ambiguous or disputed facts in the light most favorable to the defendant[], any doubt should be resolved in favor of the defendant." *Invst Fin. Grp. v. Chem-Nuclear Sys.*, 815 F.2d 391, 398 (6th Cir. 1987) (quoting *Jackson* v. Beech, 636 F.2d 831, 838 (1980)(internal quotations omitted) (alterations in the original).

When analyzing the requirements of Rule 60(b)(1) and the three relevant *United Coin Meter* factors in light of the case law holding that default judgments are disfavored, and that the Court is to apply Rule 60(b) liberally, My Pillow and Lindell contend that their motion to vacate the default judgments should be granted.

**B. Defendants Meet the Requirements of Rule 60(b)(1).**

The Court may set aside a default judgment pursuant to Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect." Here, Defendants meet those requirements. *First*, the service of the initial FedEx Complaint on Schmieg was invalid, as set forth above, and Lindell and My Pillow were never aware of this attempted service on My Pillow until after the default judgments were entered and FedEx started its collection efforts. Lindell Decl. ¶ 13; Pilon Decl. ¶ 2. Thus, in addition to the legal invalidity of the initial Complaint as a result of the defective service, *see supra*, any failure to respond to the initial Complaint is also excused on the basis of surprise. *Cf. Rooks v. American Brass Co.*, 263 F.2d 166, 168 (6th Cir. 1959)(per curiam)(affirming

vacation of default judgment under Rule 60(b)(1) despite plaintiff's proper service of the complaint at the named defendant's residence where his wife had received the complaint and failed to inform him of the service based in part on her mistaken belief that the lawsuit was against the named defendant's company and so she passed the complaint on to her husband's business manager, who also mistook the complaint for a suit involving only the company).

*Second*, Defendants' failure to respond to the First Amended Complaint, the motion for default, and the motion for a default judgment should be excused under Rule 60(b)(1) on the basis of excusable neglect, inadvertence, and surprise.

The United States Supreme Court has adopted a "flexible understanding" of what constitutes "excusable neglect" under various procedural rules, *see Pioneer Inv. Service Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 389 (1993), including Rule 60(b)(1). The Supreme Court determined that excusable neglect under Rule 60(b) specifically "encompasses situations in which the failure to comply with a filing deadline is attributable to *negligence*." *Id.* at 394 (emphasis added).

As to the First Amended Complaint, Lindell was ambushed in a courthouse hallway while on a very short break taken by the court during a contentious federal trial in Colorado when he was handed some papers. Lindell Decl. ¶ 14. The courthouse was swarming with media personnel and Lindell was facing possible liability for potentially millions of dollars in damages in that trial. *Id.* Lindell was understandably focused solely on that federal trial and had no idea what had been handed to him. *Id*. He thought that the encounter was either a media ploy or some papers related to that Colorado case,

and he never read the papers. *Id*. In fact, Lindell was so engrossed in the federal trial that he does not know what ever happened to the materials that were handed to him. *Id*.

Under the foregoing circumstances, Lindell acted, at most, with inadvertence and excusable neglect when he did not examine papers that were handed to him in another state, in unfamiliar circumstances, and while he totally immersed in the throes of a federal trial, and believed the documents were either a media tactic or were a part of the Colorado federal trial.

Based on the foregoing, the Court should conclude that Defendants satisfied the conditions to set aside the default judgments under Rule 60(b)(1) as a result of inadvertence and excusable neglect. *See, e.g.*, *McVicker v. Donnelly*, 95 F.R.D. 353, 355 (E.D. Pa. 1982)(when vacating default judgment under Rule 60(b)(1), holding that defendant's "confusion resulting from the time proximity and subject matter similarity of the two proceedings clearly demonstrate that defendant's failure to respond constitutes excusable neglect")(internal quotation marks omitted); *Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22-CV-2256-ARR-JRC, 2025 LX 435865, at *16 (E.D.N.Y. Oct. 16, 2025)(finding excusable neglect under Rule 60(b)(1) when setting aside default judgment because there is "some doubt that a party received the pleading on which default is based [and thus] the default is not deemed willful"); *Sream Inc. v. Saakshi Enters.*, No. 16-cv-1408 (NG) (RML), 2017 U.S. Dist. LEXIS 93182, at *5-6 (E.D.N.Y. June 14, 2017) (denying motion to enter default judgment and finding that defendant's default was not willful but was instead caused by its attorney's negligence, which resulted in the complaint being put in the wrong file at the law firm); *Murray Eng'g, P.C. v. Windermere*

*Props. LLC*, No. 12 Civ. 0052 (JPO), 2013 U.S. Dist. LEXIS 61877, 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013)(setting aside default judgment based, inter alia, on the court's finding of excusable neglect where defendant confused papers from two separate lawsuits and the entry of default judgment was not the result of defendant's strategic decision); Report and Recommendation, *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-cv-6977 (NGG)(RER), 2018 U.S. Dist. LEXIS 197155, at *5-6 (E.D.N.Y. Nov. 16, 2018)(recommending that default judgment should be vacated even though plaintiff's service of the complaint on the secretary of state was proper and defendant failed to receive complaint solely because of its own negligence in failing to provide the secretary of state with its current address because defendant's negligence alone was not enough to justify denial of its motion to vacate), *adopted by Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG)(RER), 2019 U.S. Dist. LEXIS 4055, at *3 (E.D.N.Y. Jan. 8, 2019).

It is also noteworthy that Lindell was in regular contact with FedEx personnel during the period of time before FedEx sued, yet during these numerous communications, both in telephone calls and texts, Lindell was never informed about this lawsuit, any of the filings in the lawsuit, or the Court's entry of the default and then the default judgments. Lindell Decl. ¶ 16; *cf. Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 795 (6th Cir. 2002)(when affirming vacation of a default judgment under Rule 60(b)(1), indicating that plaintiff's arguments in support of default judgment were "somewhat disingenuous" where there was frequent contact between the parties' attorneys "prior to the initiation of this suit, but [plaintiff's counsel] elected not to notify them [defendant's

counsel] of the filing of the lawsuit, the entry of default or the default judgment"). Indeed, neither Lindell nor My Pillow were ever provided with or otherwise received notice of the filings in the lawsuit in support of the default or the Court's entry of the default judgments until after FedEx began its efforts to collect. *Id.* ¶ 16; Pilon Decl. ¶ 4. Thus, Lindell and My Pillow only learned of the existence of the lawsuit after this Court entered default judgments in FedEx's favor and FedEx began its collection activities. Lindell Decl. ¶¶ 15, 16; Pilon ¶ 4.

When considering such a lack of notice, courts have ruled that "[s]uch a circumstance falls within the ambit of 'mistake, inadvertence, surprise or excusable neglect' as contemplated by Rule 60(b)(1)." *Nelson v. Metalsa Structural Prods., Inc.*, Civil Action No. 3:21-CV-293-CHB, 2023 U.S. Dist. LEXIS 227669, at *7 (W.D. Ky. June 14, 2023)(vacating default judgment based on defendant's lack of knowledge of lawsuit until after default judgment was entered); *id*. at *9 (after considering Rule 60(b)(1) and all *United Coin Meter* factors, vacating default judgment based on finding that defendant "has offered good cause for why it did not previously respond to Plaintiff's Complaint or participate in this case: it never received notice of the litigation").

As a result, the default judgments should also be set aside under Rule 60(b)(1) on the basis of surprise. *See, e.g.*, *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996)(when affirming the district court's vacation of a default judgment, concluding that defendant "clearly established surprise, as its agent attested that [defendant] was unaware that a lawsuit had been filed until after the default judgment had been entered. Assuming *arguendo* that service of process … was acceptable in these

circumstances, the lack of actual notice of a lawsuit is a sufficient reason for the district court to set aside a judgment under Rule 60”).

### C. **<u>The Relevant Factors under United Coin Meter Support the Grant of Defendants’ Motion to Vacate</u>.**

All three of the factors set forth in *United Coin Meter* also support the grant of Defendants’ motion.

#### 1. *<u>Defendants Did Not Engage in Any Culpable Conduct</u>*.

The Sixth Circuit has ruled that a party seeking to vacate a default judgment satisfies its burden for purposes of this *United Coin Meter* factor regarding culpable conduct “by meeting the requirements of Rule 60(b)(1), that is, by demonstrating that his default was the product of mistake, inadvertence, surprise, or excusable neglect.” *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002)(internal quotation marks omitted); *see id*. at 795 (when affirming the vacation of a default judgment under Rule 60(b)(1), finding that default judgment was not “the result of deliberate, willful, conduct” of the defendant and that plaintiff’s arguments were “somewhat disingenuous” where there was frequent contact between the parties’ attorneys “prior to the initiation of this suit, but [plaintiff’s counsel] elected not to notify them [defendant’s counsel] of the filing of the lawsuit, the entry of default or the default judgment”).

Here, as set forth above, Defendants have demonstrated that the default judgments should be set aside under Rule 60(b)(1) for inadvertence, excusable neglect, and surprise. Thus, in accordance with *Weiss*, this showing also satisfies this *United Coin Meter* factor that Defendants did not engage in culpable conduct. *Weiss*, 283 F.3d at 794.

Moreover, Defendants never received any of the pleadings related to either FedEx's motion for default or its motion for default judgment and the docket reflects no certificate of service for FedEx's motion to enter default,[9] further demonstrating that Defendants did not engage in any culpable conduct. *See, e.g.*, *Fifth Third Bank v. Mytelka*, No. 04-271-C, 2009 U.S. Dist. LEXIS 61884, at *14-15 (W.D. Ky. July 10, 2009)(when vacating default judgment, finding that defendant did not engage in culpable conduct where, inter alia, he denied receiving copies of either the motion for default or the motion for default judgment filed by the plaintiff until three years after the court entered default judgment and "[a] review of the record reveals that neither of these motions includes a certificate of service").

This lack of notice further confirms that Defendants have not taken any action to thwart this proceeding intentionally or otherwise behaved with reckless disregard for the effect of their conduct on this matter, the standard adopted by the Sixth Circuit for determining culpable conduct. *Amernational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970, 978 (6th Cir. 1991)(internal quotations omitted)(ruling that "[i]n order to be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings"), *cert. denied*, 501 U.S. 1233 (1991); *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 844 (6th Cir. 2011); *id*. (ruling analysis under Rule 60(b)(1) applied when reversing the

---

[9] FedEx certified that it had mailed its motion for entry of default judgment to Defendants, *see supra*, but neither My Pillow nor Lindell received that mailing. Lindell Decl. ¶ 15; Pilon Decl. ¶ 5.

district court's entry of default judgment against the defendant based on its failure to respond to discovery).

Based on the foregoing, the Court should find that this factor favors the granting of Defendants' motion to vacate FedEx's default judgments.

2. *<u>FedEx Will Not Be Prejudiced if the Default Judgments Are Set Aside</u>*.

A plaintiff's prejudice is narrowly defined for purposes of evaluating this factor under *United Coin Meter*. A delay in any potential recovery is insufficient. *See, e.g.*, *Doss v. Connexion Point, LLC*, No. 2:21-cv-2756-MSN-atc, 2024 U.S. Dist. LEXIS 100035, at *11 (W.D. Tenn. June 5, 2024)(noting delay alone fails to show prejudice under *United Coin Meter* when granting defendant's motion to aside a default and denying plaintiff's motion for entry of a default judgment). As the Sixth Circuit has ruled, "[m]ere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." *United Coin Meter Co.*, 705 F.2d at 845 (citing *Keegel v. Key West & Caribbean Trading Co., Inc*., 627 F.2d 372, 374 (D.C. Cir. 1980) and *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656-57 (3d Cir. 1982)).

Rather, courts have determined that a plaintiff is deemed to be prejudiced only if there has been a loss of relevant evidence or some other occurrence, such as increased difficulties in discovery or a greater chance for fraud, which impairs the plaintiff's ability to pursue its claims. *See Doss,* 2024 U.S. Dist. LEXIS 100035, at *11 (citing Sixth

Circuit rulings on motions to set aside default judgments pursuant to Rule 60(b)(1) when granting defendant's motion to set aside a default).

Here, there will be no loss of evidence or other legally cognizable prejudice to FedEx, and thus, this factor favors the granting of Defendants' motion to vacate FedEx's default judgments. *See Marquette Transp. Co. Gulf-Inland, LLC v. Arroyo Terminals, LLC*, No. 25-651, 2026 LX 65232, at *8-9 (E.D. La. Jan. 5, 2026)(when vacating default judgment even though defendant had failed to attend the hearing on the plaintiff's motion despite receiving notification from the court about the hearing, ruling that "[w]hile Plaintiff may be inconvenienced by having to litigate its claims against Defendant on the merits, requiring a party to prove its claims does not qualify as prejudice").

3. *<u>Defendants Have Meritorious Defenses to FedEx's Claims</u>*.

As to this factor, the Sixth Circuit has ruled that "[i]n determining whether a defaulted defendant has a meritorious defense 'likelihood of success is not the measure.'" *United Coin Meter* Co., 705 F.2d at 845 (quoting *Keegel*, 627 F.2d at 734). "Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Id*. (citing *Rooks*, 263 F.2d at 169). Moreover, "even conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843 (internal quotations omitted). Defendants have made a show of defenses sufficient to meet this standard.

a. Lindell Has Meritorious Defenses to FedEx's Fraud Claim.

FedEx's First Amended Complaint names Lindell as a defendant for the first time, asserting a fraud claim against him. Lindell has several meritorious defenses to this claim.

i. Legal Standard for Evaluating FedEx's Fraud Claim against Lindell.

When analyzing FedEx's fraud claim, state law governs the substance of the claim and Fed. R. Civ. P. 9(b) governs the pleading requirements. *See, e.g.*, *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014)(providing that applicable state law governs the substance of tort claims and Rule 9(b) governs the pleading requirements).

ii. FedEx's Fraud Claim Fails Because It is Based Solely on Future Events Over Which Lindell Had No Control.

A fraud claim based on future events is fatally flawed under Tennessee law. *See, e.g.*, *Edwards v. Travelers Ins. of Hartford*, 563 F.2d 105, 110 (6th Cir. 1977)(to state an actionable fraud claim under Tennessee law, "[f]irst, there must be a representation of an existing or past fact and not an opinion or a conjecture as to future events").

Here, FedEx's fraud claim is based entirely on Lindell's alleged mention of future events that were clearly in the control of third parties on whose representations and promised actions Lindell reasonably relied, and thus those challenged statements fail to support a viable fraud claim under Tennessee law (and also undercut FedEx's conclusory allegations that Lindell "knew" his statements were false when made). *See infra* (discussing allegations regarding Lindell's purported knowledge of falsity).

An examination of FedEx's specific allegations clearly demonstrates this. For example, FedEx alleges that Lindell made several fraudulent representations about the planned initial public offering ("IPO") of a private company, FrankSpeech, in which Lindell was involved, specifically claiming that:

> Relevant to the debt at issue in this case, the misrepresentations started in the fall of 2024 with the FrankSpeech (now known as Mike Lindell Media, Corp.) initial public offering that was controlled by Lindell. On August 29, 2024, FrankSpeech announced it was going public and offered stock shares for sale to the public. *Leading up to this announcement*, Lindell represented to a FedEx Senior Manager of Revenue Service Operations that Lindell *would generate* at least $20,000,000 in funds from the IPO and that he would use these funds to pay My Pillow's debt to FedEx. Lindell followed this conversation with text messages to assure FedEx of his representations including on August 7, 2024 saying 'Good news is we *are merging* as we speak... but can't announce until we get the name change. Then we will have the funds for backend.' In this context, 'backend' referred to the oldest invoices owed by My Pillow, which, at that time, went as far back as January 2024. On August 27, 2024, Lindell again assured the FedEx Senior Manager to keep shipping on credit for My Pillow promising that funds were on their way. He texted: 'Larry I have great news!!!! Stock approved ... live Thursday' referring to the FrankSpeech IPO which had not yet been made public. Lindell did not use the funds he generated from this IPO to pay My Pillow's debt to FedEx as he had promised.

First Am. Compl. ¶ 14 (emphasis added). The allegations regarding this IPO clearly refer to future events. *See id*. Furthermore, Lindell clearly had no control over the ultimate success of the IPO; it was not as successful as anticipated, and Lindell never received any funds as a result of this IPO. Lindell Decl. ¶ 17. Thus, Lindell's pre-IPO alleged statements about the IPO fail to support a viable fraud claim.

As to a potential "stock option opportunity" purportedly mentioned by Lindell, FedEx alleges that:

> Lindell also *promised* FedEx that it would get paid from a high-end stock

> option opportunity he was offered. Specifically, Lindell *promised* that the money received from the purchase and sale of specific stock options would generate sufficient funding by January 2025 to fully pay FedEx. Lindell stated that the investment included SpacEx [sic] stock, which was projected to produce high dollar returns that would be used to pay FedEx. On December 20, 2024, Lindell texted the FedEx Senior Manager to assure him the funding was *forthcoming* stating 'The broker called and *it sounds like the stock should be for sure in January.' This too never happened and whatever funds Lindell generated from this stock scheme were not used to pay FedEx.*

First Am. Compl. ¶ 16 (emphasis added). FedEx's own description of this opportunity, on its face, clearly supports Lindell's meritorious defenses to FedEx's fraud claim premised on this incident: it is based on alleged "promise[s]" solely involving "forthcoming" events that were (and are) clearly outside of Lindell's control. *Id.*; *see also* Lindell Decl. ¶ 17. As a result, Lindell's purported representations regarding this "opportunity" fail to support a viable fraud claim under Tennessee law.

FedEx also claims Lindell was liable for fraud based on several potential loans:

> Shortly thereafter, Lindell promised FedEx that it would get paid from various loans Lindell *was obtaining*. This included a collateralized loan in the amount of $25,000,000 and a bridge loan Lindell *was going to obtain* to provide cash flow for My Pillow until the $25,000,000 collateralized loan was finalized. On September 10, 2024, Lindell texted the FedEx Senior Manager assuring him of the funding by providing a letter on My Pillow letterhead, purportedly signed by Jeremiah Pilon, as Deputy General Counsel for My Pillow. The letter was very specific stating: "I am writing to inform [FedEx] that we have secured collateralized funding in the amount of $25 million. This letter is to confirm FedEx's payment priority from the secured funds amounting to $25 million. The $25 million of secured funds *are set for* disbursement on or before September 30, 2024. We have allotted payment from this dipersment [sic] to FedEx in the amount of $3,000,000 on the date of disbursement." Whatever funds Lindell derived from these loans were not used to pay My Pillow's debt to FedEx as Lindell *promised*.

First Am. Compl. ¶ 15 (emphasis added). Again, FedEx's allegations are based solely on future events, in this case, potential loans that Lindell was hoping to obtain. *Id.* These loans were also future events beyond Lindell's control, and the loans that third parties had promised to Lindell never materialized. Lindell Decl. ¶ 17. All of FedEx's other allegations in support of its fraud claim based on Lindell's purported statements are also founded on the claimed nonoccurrence of future events. *See generally* First Am. Compl.

FedEx's reliance solely on purported promises regarding future events fails to support a viable fraud claim against Lindell as a matter of law. *See, e.g.*, *Van Eman v. Keuffel & Esser of N.J., Inc.*, No. C.A. 87-359-II, 1988 Tenn. App. LEXIS 388, at *15 (Tenn. Ct. App. June 15, 1998)(holding that fraud claim under Tennessee law may not be predicated on statements or opinions as to future events). Lindell has thus demonstrated a meritorious defense to FedEx's fraud claim for purposes of the third *United Coin Meter* factor.

iii. FedEx's General Allegations regarding Lindell's Purported Knowledge of Falsity Fail to Meet the Pleading Requirements of Fed. R. Civ. P. 9(b).

FedEx's fraud claim against Lindell also fails to meet the pleading standards in Fed. R. Civ. P. 9(b) because it never sets forth any specific facts (as opposed to generic assertions) which support the contention that Lindell *knew* that the statements challenged by FedEx were false at the time they were allegedly made. There are only three paragraphs in the First Amended Complaint that touch on Lindell's purported knowledge of falsity at the time they were made. Paragraph 13 of FedEx's First Amended Complaint baldly asserts that "Lindell knew the representations he was making were false when they

were made and that neither he nor My Pillow had any intention of actually satisfying the debt owed to FedEx." First Am. Compl. ¶ 13. Paragraph 19 of the First Amended Complaint sets forth the same generalized allegation as to Lindell, asserting that he "knew his representations were false when they were made." *Id.* ¶ 19. Paragraph 30 of the First Amended Complaint baldly asserts that Lindell's alleged statements were "intentionally made by [Lindell] recklessly or with knowledge that the representations were false when made." *Id.* ¶ 30.

The formulaic, conclusory allegations in those three paragraphs regarding Lindell's purported knowledge of the falsity of various statements at the time they were made are insufficient to state a viable fraud claim as a matter of law. As the Sixth Circuit has noted, "'[t]he courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.'" *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 406 (6th Cir. 2012)(quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992)(internal quotation marks in the original). As set forth *supra*, there are no specific facts alleged in the First Amended Complaint "that make it reasonable to believe" that Lindell knew the challenged statements were false. This provides another meritorious defense to FedEx's fraud claim against Lindell. *See id.*

Furthermore, Lindell believed all the statements he made in calls and set forth in texts to FedEx at the time they were made.[10] Lindell Decl. ¶ 17. Given that the Court is to construe all disputed facts in Lindell's favor, *see Invst Fin. Grp.*, 815 F.2d at 398, his declaration provides further support of this meritorious defense to FedEx's fraud claim.

iv. FedEx's Allegations of Fraud Fail Based on Its Express Reliance on Future, Intervening Events.

FedEx's fraud claim is based solely on future, intervening events, such as a prospective IPO, a "stock option opportunity," and potential loans.[11] *See* First Am. Compl. ¶¶ 13, 19, 30; *see supra* (quoting same). When relying on such intervening events, a plaintiff may not simply allege fraud by hindsight but must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statements regarding forthcoming events were untrue or misleading when made. As set forth above, FedEx failed to do so. This provides yet another meritorious defense to FedEx's fraud claim. *See, e.g.*, *Denny v. Barber*, 576 F.2d 465, 469-70 (2d Cir. 1978)(where bank's finances declined because of, inter alia, the 1970's oil embargo and New York City's near-bankruptcy in 1975, plaintiff's contention that defendants should have disclosed the downturn in the company's fortunes earlier was insupportable; plaintiff could not allege "fraud by hindsight"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)(ruling

---

[10] Pilon also believed in good faith that the statements set forth in his letter, which was quoted in Paragraph 15 of the First Amended Complaint, were true at the time he wrote that letter. Pilon Decl. ¶ 7.

[11] Lindell further contends that Arctic Frost may well have destroyed any possibility of obtaining loans relied on by FedEx as well as other future events on which FedEx bases its fraud claim. Lindell Decl. ¶ 17; *see also supra* (setting forth financial disasters trigged by Arctic Frost).

that the plaintiff may not simply allege that the difference between a company's earlier statements claiming the company's strong financial health and later statements revealing the company's failing health "must be" attributable to fraud), *cert. denied*, 498 U.S. 941 (1990); *see also Greenstone*, 975 F.2d at 25-26 (holding that the mere fact that the company was eventually sued does not mean, as was alleged, that defendants acted fraudulently in omitting to reveal this fact before the lawsuit was filed).

Based on the foregoing, Lindell has offered evidence of several meritorious defenses to FedEx's fraud claim, and thus, this third *United Coin Mete*r factor supports vacation of the default judgment against Lindell.

b. My Pillow Has Meritorious Defenses to FedEx's Claims.

My Pillow also has meritorious defenses to FedEx's breach of contract and unjust enrichment claims. *First*, FedEx wrongfully charged My Pillow more than $1,300,000.00 in late fees despite the fact that My Pillow was paying FedEx on a timely basis. Lindell Decl. ¶ 18. This not only materially breached the parties' contract but was one of the events that triggered the financial disasters that My Pillow was suffering.[12] *Id*. ¶ 18.

*Second*, FedEx unilaterally and without justification changed the material terms of the parties' arrangement by, inter alia, decreasing the number of days for the due date of

[12] Although FedEx ultimately gave My Pillow partial credit for those improper late fees, it nonetheless still shorted My Pillow by about $500,000.00. Lindell Decl. ¶ 18. And FedEx's delay in providing credit for those late fees had an extraordinarily damaging impact on My Pillow during a time, as My Pillow has now learned, when My Pillow was under attack by Arctic Frost. *Id*.

My Pillow's payments from 60 days, to 45 days, to 30 days, even though My Pillow was still paying FedEx, and at the same time, FedEx increased the amount of the late fees that it was charging for allegedly late payments. *Id*. ¶ 18. *Third*, FedEx even began to refuse to allow My Pillow to pay cash for shipping. *Id*.

As a result of FedEx's actions, the damages alleged by FedEx claims are incorrect, and My Pillow disputes the amount of the default judgments. *See Key Bank of Me. v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 354-55 (1st Cir. 1996)(recognizing that dispute as to the damages amount is a meritorious defense for purposes of a Rule 60(b)(1) motion).

Furthermore, FedEx not only breached the parties' agreement, but it also breached its duty of good faith and fair dealing by, for example, refusing to accept cash payments from My Pillow. FedEx's inequitable conduct provides My Pillow with a meritorious defense to FedEx's unjust enrichment claim because a party with unclean hands is precluded from obtaining equitable relief. *See, e.g.*, *Spirit Broadband, LLC v. Armes*, No. M2015-00559-COA-R3-CV, 2017 Tenn. App. LEXIS 49, at *24 (Tenn. Ct. App. Jan. 27, 2017)(affirming application of unclean hands doctrine to bar plaintiff's recovery on a promissory note).

Based on the foregoing, the third *United Coin Meter* factor also supports My Pillow's motion to vacate FedEx's default judgment against My Pillow.

### D. The Substantial Amount of the Default Judgments Strongly Supports Their Vacation.

This Court entered default judgment against My Pillow in the amount of $8,809,056.31, and against My Pillow and Lindell in the amount of $2,677,933.31. *See* Order Granting Motion for Entry of Default Judgment at 2 ¶ 10 (Dkt. No. 24). Courts have recognized that "[m]atters involving large sums of money should not be determined by default judgments if it can be reasonably avoided." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)(citation omitted)(vacating default judgment based on, inter alia, the amount of that default judgment); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981)(when reversing district court's denial of motion to vacate a default judgment, citing the amount of the judgment as one of the factors supporting that reversal because in cases where "the amount of money involved is very great, [that] itself militat[es] in favor of a full trial on the merits").

## CONCLUSION

Defendants have met the requirements of Rule 60(b)(1), and the United Coin Meter factors support their motion to vacate the default judgments. Furthermore, the substantial size of the default judgments provides another reason to grant Defendants' motion. Defendants therefore ask the Court to grant their motion and allow this case to proceed on the merits.

Respectfully submitted,

By: /s/ Jason M. Goldstein
Jason M. Goldstein (BPR No. 034735)
HARKAVY MCDANIEL KAPLAN & SALOMON P.C.
*Attorneys for My Pillow, Inc. and Michael J. Lindell*
6060 Poplar Ave, Suite 140
Memphis TN 38119
(901) 866-5357
(901) 866-5357 (fax)
Email: jgoldstein@harkavymcdaniel.com

**CERTIFICATE OF CONSULTATION**

I hereby certify pursuant to Local Rule 7.2(a)(1)(B) that on May 12, 2026, I attempted to confer by email and telephone with Jason R. Bernhardt with regard to the relief requested in the foregoing motion.

By: /s/ Jason M. Goldstein
Jason M. Goldstein

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2026, the foregoing pleading was served via the Court's ECF system upon the following counsel of record:

Jason R. Bernhardt, Esq.
Federal Express Corporation
3620 Hacks Cross Road
Building B – 3rd Floor
Memphis, Tennessee
jasonbernhardt@fedex.com

By: /s/ Jason M. Goldstein
Jason M. Goldstein

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE WESTERN
DIVISION

FEDERAL EXPRESS CORPORATION,

Plaintiff,

v.

MY PILLOW, INC. and MICHAEL J. LINDELL,

Defendants.

Civil Action NO. 2:25-cv-02222-JPM-atc

**DECLARATION OF MICHAEL J. LINDELL IN SUPPORT OF DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENTS**

STATE OF MINNESOTA )
)ss.
COUNTY OF CARVER )

I, Michael J. Lindell, state as follows:

1. I am named as a defendant in this matter. I am the Chief Executive Officer of defendant My Pillow, Inc. ("My Pillow"). I submit this declaration in support of Defendants' Motion to Vacate the Default Judgments entered in this matter. This declaration is based upon my own personal knowledge.

2. For years, My Pillow relied on Plaintiff Federal Express Corporation "FedEx" to ship My Pillow products to customers. For years, My Pillow paid millions of dollars to FedEx on a timely basis.

3. Beginning in mid-2022, My Pillow began suffering a string of what were at that point in time inexplicable financial reversals, which have recently been revealed to be triggered as a result of Operation Arctic Frost, which had targeted My Pillow.

4. For example, My Pillow's merchant server imposed a new, $5,000,000.00 hold on the funds in My Pillow's account, which forced My Pillow to find another merchant server.

5. Fox News dropped all of My Pillow's advertising based on an alleged payment dispute. But Fox News dropped My Pillow even though at that point in time, My Pillow only owed an amount that was within My Pillow's then-credit limit with Fox News. Fox News also decreased the window of time in which My Pillow was required to pay for advertising, from twelve down to eight weeks.

6. In June of 2022, Walmart, which was at that time My Pillow's biggest retailer, removed all of My Pillow products from its physical stores. I believe that Walmart's actions made no economic sense because at that point in time, My Pillow was one of Walmart's top selling products of all time.

7. I have also now learned that My Pillow's bank was subpoenaed for My Pillow financial records in the context of Arctic Frost and as a result, My Pillow's bank terminated its relationship with My Pillow.

8. During this time, American Express also slashed My Pillow's credit line by 90%, decreasing it from $1,000,000.00 to $100,000.00 without warning and demanded payment within 24 hours. American Express took these steps despite the fact that My

Pillow had never been late on its payments before and the amount then owed to American Express was within My Pillow's credit limit and terms.

9. When faced with these financial setbacks, I sought various options to keep My Pillow in business and pay its bills, vendors, and employees.

10. During this time, I was texting and speaking with FedEx about My Pillow almost daily. During these regular calls and texts exchanges with FedEx, I mentioned various ways in which My Pillow was hoping to obtain funds. I openly discussed the current status of those potential, future financial alternatives with FedEx and also indicated to FedEx that those financial alternatives were in the control of other, third parties and not My Pillow or me.

11. Even though I was in regular contact with FedEx personnel during the period of time before FedEx sued, during these numerous communications, both in telephone calls and texts, I was never informed about this lawsuit, any of the filings in the lawsuit, or the Court's entry of the default and then the default judgment against My Pillow and me.

12. I have come to learn that FedEx claims it served its initial Complaint on an employee of My Pillow, Joe Schmieg. Schmieg holds the title of vice president of sales. In that role, however, he is not an executive officer of My Pillow because he has never been elected by My Pillow's Board of Directors as is required by My Pillow's by-laws in order to be a corporate executive. Schmieg has never had any executive responsibilities, he makes no strategic decisions, and he is not and has never been authorized to accept service on behalf of My Pillow.

13. I was never informed about this attempted service and never saw the initial Complaint at that point in time, only learning about it after default judgment had been entered against My Pillow and me and FedEx began to try and collect on the default judgments.

14. In June of 2025, someone handed me what FedEx claims was its First Amended Complaint in this case. At that time, I was in Colorado in the midst of a contentious federal jury trial. When the person approached me, I was out in the courthouse hallway during a several minute break. I was one of the defendants in that trial and the plaintiff was seeking millions of dollars from another defendant and me. I was focused solely on that ongoing federal jury trial. I barely registered that someone had handed me documents. I believed that the encounter was either related to the Colorado trial or a maneuver by the media personnel, who were closely following the jury trial. I do not know what happened to the documents, which I never read because I was in the midst of the trial and I immediately returned to the courtroom and continued to focus on those proceedings.

15. Neither My Pillow nor I ever received any other documents, notifications, or court filings in this matter. Even though FedEx attested that its motion for default judgment was mailed to My Pillow and me, to my knowledge these documents were never received. In addition, My Pillow and I never received a copy of the Court's Order granting FedEx's motion for default judgment until after FedEx began its collection activities.

16. My Pillow and I were never aware of the FedEx lawsuit until after the default judgments had been entered in favor of FedEx and FedEx started its collection activities even though I was in almost constant contact with FedEx during that period of time. My Pillow and I would have responded timely if we had been aware of the pending default and subsequent default judgment; we were not.

17. I understand that FedEx alleges that I knew I was making false statements about various potential financial options when I mentioned them to FedEx. That is not true. At the time I made various statements to FedEx I in good faith believed them to be true. In addition, I made sure that FedEx understood during these communications that I was relying on third parties to keep their word to me or go through with the actions they had promised me. For example, I understand that FedEx claims that I was making statements that I then knew to be false about an IPO involving FrankSpeech. That is not the case. I had no control over the ultimate success of that IPO, which was not as successful as others had promised me. And I never received any funds as a result on this IPO. FedEx also takes issue with my discussions about what it calls a stock option opportunity as well as potential loans I was trying to obtain. At the time I discussed these various potential opportunities with FedEx, I believed all of the statements I made were true. I also had no control over these potential financial alternatives and the stock option opportunity and the loans third parties were promising did not materialize. Furthermore, Arctic Frost I now know precluded My Pillow or me from obtaining loans or accessing other financial opportunities, including those I discussed with FedEx.

18. FedEx charged My Pillow approximately $1,300,000.00 in late fees even though My Pillow was paying timely. It took more than a year to get even a partial credit for those late fees. My Pillow has never recovered about $500,000.00 of those improper late fees. FedEx's delay in providing credit for those late fees had an extraordinarily damaging financial impact on My Pillow during a time when My Pillow, as I now have learned, was under attack by Arctic Frost. In addition, FedEx unilaterally and without justification changed the material terms of the parties' arrangement by, among other things, decreasing the number of days for the due date of My Pillow's payments from 60 days, to 45 days, to 30 days, even though My Pillow was still paying, and at the same time, FedEx increased the amount of the late fees that it would charge for allegedly late payments. FedEx even began to refuse to allow My Pillow to pay cash for shipping.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 11, 2026. s/Michael J. Lindell

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE WESTERN
DIVISION

FEDERAL EXPRESS CORPORATION,

Plaintiff,

v.

MY PILLOW, INC. and MICHAEL J. LINDELL,

Defendants.

Civil Action NO. 2:25-cv-02222-JPM-atc

**DECLARATION OF JOE SCHMIEG IN SUPPORT OF DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENTS**

STATE OF MINNESOTA )
)SS.
COUNTY OF CARVER )

I, Joe Schmieg, state as follows:

1. I am an employee of My Pillow, Inc. ("My Pillow"). I submit this declaration in support of Defendants' Motion to Vacate the Default Judgments. This declaration is based upon my own personal knowledge.

2. I am the vice-president of sales for My Pillow. I am not an executive or corporate officer of My Pillow. I have never been elected by the Board of Directors of My Pillow to any executive or corporate officer position. I have never had any executive responsibilities at My Pillow. I do not make any strategic or executive decisions for My Pillow. I am not authorized to bind My Pillow or accept service of process on behalf of

My Pillow. I have never been appointed or otherwise authorized to accept service on behalf of My Pillow.

3. I understand that Federal Express Corporation claims that I signed for a complaint on behalf of My Pillow. I am not and have never been authorized to sign for any court or other legal documents on behalf of My Pillow.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 11, 2026. s/Joe Schmieg

Case 1:25-cv-00853-JBM-atc Document 17-26 Filed 05/12/26 Page 44 of 87

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION

| | |
|---|---|
| FEDERAL EXPRESS CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MY PILLOW, INC. and MICHAEL J. LINDELL,<br><br>Defendants. | Civil Action NO. 2:25-cv-02222-JPM-atc<br><br>**DECLARATIONOF BARBARA PODLUCKY BERENS IN SUPPORT OF DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENTS** |

STATE OF MINNESOTA )
)SS.
COUNTY OF HENNEPIN )

I, Barbara Berens, state as follows:

1. I am a partner in the law firm Berens Miller P.A. and an attorney who represents Defendants My Pillow, Inc. and Michael J. Lindell. I submit this declaration in support of Defendants' Motion to Vacate Default Judgments.

2. Attached hereto as Exhibit A is a true and correct copy of *Q&A: Arctic Frost With U.S. Senator Chuck Grassley* (Oct. 17, 2025), which is located at https://www.grassley.senate.gov/news/news-releases/qanda-arcticfrost#:~:text=Q:%20What%20is%20.

3. Attached hereto as Exhibit B is a true and correct copy of Cheryl Teh, *Mike Lindell Says Walmart Is 'Canceling' Him and Pulling His Products*, BUSINESS INSIDER June 16, 2022, which is located at https://www.business insider.com/mike-lindell-says-walmart-is-canceling-him-pulling-his-products-2022-6.

4. Attached hereto as Exhibit C is a true and correct copy of the Subpoena Tracker List, compiled by Senate Judiciary Committee Staff, which is located at https://www.grassley.senate.gov/imo/media/doc/arctic_frost197_subpoena_tracker_compiled_by_sjc_staff.pdf.

5. Attached hereto as Exhibit D is a true and correct copy of Kwan Wei Kevin Tan, *Mike Lindell Says American Express Slashed MyPillow's Credit Line*, BUSINESS INSIDER, Sept. 27, 2023, which is located at https://www.businessinsider.com/mike-lindell-says-american-express-slashed-mypillow-credit-line-2023-9.

6. Attached hereto as Exhibit E is a true and correct copy of Steve Karnowski, *Fox News stops running MyPillow commercials in a payment dispute with election denier Mike Lindell*, The Associated Press, Jan. 12, 2024, which is located at https://apnews.com/article/ mile-lindell-mypillow-fox-news-election-denier-437fd518ce33eb2f8ee22588bd6a5ed8.

7. Attached hereto as Exhibit F is a true and correct copy of Giulia Carbonaro, *Mike Lindell Insists MyPillow Is Not Going Out of Business*, NEWSWEEK, Oct. 27, 2023, which is located at https://www.newsweek.com/mike-lindell-insists-mypillow-not-going-out-business-1838612.

8. Attached hereto as Exhibit G is a true and correct copy of the U.S. Senate Committee on the Judiciary, Press Release: *NEW: Jack Smith Subpoenaed Records for Over 400 Republican Targets As Part of Arctic Frost*, Oct. 29, 2025, which is located at https://www.judiciary. senate.gov/press/rep/releases/new-jack-smith-subpoenaed-records-for-over-400-republican-targets-as-part-of-arctic-frost.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 11, 2026

s/Barbara Podlucky Berens

Barbara Podlucky Berens

News · News Releases

10.17.2025

# Q&A: Arctic Frost

With U.S. Senator Chuck Grassley

**Q: What is Arctic Frost?**

**A:** Under the Biden administration, the Federal Bureau of Investigation (FBI) opened an investigation in April 2022 codenamed Arctic Frost. I started my congressional oversight of Arctic Frost in July 2022 after whistleblowers approached my office. Ostensibly, the FBI investigation was opened to examine an alleged false electors scheme following the 2020 election. Since then, my oversight has **exposed the partisan spear** that launched the investigation to go after President Trump, his circle and poison his campaign to return to the White House. Arctic Frost created the framework that Jack Smith, a special counsel appointed by the Biden Department of Justice (DOJ), used to form his election case against President Trump. Even before the special counsel appointment, I flagged the **partisan bias** of the senior FBI official who ran Arctic Frost. This official's political tilt undermines the credibility of the entire investigation. FBI Assistant Special Agent in Charge Timothy Thibault was assigned to oversee public corruption matters. Ironically, he allowed his partisan views to corrupt his decision-making process and tarnish the rule of law. Whistleblower disclosures to my office revealed how Thibault bent FBI rules and, in so doing, **weaponized the federal government** to take down a political opponent. The Office of Special Counsel confirmed Thibault also **broke the law**; the Hatch Act prohibits political activity among federal employees while on duty.

As part of its Arctic Frost investigation, the Biden DOJ, FBI and supporting agencies issued hundreds of subpoenas and conducted dozens of interviews across the country at taxpayer expense. The facts show the investigation was a **sweeping partisan fishing expedition** to take down political foes. Earlier this year Sen. Ron Johnson of Wisconsin, chair of the Permanent Subcommittee on Investigations, and I **released tranches of whistleblower records** detailing the plot to pin Trump in the Jack Smith electoral case. What's more, my congressional oversight also found the probe **targeted 92 conservative organizations**, including Charlie Kirk's Turning Point USA. Thanks to the courageous disclosures by whistleblowers, the truth is seeing the light of day. I'll continue working to root out abuses of power to restore public trust in government.

**Q: How is this targeting of political opponents during the Biden administration worse than Watergate?**

**A:** My oversight work continues to pull back the curtain on the full extent of partisan misconduct at play in the Arctic Frost investigation. Most recently, I learned that as part of the investigation, the Biden FBI misused the long arm of the law to target at least **eight Republican senators**. In 2023, it sought and obtained cell phone "tolling data" for their devices even though they weren't under investigation. This is a serious breach of the constitutional separation of powers. I've also discovered the Arctic Frost documents have been hidden as so-called **Prohibited Access Files** at the FBI to prevent them from ever seeing the light of day. As a lifelong family farmer, I know it takes the light and heat of the sun to grow crops. Likewise, I've learned in Washington it takes the heat of congressional oversight, often aided by the courage of whistleblowers, to shine light on wrongdoing and hold government accountable to the public. No matter how long it takes, I'll continue to follow the facts to shut down political misconduct that weaponizes government against law-abiding citizens. That means I'm crossing the t's and dotting the i's of my oversight work before holding public hearings as chairman of the Senate Judiciary Committee. As part of that effort, I've sent letters to **the DOJ and FBI**, as well as **various other federal entities and telecommunications companies**, seeking all records related to Arctic Frost and all records they provided to former Special Counsel Jack Smith for his investigation into President Trump and others. In the infamous Watergate tapes, President Nixon delivered the marching orders to **fire a Pentagon whistleblower** for telling the truth. As a freshman member of the U.S. House of Representatives elected post-Watergate, I cut my teeth on holding government accountable. History shows transparency brings accountability. As a watchdog for good government, I'll keep digging to root out wrongdoing to ensure the government works for the American people, not the other way around.

Tags: **Government Accountability**

PREVIOUS ARTICLE

NEXT ARTICLE

**EXHIBIT A**

NEWS

# Mike Lindell says Walmart, MyPillow's biggest distributor, is 'canceling' him and pulling his pillows from its stores: 'Shame on you, Walmart!'

By Cheryl Teh + Follow



Hyoung Chang/MediaNews Group/The Denver Post via Getty Images

Jun 17, 2022, 3:11 AM CT

Share Save

EXHIBIT B

Mike Lindell, the CEO of MyPillow, has accused Walmart of "canceling" him by pulling his company's pillows from the retailer's shelves.

In a call with Insider on Thursday night, Lindell described a Zoom meeting in which he said a Walmart representative told him the company would start selling MyPillow products only online and not in stores.

"They dropped MyPillow, and it really hurt my employees because they were our biggest distributor," Lindell said. "They were by far and away number one."

Lindell then called Walmart "absolutely disgusting" while describing his pillows as "one of the top-selling products in the history of Walmart."

During his conversation with Insider, Lindell said he heard MyPillow products would not be sold in Walmart stores about two weeks ago after returning from flying "all over the country" to deal with "the election stuff."

**Discover Level Up**

Take smart steps toward the goals you've been thinking about.

Try it now

Lindell said he got on a Zoom call with a Walmart representative in which he proposed lowering the price of his pillows. He said the representative didn't get back to him for a week, after which his company was told Walmart was going to "drop MyPillow."

"I tell them what I'm offering them, and I'm saying: 'Why are you doing this? Why are you kicking us out and canceling us?'" Lindell said. "When we were your biggest product, the biggest of all time!"

Lindell said the Walmart representative also told him his pillows didn't meet the retailer's customer-satisfaction criteria.

Walmart's website shows "ratings" for each product it sells. As of press time, the MyPillow Classic Bed Pillow had 3.3 stars, based on 2,084 reviews.

"I said, 'Shame on you, Walmart. You have over 10,000 vendors from China. I make all my pillows in Minnesota," Lindell said. "I was so upset. I shut the computer."

Lindell told Insider that Walmart would "never get to sell MyPillows again." "What they did is inexcusable! It's cancel culture, and you don't get to come back," he added.

A Walmart representative confirmed to Insider that MyPillow products would no longer be carried in stores but would continue to be available online.

Other retailers have similarly distanced themselves from Lindell. In April 2021, Costco pulled MyPillow's products, as did Bed Bath & Beyond, QVC, JCPenney, and Wayfair.

In February, Lindell also told Insider one of his banks had cut ties with him, citing him as a "reputation risk."

Lindell continues to be highly involved in pushing former President Donald Trump's false claims of voter fraud. This week, he told Insider he tried to secure a spot to publicly testify before the House panel investigating the Capitol riot but said the panel

**This story is available exclusively to Business Insider subscribers. Become an Insider and start reading now.**
Have an account? Log in.

# Compiled by Senate Judiciary Committee Staff

| Document Name | Date | Subpoena Recipient | Subject for Which Testimony, Documents, and/or Communications Were Requested |
|---|---|---|---|
| GJ283 Chain Bridge Bank (MV) subpoena GJ202209199-4982 | 9/19/2022 | Chain Bridge Bank | Save America PAC, Save America Leadership PAC, and/or Save America JFC, and Trump Make America Great Again JFC (c/o Red Curve Solutions)<br>Account Number<br>Account Ending in the name of Save America, 11/10/2020 through 05/09/2021. |
| Bank of America subpoena GJ2022101195568 | 10/11/2022 | Bank of America | John David McEntee<br>The McEntee Group, LLC<br>Two account numbers |
| GJ285 Avidia Bank subpoena GJ2022101195564 | 10/11/2022 | Avidia Bank | Belmont Strategies<br>Andrew Surabian |
| GJ286 National Capital Bank subpoena GJ2022101195570 | 10/11/2022 | National Capital Bank | Conservative Partnership Institute<br>An account number<br>Mark Meadows<br>Cleta Mitchell |
| GJ287 State Bank of Cross Plains subpoena GJ2022101195573 | 10/11/2022 | State Bank of Cross Plains | Full Compass Systems<br>An Account number |
| GJ288 TD Bank subpoena GJ202210119557-4 | 10/11/2022 | TD Bank | Justin Clark<br>Bill Stepien<br>Nick Trainer<br>National Public Affairs, LLC<br>An account number |
| GJ289 Texas Partners Bank subpoena GJ2022101195571 | 10/11/2022 | Texas Partners Bank | Parscale Strategy LLC<br>An Account Number<br>Brad Parscale |
| GJ290 United Bank subpoena GJ2022101195572 | 10/11/2022 | United Bank | Event Strategies, Inc<br>An Account Number<br>Tim Unes<br>Justin Caporale |
| GJ321 JP Morgan Chase subpoena GJ2022101195565 | 10/11/2022 | JP Morgan Chase | Daniel Scavino Jr.<br>Hudson Digital LLC<br>William Russell<br>Magnolia Management, LLC<br>Two account numbers |
| GJ284 Chain Bridge Bank subpoena GJ2022101295639 | 10/12/2022 | Chain Bridge Bank | American Made Media Consultants LLC<br>Known account number<br>Sean Dollman |
| GJ298 TransUnion subpoena GJ2022101895829 | 10/18/2022 | TransUnion | Kenneth Chesebro; Jeffrey Clark; John Eastman; Cleta Mitchell; Michael Roman; Mark Meadows; Brad Parscale; Tim Unes; Justin Caporale; Justin Clark; Bill Stepien; Nick Trainer; Boris Epshteyn; Ken Klukowski; Rudy Giuliani; Sidney Powell; Jenna Ellis |
| GJ299 Experian subpoena GJ2022101895828 | 10/18/2022 | Experian | Kenneth Chesebro; Jeffrey Clark; John Eastman; Cleta Mitchell; Michael Roman; Mark Meadows; Brad Parscale; Tim Unes; Justin Caporale; Justin Clark; Bill Stepien; Nick Tmainer; Boris Epshteyn; Ken Klukowski; Rudy Giuliani; Sidney Powell; Jenna Ellis |
| GJ302 Equifax subpoena GJ2022101895827 | 10/18/2022 | Equifax Credit Information Services, Inc | Kenneth Chesebro; Jeffrey Clark; John Eastman; Cleta Mitchell; Michael Roman; Mark Meadows; Brad Parscale; Tim Unes; Justin Caporale; Justin Clark; Bill Stepien; Nick Trainer; Boris Epshteyn; Ken Klukowski; Rudy Giuliani; Sidney Powell; Jenna Ellis |
| GJ292 National Capital subpoena GJ2022101995892 | 10/19/2022 | National Capital Bank | Stephen Miller,<br>American Voring Rights Institute. |
| GJ293 Wells Fargo (10-20 Powell) subpoena GJ2022102095921 | 10/20/2022 | Wells Fargo Bauk, N.A. | Sidney Powell (individual)<br>Sidney Powell, P.C.<br>LDFFTAR, Inc.<br>An account # |

**EXHIBIT C**

# Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ294 Wells Fargo (10-20 Sigman) subpoena GJ2022102095922 | 10/20/2022 | Wells Fargo Bank, N.A. | Scott Sigman, Esquire -- PA IOLTA Escrow Account<br>An account # |
| GJ295 PNC Bank (10-20) subpoena GJ2022102095919 | 10/20/2022 | PNC Bank | Cyfir LLC<br>An account # |
| GJ296 JP Morgan Chase (10-20) subpoena GJ2022102095918 | 10/20/2022 | JP Morgan Chase, N.A. | Stratech, LLC<br>An account # |
| GJ297 Bank of America (10-20) subpoena GJ2022102095916 | 10/20/2022 | Bank of America, N.A. | Sidney Powell (individual)<br>Sidney Powell, P.C.<br>An account # |
| GJ300 Seacoast Bank (10-20) subpoena GJ2022102095920 | 10/20/2022 | Sabal Palm Bank n/k/a Seacoast Bank | Douglas Logan<br>Cyber Ninjas, Inc.<br>An account # |
| GJ301 JP Morgan Chase (10-24) subpoena GJ2022102195994 | 10/26/2022 | JP Morgan Chase, N.A. | Elections, LLC<br>Justin Clark<br>Stefan Passantino<br>An account # |
| GJ304 City National Bank (11-2) subpoena GJ2022110296268 | 11/2/2022 | City National Bnnk | An account # |
| GJ305 Bank of Centml Florida (11-2) subpoena GJ2022110296269 | 11/2/2022 | Bank of Central Florida | An account # |
| GJ306 Center National Bank (11-2) subpoena GJ2022110296270 | 11/2/2022 | Center National Bank | My Pillow Inc.<br>Women for America First. |
| GJ309 Chain Bridge Bank (11-4) subpoena GJ2022110496358 | 11/4/2022 | Chain Bridge Bank | Conservative Partnership Institute<br>Mark Meadows<br>Cleta Mitchell |
| GJ310 Silicon Valley Bank (11-8) subpoena GJ2022110896475 | 11/8/2022 | Silicon Valley Bank | Direct Persuasion, LLC<br>OPN Sesame, LLC<br>Two account numbers |
| GJ314 Save America JFC subpoena GJ2022111096630 | 11/10/2022 | Save America Joint Fundraising Committee | Save America Joint Fundraising Committee; Snve America; Republican National Committee, the Trump Make America Great Again Committee, Make America Grent Again PAC, Donald J. Trump for President Inc., Save America, and/or the Save America Joint Fundraising Committee; 1. American Made Media Consultants; 2. Belmont Strategies; 3. Event Strategies Inc.; 4. Full Compass Systems 5. Hudson Digital LLC; 6. Magnolia Management LLC; 7. The McEntee Group LLC; 8. National Public Affairs LLC and/or 9. Parscale Strategy; 1. Abel Bean Law P.A.; 2. Belkin Burden Wenig & Goldman, LLP; 3. Bowers Law Office LLC; 4. Bmnd Woodward Law; 5. Brownstein Hyatt Farber Schreck, LLP; 6. Caruso Law Office, P.C.; 7. Clark Hill P.L.C.; 8. Cleveland, Waters and Bass, P.A.; 9. Conway, Olenjniczak & Jerry, S.C.; 10. David Schoen, Attorney at Law; 11. Dhillon Law Group Inc.; 12. Dwight L. Thomas, P.C.; 13. Elections, LLC; 14. Jenna Ellis; 15. HarderLLP; 16. Harvey & Binnall, PLLC; 17. Hawkins Parnell & Young, LLP; 18. Jackson Kelly PLLC; 19. Jennifer Little LLC; 20. Jones Day; 21. JPRowley Law PLLC; 22. Kasowitz, Benson, Torres LLP; 23. Kroger Gardis & Regas, LLP; 24. Thomas Lane, PLLC; 25. Larocca Hornik Rosen Greenberg & Blaha LLP; 26. Law Offices of Michael T. Van Der Veen; 27. McCarthy Wilson LLP; 28. Stuart McCommas; 29. Mukasey Frenchman & Sklaroff LLP; 30. Peroff Saunders, P.C.; 31. Smith & Liss LLC; 32. Squire Patton Boggs LLP; 33. Testa Heck Testa & White, PA; 34. The Hilbert Law Firm, LLC; 35. Themis Group LLC; 36. Tilem & Associates, PC; 37. Tobin, O'Connor & Ewing; 38. Troupis Law Office; 39. True North Law, LLC; 40. Wilenchik & Bartness, PC |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ315 Save America subpoena GJ202211096631 | 11/10/2022 | Save America | Save America, Save America Joint Fundraising Committee, Republican National Committee, the Trump Make America Great Again Committee, Make America Great Again PAC, Donald J. Trump for President Inc., Save America, and/or the Save America Joint Fundraising Committee; 1. American Made Media Consultants; 2. Belmont Strategies; 3. Event Strategies, Inc.; 4. Full Compass Systems; 5. Hudson Digital LLC; 6. Magnolia Management LLC; 7. The McEntee Group LLC; 8. National Public Affairs, LLC and/or 9. Parscale Strategy; L. All agreements, draft or final, between Save America, on the one hand, and any law firm or attorney, on the other hand, regarding the representation of and/or payment of legal fees for any individual or entity, whether directly or through another entity, including, but not limited to, all agreements with the following entities: 1. Abel Bean Law P.A.; 2. Belkin Burden Wenig & Goldman, LLP; 3. Bowers Law Office LLC; 4. Brand Woodward Law; 5. Brownstein Hyatt Farber Schreck, LLP; 6. Caruso Law Office, P.C.; 7. Clark Hill P.L.C.; 8. Cleveland, Waters and Bass, P.A.; 9. Conway, Olenjniczak & Jerry, S.C.; 10. David Schoen, Attorney at Law; 11. Dhillon Law Group Inc.; 12. Dwight L. Thomas, P.C.; 13. Elections, LLC; 14. Jenna Ellis; 15. Harder LLP; 16. Harvey & Binnall, PLLC; 17. Hawkins Parnell & Young, LLP; 18. Jackson Kelly PLLC; 19. Jennifer Little LLC; 20. Jones Day; 21. JPRowley Law PLLC; 22. Kasowitz, Benson, Torres LLP; 23. Kroger Gardis & Regas, LLP; 24. Thomas Lane, PLLC; 25. Larocca Hornik Rosen Greenberg & Blaha LLP; 26. Law Offices of Michael T. Van Der Veen; 27. McCarthy Wilson LLP; 28. Stuart McCommas; 29. Mukasey Frenchman & Sklaroff LLP; 30. Peroff Saunders, P.C.; 31. Smith & Liss LLC; 32. Squire Patton Boggs LLP; 33. Testa Heck Testa & White, PA; 34. The Hilbert Law Firm, LLC; 35. Themis Group LLC; 36. Tilem & Associates, PC; 37. Tobin, O'Connor & Ewing; 38. Troupis Law Office; 39. True North Law, LLC; 40. Wilenchik & Bartness, PC; |
| GJ316 Trump MAGA Committee subpoena GJ202211096633 | 11/10/2022 | Trump Make America Great Again Committee | Trump Make America Great Again Committee, Republican National Committee, the Trump Make America Great Again Committee, Make America Great Again PAC, Donald J. Trump for President, Inc., Save America, and/or the Save America Joint Fundraising; 1. American Made Media Consultants; 2. Belmont Strategies; 3. Event Strategies, Inc.; 4. Full Compass Systems; 5. Hudson Digital LLC; 6. Magnolia Management LLC; 7. The McEntee Group LLC; 8. National Public Affairs, LLC and/or 9. Parscale Strategy; 1. Abel Bean Law P.A.; 2. Belkin Burden Wenig & Goldman, LLP; 3. Bowers Law Office LLC; 4. Brand Woodward Law; 5. Brownstein Hyatt Farber Schreck, LLP; 6. Caruso Law Office, P.C.; 7. Clark Hill P.L.C.; 8. Cleveland, Waters and Bass, P.A.; 9. Conway, Olenjniczak & Jerry, S.C.; 10. David Schoen, Attorney at Law; 11. Dhillon Law Group Inc.; 12. Dwight L. Thomas, P.C.; 13. Elections, LLC; 14. Jenna Ellis; 15. Harder LLP; 16. Harvey & Binnall, PLLC; 17. Hawkins Parnell & Young, LLP; 18. Jackson Kelly PLLC; 19. Jennifer Little LLC; 20. Jones Day; 21. JPRowley Law PLLC; 22. Kasowitz, Benson, Torres LLP; 23. Kroger Gardis & Regas, LLP; 24. Thomas Lane, PLLC; 25. Larocca Hornik Rosen Greenberg & Blaha LLP; 26. Law Offices of Michael T. Van Der Veen; 27. McCarthy Wilson LLP; 28. Stuart McCommas; 29. Mukasey Frenchman & Sklaroff LLP; 30. Peroff Saunders, P.C.; 31. Smith & Liss LLC; 32. Squire Patton Boggs LLP; 33. Testa Heck Testa & White, PA; 34. The Hilbert Law Firm, LLC; 35. Themis Group LLC; 36. Tilem & Associates, PC; 37. Tobin, O'Connor & Ewing; 38. Troupis Law Office; 39. True North Law, LLC; 40. Wilenchik & Bartness, PC |
| GJ317 MAGA PAC subpoena GJ202211096629 | 11/10/2022 | MAGA PAC | Make America Great Again PAC; 1. American Made Media Consultants; 2. Belmont Strategies; 3. Event Strategies, Inc.; 4. Full Compass Systems; 5. Hudson Digital LLC; 6. Magnolia Management LLC; 7. The McEntee Group LLC; 8. National Public Affairs, LLC and/or 9. Parscale Strategy; 1. Abel Bean Law P.A.; 2. Belkin Burden Wenig & Goldman, LLP; 3. Bowers Law Office LLC; 4. Brand Woodward Law; 5. Brownstein Hyatt Farber Schreck, LLP; 6. Caruso Law Office, P.C.; 7. Clark Hill P.L.C.; 8. Cleveland, Waters and Bass, P.A.; 9. Conway, Olenjniczak & Jerry, S.C.; 10. David Schoen. Attorney at Law; 11. Dhillon Law Group Inc.; 12. Dwight L. Thomas, P.C.; 13. Elections, LLC; 14. Jenna Ellis; 15. Harder LLP; 16. Harvey & Binnall, PLLC; 17. Hawkins Parnell & Young, LLP; 18. Jackson Kelly PLLC; 19. Jennifer Little LLC; 20. Jones Day; 21. JPRowley Law PLLC; 22. Kasowitz, Benson, Torres LLP; 23. Kroger Gardis & Regas, LLP; 24. Thomas Lane, PLLC; 25. Larocca Hornik Rosen Greenberg & Blaha LLP; 26. Law Offices of Michael T. Van Der Veen; 27. McCarthy Wilson LLP; 28. Stuart McCommas; 29. Mukasey Frenchman & Sklaroff LLP; 30. Peroff Saunders, P.C.; 31. Smith & Liss LLC; 32. Squire Patton Boggs LLP; 33. Testa Heck Testa & White, PA; 34. The Hilbert Law Firm, LLC; 35. Themis Group LLC; 36. Tilem & Associates, PC; 37. Tobin, O'Connor & Ewing; 38. Troupis Law Office; 39. True North Law, LLC; 40. Wilenchik & Bartness, PC; |
| GJ318 RNC subpoena GJ202211096632 | 11/10/2022 | Republican National Committee | RNC: C. Documents sufficient to show all employees, including agents and independent contractors, of the Republican National Committee who worked with Save America and/or Save America Joint Fundraising Committee with regards to fundraising between October 1, 2020, and June 30, 2021. D. For the period October 1, 2020 through June 30, 2021, all documents and communications relating to Save America and/or Save America Joint Fundraising Committee, including, but not limited to, documents related to the formation, funding, and/or use of money received by Save America and/or Save America Joint Fundraising Committee. |
| GJ339 Bank of America GJ202211696751 | 11/16/2022 | Bank of America, N. A. | Citizens United Foundation<br>Citizens United<br>An account number |
| GJ340 Capital One GJ202211696752 | 11/16/2022 | Capital One, N.A./Capital One Bank (USA), N.A. | Conservative Partnership Institute, Inc.<br>An account number |
| GJ342 JP Morgan Chase GJ202211696755 | 11/16/2022 | JP Morgan Chase NA | America First Policy Institute<br>An account number |
| GJ343 Wells Fargo GJ202211696756 | 11/16/2022 | Wells Fargo Bank, N.A. | America First Policy Institute<br>An account number |
| GJ345 Equifax GJ202211796793 | 11/17/2022 | Equifax Credit Information Services, Inc | Gary Coby; Sean Dollman; Amy Kremer; Kylie Kremer; Douglas Logan; William Olsen; Kurt Olsen |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ346 Experian<br>GJ2022111796792 | 11/17/2022 | Experian | Gary Coby; Sean Dollman; Amy Kremer; Kylie Kremer; Douglas Logan; William Olsen; Kurt Olsen |
| GJ347 TransUnion<br>GJ2022111796794 | 11/17/2022 | TransUnion | Gary Coby; Sean Dollman; Amy Kremer; Kylie Kremer; Douglas Logan; William Olsen; Kurt Olsen |
| GJ341 Chain Bridge Bank (11-22) subpoena<br>GJ2022111696754 | 11/22/2022 | Chain Bridge Bank | Trump Make America Great Again Committee "TMAGAC OPR"<br>American Made Media Consultants, LLC "AMMC Revenue" |
| GJ396 Brad Parscale (11-28) subpoena<br>GJ2022112897059 | 11/28/2022 | Brad Parscale | Brad Parscale; a. Arizona: Nancy Cottle, Loraine Pellegrino, Tyler Bowyer, Jake Hoffman, Anthony Kern, James Lamon, Robert Montgomery, Samuel Moorhead, Greg Safsten, Kelli Ward. Michael Ward, Karen Fann, or Thomas Lane; b. Georgia: Joseph Brannan, James "Ken" Carroll, Vikki Townsend Consiglio, Carolyn Hall Fisher, Burt Jones, Gloria Kay Godwin, David G. Hanna, Mark W. Hennessy, Mark Amick, John Downey, Cathleen Alston Latham, Daryl Moody, Brad Carver, David Shafer, Shawn Still, C.B. Yadav, John A. Isakson, Patrick Gartland, CJ Pearson, Susan Holmes, or Robert Sinners; c. Michigan: Kathleen Berden, Rose Rook, Mayra Rodriguez, Hank Choate, Meshawn Maddock, Matt Maddock, Mari-Ann Henry, John Haggard, Clifford Frost, Kent Vanderwood, Stanley Grot, Marian Sheridan, Timothy King, James Renner, Michele Lundgren, Amy Facchinello, Ken Thompson, Terry Lynn Land, Gerald Wall, or Shawn Flynn; d. New Mexico: Jewll Powdrell, Deborah W. Maestas, Lupe Garcia, Rosie Tripp, Anissa Ford-Tinnin, Harvey Yates, or Steve Pearce; e. Nevada: Michael J. McDonald, James DeGraffenreid, Durward James Hindle III, Jesse Law, Shawn Meehan, or Eileen Rice; f. Pennsylvania: Bill Bachenberg, Lou Barletta, Tom Carroll. Ted Christian, Chuck Coccodrilli, Bernadette Comfort, Sam DeMarco III, Marcela Diaz-Myers, Christie DiEsposti, Josephine Ferro, Charlie Gerow, Kevin Harley, Leah Hoopes, Ash Khare, Andre McCoy, Lisa Patton, Pat Poprik, Andy Reilly, Suk Smith, Calvin Tucker, Robert Asher, Robert Gleason, Thomas Marino, Lance Stange, Lawrence Tabas, Christine Torretti, or Carolyn Welsh; g. Wisconsin: Andrew Hitt, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Bill Feehan, Robert F. Spindell, Jr., Kathy Kiernan, Darryl Carlson, Pam Travis, Mary Buestrin, or Tom Schreibel; h. any member, employee, or agent of the United States Department of Justice ("DOJ"), or any component, branch, litigating unit, or office of the DOJ. Dominion Voting Systems Corp., Smartmatic, Smartmatic USA; Save America, the Save Joint Fundraising PAC, the Make America Great Again PAC, and/or the Trump Make America Great Again Committee. |
| Robert Gasaway subpoena<br>GJ2022112897075 | 11/28/2022 | Robert Gasaway | Robert Gasaway; For the period October 1, 2020, through the present, all documents and communications: Submitted to, received from, or involving any local, state, or federal public official relating to (a) any claim of fraud in relation to the 2020 Presidential Election, including any presentation made to any such public official regarding the 2020 Presidential Election, or (b) any effort to persuade any such public official to change or affect the results of the 2020 Presidential Election, or delay certification of the results of that election; To, from, with, or involving any member of law enforcement relating to any allegation of fraud or lack of fraud in the 2020 Presidential Election.; Jeffrey Clark; For the period of October 1, 2020, through January 20, 2021, regardless of subject matter, all documents and communications to, from, with, or including: 1. Any member, employee, or agent of the Legislative Branch of the U.S. government. 2. Any member, employee, or agent of Donald J. Trump or any organization advocating in favor of the 2020 re-election of Donald J. Trump, including "Donald J. Trump for President, Inc." 3. Any member, employee, or agent of: (a) the White House; (b) the Executive Office of the President; or (c) the Executive Office of the Vice President. 4. Any member, employee, or agent of the United States Department of Justice, or any component, branch, litigating unit, or office of DOJ; 5. Kenneth Klukowski; 6. Bernard Kerik; 7. Mike Roman; 8. James Troupis; 9. Jenna Ellis; 10. Joe DiGenova; 11. John Eastman; 12. Kenneth Chesebro; 13. Rudy Giuliani; 14. Sidney Powell; 15. Victoria Toensing; 16. Cleta Mitchell; 17. Bruce Marks.; Save America PAC |
| GJ375 Bill.com<br>GJ2022112997142 | 11/29/2022 | Bill.com. LLC | Bradley Parscale (Individual)<br>Conservative Campaign Technology, LLC<br>Campaign Nucleus, LLC<br>Parscale Strategy, LLC |
| GJ376 Paychex subpoena<br>GJ2022112997138 | 11/29/2022 | Paychex | Campaign Nucleus, LLC<br>Bradley Parscale (Individual) |
| GJ377 Intuit<br>GJ2022112997130 | 11/29/2022 | Intuit Inc. c/o CSC | Bradley Parscale (Individual)<br>INFLUENCEABLE, LLC |
| GJ378 ADP<br>GJ2022112997128 | 11/29/2022 | ADP | Brad Parscale<br>Parscale Strategy, LLC |
| GJ379 Paychex<br>GJ2022112997127 | 11/29/2022 | Paychex | Save America (Leadership PAC)<br>Bradley T. Crate (Individual) |
| GJ383 Full Compass Systems<br>GJ2022113097207 | 11/30/2022 | Full Compass Systems, Ltd. | Compass Systems, LTD 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. |
| GJ387 McEntee Group<br>GJ2022111796835 | 11/30/2022 | The McEntee Group | McEntee Group, LLC 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. |
| GJ388 Magnolia Mgmt<br>GJ2022113097191 | 11/30/2022 | Magnolia Management LLC | Magnolia Management LLC 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ389 National Public Affair GJ2022113097212 | 11/30/2022 | National Public Affairs, LLC | National Public Affairs, LLC 1. Save America; 2. Save America Joint Fundraising Conunittee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. b. The following entities registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty,LLC |
| GJ390 Hudson Digital subpoena GJ2022113097204 | 11/30/2022 | Hudson Digital LLC | Hudson Digital LLC; 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Iue. |
| GJ384 AMMC GJ2022120197253 | 12/1/2022 | American Made Media Consultants, LLC | American Made Media Consultants LLC 1. Save America; 2. Save America Joint Fundmising Conunittee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. b. The following entities registered to, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC: 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC: 10. Red State LLC; 11. Influenceable, LLC; and/or 12. Hexagon Partners LTD. c. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and 3. Surabian Realty, LLC |
| GJ385 AMM Holding GJ2022120197254 | 12/1/2022 | American Made Media Holding Corporation, Inc. | American Made Media Holding Corporation, Inc. 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. b. The following entities registered to, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1.Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; and/or 12. Hexagon Partners LTD. c. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and 3. Surabian Realty, LLC |
| GJ392 Event Strategies GJ2022120197249 | 12/1/2022 | Event Strategies, Inc. | Event Strategies, Inc.; 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; 5. Donald J. Trump for President, Inc.; 6. Women for America First; 7. Bluebonnet Fundraising LLC; 8. Turning Point USA, or Turning Point Action; 9. Tea Party Express; 10. Eighty Percent Coalition; and/or 11. Republican Attorneys General Associntion, including but not limited to, Rule of Law Defense Fund. |
| GJ397 American Greatness Fund (12-5) subpoena GJ2022120597291 | 12/5/2022 | The American Greatness Fund | The American Greatness Fund; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. BCVM Services LLC; 4. Dyspatchit Email and Text Services LLC; 5. Campaign Nucleus, LLC; 6. Conservative Campaign Technology LLC; 7. HCHK Technologies; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Conunittee; 3. Trump Make America Great Again Conunittee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ398 Angel Protection Systems, LLC subpoena GJ2022120597292 | 12/5/2022 | Angel Protection Systems, LLC | Angel Protection Systems, LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; and/or 12. Hexagon Partners LTD. c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ399 HCHK Technologies (12-5) subpoena GJ2022120297273 | 12/5/2022 | HCHK Technologies | HCHK Technologies; a. The following entities registered, owned, managed, or associated with Bmdley Parsenle (the "Parscale Entities"): 1. Aurora Stmtegic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC.; b. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Agnin PAC; nnd/or 5. Donald J. Trump for President, Inc. c. The following entity registered to, owned, managed, or associated with Andrew Surabiau (the "Surabinu Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. SurabianRealty, LLC; d. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct PersuasionLLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ400 Influenceable LLC (12-5) subpoena GJ2022120597289 | 12/5/2022 | Influenceable, LLC | Influenceable, LLC; a. Amerienn Made Medin Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bmdley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Cnmpaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; and/or 11. Angel Protection Systems, LLC. c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundmising Conuuittee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donnld J. Trump for President, Inc. d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ401 Medina Software (12-5) subpoena GJ2022120597288 | 12/5/2022 | Medina Software and Holdings, LLC | Medina Software and Holdings, LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered to, owned, managed, or associated with Bradley Parseale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Pnscale Stmtegy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Teclmologics; 9. Red State, LLC; 10. Influenceable, LLC; aud/or 11. Augel Protectiou Systems, LLC; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Sumbian (the "Sumbian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ402 Parscale Strategy (12-5) subpoena GJ2022120597300 | 12/5/2022 | Parscale Stmtegy | Parseale Strategy; a. American Made Media Consultants ("AMMC"). b. The following entities registered, owned. managed, or associated with Bmdley Parsenle (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. The Americam Greatness Fund; 3. BCVM Services LLC; 4. Dyspatchit Email and Text Services LLC; 5. Campaigu Nucleus, LLC; 6. Conservative Campaigu Technology LLC; 7. HCHK Technologies; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; 11. Angel Protection Systems, LLC; 12. American Made Media Consultants; and/or 13. America First Policy Institute.; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Conuuittee; 3. Trump Make Amerlea Great Again Committee; 4. Make Amerien Great Again PAC; and/or 5. Donald J. Trump for President, Inc. d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Sumbian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Sumbian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Renltime Media LLC; and/or 9. RTMUK Limited |
| GJ403 Aurora Strategic (12-5) subpoena GJ2022120297270 | 12/5/2022 | Aurom Strategic Marketing LLC | Aurora Strategic Marketing LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owued, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; and/or 11. Influenceable, LLC. c. The following entities associated with foruer President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundmising Conuuittee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. d. The following entity registered to, owned, mauaged, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; nud/or 9. RTMUK Limited |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ404 BCVM Services (12-5) subpoena GJ2022120597303 | 12/5/2022 | BCVM Services LLC | BCVM Services LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. Dyspatchit Email and Text Services LLC; 5. Campaign Nucleus, LLC; 6. Conservative Campaign Technology LLC; 7. HCHK Technologies; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC.; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC: 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ405 Campaign Nucleus (12-5) subpoena GJ2022120297272 | 12/5/2022 | Campaign Nucleus, LLC | Campaign Nucleus, LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. HCHK Technologies; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC. c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Agnin Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc. d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full StackText LLC: 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ406 Conservative Campaign Tech (12-5) subpoena GJ2022120297275 | 12/5/2022 | Conservative Campaign Techuology L | Conservative Campaign Technology LLC; a. American Made Media Consultants ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Campaign Nucleus, LLC; 7. HCHK Technologies; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC. c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC:e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ407 Dyspatchit Email and Text Services (12-5) subpoena GJ2022120597301 | 12/5/2022 | Dyspatchit Email and Text Services LL | Dyspatchit Email and Text Services LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered. owned. managed. or associated with Bradley Parscale (the "Parscale Eutities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Campaign Nucleus, LLC; 6. Conservative Campaign Technology LLC; 7. HCHK Techuologies; 8. Red State LLC; 9. Medina Software and Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned. managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC; 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |
| GJ408 Red State LLC (12-5) subpoena GJ2022120297279 | 12/5/2022 | Red State LLC | Red State LLC; a. American Made Media Consultauts, LLC ("AMMC"). b. The followiug eutities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Influenceable, LLC; and/or 11. Angel Protection Systems, LLC. c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundmising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The followiug entity registered to, owned, managed. or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Sumbian Realty, LLCe. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion LLC: 2. Full Stack Text LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC: 6. OS Ventures II LLC; 7. Optimized Mobile Dnta LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ395 Tim Murtaugh (12-9) subpoena GJ2022111496686 | 12/9/2022 | Tim Murtaugh | Tim Murtaugh; a. Arizona: Nancy Cottle, Lorraine Pellegrino, Tyler Bowyer, Jake Hoffman, Anthony Kern, James Lamon, Robert Montgomery, Samuel Moorhead, Greg Safsten, Kelli Ward. Michael Ward, Karen Fann, or Thomas Lane; b. Georgia: Joseph Brannan. James "Ken" Carroll, Vikki Townsend Consiglio, Carolyn Hall Fisher, Burt Jones, Gloria Kay Godwin, David G. Hanna, Mark W. Hennessy, Mark Amick, John Downey, Cathleen Alston Latham, Daryl Moody, Brad Carver, David Shafer, Shawn Still, C.B. Yadav, John A. Isakson, Patrick Gartland, CJ Pearson, Susan Holmes, or Robert Sinners; c. Michigan: Kathleen Berden, Rose Rook, Mayra Rodriguez, Hank Choate, Meshawn Maddock, Matt Maddock, Mari-Ann Henry, John Haggard, Clifford Frost, Kent Vanderwood, Stanley Grot, Marian Sheridan, Timothy King, James Renner, Michele Lundgren, Amy Facchinello, Ken Thompson, Terry Lynn Land, Gerald Wall, or Shawn Flynn; d. New Mexico: Jewll Powdrell, Deborah W. Maestas, Lupe Garcia, Rosie Tripp, Anissa Ford-Tinnin, Harvey Yates, or Steve Pearce; e. Nevada: Michael J. McDonald, James DeGraffenreid, Durward James Hindle III, Jesse Law, Shawn Meehan, or Eileen Rice; f. Pennsylvania: Bill Bachenberg, Lou Barletta, Tom Carroll, Ted Christian, Chuck Coccodrilli, Bernadette Comfort, Sam DeMarco III, Marcela Diaz-Myers, Christie DiEsposti, Josephine Ferro, Charlie Gerow, Kevin Harley, Leah Hoopes, Ash Khare, Andre McCoy, Lisa Patton, Pat Poprik, Andy Reilly, Suk Smith, Calvin Tucker, Robert Asher, Robert Gleason, Thomas Marino, Lance Stange, Lawrence Tabas, Christine Torretti, or Carolyn Welsh; g. Wisconsin: Andrew Hitt, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Bill Feehan, Robert F. Spindell, Jr., Kathy Kiernen, Darryl Carlson, Pam Travis, Mary Buestrin, or Tom Schreibel; h. any member, employee, or agent of the United States Department of Justice ("DOJ"), or any component, branch, litigating unit, or office of the DOJ. Dominion Voting Systems Corp., Smartmatic, Smartmatic USA, Save America PAC |
| American Voting Rights Foundation (12-12) subpoena GJ2022121297589 | 12/12/2022 | American Voting Rights Foundation | American Voting Rights Foundation; Conservative Partnership Institute, Inc., Conservative Partnership Center, LLC, Save America, Save AmericanJoint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; Cyber Ninjas, Stratech, LLC; Cyfir, LLC; WAKE Technology Services, Inc., Compass Legal Services, Paracorp, Inc. d/b/a Parasec, and/or Scott Sigman, Esquire. All documents and communications between or among one or more of Mark Meadows, Cleta Mitchell, Stephen Miller, Patrick Corrigan, Edward Corrigan, Michael Roman, Christina Bobb, Douglas Logan and/or any representative or employee of National Capital Bank regarding or related to received from Conservative Partnership Institute, Inc., |
| CPC (12-12) subpoena GJ2022121297595 | 12/12/2022 | Conservative Partnership Center, LLC | Conservative Partnership Center; Save America; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; American Voting Rights Foundation; Cyber Ninjas; Stratech, LLC; Cyfir, LLC; Scott Sigman, Esquire; Michael Roman; Steven Miller (as spelled in subpoena); Cleta Mitchell; Christina Bobb; Thomas Datwyler; and/or Any member of the Arizona State Senate and/or an any affiliate thereof. |
| CPI (12-12) subpoena GJ2022121297596 | 12/12/2022 | Conservative Partnership Institute, LLC | Conservative Partnership Institute; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; American Voting Rights Foundation; Cyber Ninjas; Stratech, LLC; Cyfir, LLC; Scott Sigman, Esquire; Michael Roman; Steven Miller (as spelled in subpoena); Cleta Mitchell; Christina Bobb; Thomas Datwyler; and/or Any member of the Arizona State Senate and/or an any affiliate thereof. |
| Datwyler Thomas (12-12) subpoena GJ2022121297598 | 12/12/2022 | Thomas Datwyler | American Voting Rights Foundation; LLC, Save America, Save American Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; Cyber Ninjas, Stratech, LLC; Cyfir, LLC; WAKE Technology Services, Inc., Compass Legal Services, Paracorp, Inc. d/b/a Parasec, and/or Scott Sigman, Esquire.; All documents and communications between or among one or more of you, Mark Meadows, Cleta Mitchell, Stephen Miller, Patrick Corrigan, Edward Corrigan, Michael Roman, Christina Bobb, Douglas Logan and/or any representative or employee of National Capital Bank regarding or related to received from Conservative Partnership Institute, Inc., including the receipt of and any subsequent transfer of those funds and/or any phone calls and/or meetings regarding or related thereto. |
| GJ412 Wells Fargo GJ2022121297607 | 12/12/2022 | Wells Fargo Bank, N.A. | Sidney Powell<br>Sidney Powell, P.C.<br>LDFFTAR, Inc.<br>An Account Number |
| GJ413 Wells Fargo GJ2022121297608 | 12/12/2022 | Wells Fargo Bank, N.A. | Scott Sigman, Esquire – PA IOLTA Escrow Account<br>An Account Number |
| GJ417 Cameron Seward (12-12) subpoena GJ2022120997524 | 12/12/2022 | Cameron Seward | Cameron Seward; Conservative Partnership Institute Inc.; 1. Save America; 2. Save America Joint Fundmising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; 5. Donald J. Trump for President, Inc.; 6. American Voting Rights Foundation; 7. Cyber Ninjas; 8. Stratech, LLC; 9. Cyfir, LLC; 10. Scott Sigman, Esquire; 11. Michael Roman; 12. Steven Miller (as spelled in subpoena); 13. Cleta Mitchell; 14. Christina Bobb; 15. Thomas Datwyler; and/or 16. Any member of the Arizona State Senate and/or an any affiliate thereof. |
| GJ420 Edward Corrigan (12-12) subpoena GJ2022120997525 | 12/12/2022 | Edward Corrigan | Edward Corrigan; Conservative Partnership Institute Inc.; 1. Save America; 2. Save America Joint Fundmising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; 5. Donald J. Trump for President, Inc.; 6. American Voting Rights Foundation; 7. Cyber Ninjas; 8. Stratech, LLC; 9. Cyfir, LLC; 10. Scott Sigman, Esquire; 11. Michael Roman; 12. Steven Miller (as spelled in subpoena); 13. Cleta Mitchell; 14. Christina Bobb; 15. Thomas Datwyler; and/or 16. Any member of the Arizona State Senate and/or an any affiliate thereof. |
| GJ422 Patrick Corrigan (12-12) subpoena GJ2022120997523 | 12/12/2022 | Patrick Corrigan | Patrick Corrigan; Conservative Partnership Institute Inc.; 1. Save America; 2. Save America Joint Fundmising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; 5. Donald J. Trump for President, Inc.; 6. American Voting Rights Foundation; 7. Cyber Ninjas; 8. Stratech, LLC; 9. Cyfir, LLC; 10. Scott Sigman, Esquire; 11. Michael Roman; 12. Steven Miller (as spelled in subpoena); 13. Cleta Mitchell; 14. Christina Bobb; 15. Thomas Datwyler; and/or 16. Any member of the Arizona State Senate and/or an any affiliate thereof. |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ454 Datwyler Thomas GJ2022121297598 | 12/12/2022 | Thomas Datwyler | Thomas Datwyler; American Voting Rights; Documents and communications related to one or more of Conservative Partnership Institute, Inc., Conservative Partnership Center, LLC, Save America, Save American Joint Fundraisiug Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; Cyber Ninjas, Stratech, LLC; Cyfir. LLC; WAKE Technology Services, Inc., Compass Legal Services, Paracorp, Inc. d/b/a Parasec, and/or Scott Sigman, Esquire.; Mark Meadows, Cleta Mitchell, Stephen Miller, Patrick Corrigan, Edward Corrigan, Michael Roman, Christina Bobb, Douglas Logan and/or any representative or employee of National Capital Bank regarding or related to received from Conservative Partnership Institute, Inc., |
| GJ455 American Voting Rights Foundation GJ2022121297589 | 12/12/2022 | American Voting Rights Foundation | American Voting Rights Foundation; Conservative Partnership Institute, Inc., Conservative Partnership Center, LLC, Save America, Save American Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; Cyber Ninjas, Stratech, LLC; Cyfir, LLC; WAKE Technology Services, Inc., Compass Legal Services, Paracorp, Inc. d/b/a Parasec, and/or Scott Sigman, Esquire; Mark Meadows, Cleta Mitchell, Stephen Miller, Patrick Corrigan, Edward Corrigan, Michael Roman, Christina Bobb, Douglas Logan and/or any representative or employee of National Capital Bank regarding or related to received from Conservative Partnership Institute, Inc., including the receipt of and any subsequent transfer of those funds and/or any phone calls and/or meetings regarding or related thereto. |
| GJ410 Red Curve GJ2022121397618 | 12/13/2022 | Red Curve Solutions, LLC. | Red Curve Solutions, LLC.; Save America; Save America Joint Fundraisiug Committee; Trump Make America Great Again Committee; Make America Great Agaiu PAC; Donald J. Trump for President, Inc; The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures II LLC; 6. Optimized Mobile Data LLC; 7. Realtime Media LLC; and/or 8. RTMUK Limited. |
| GJ411 Bradley Crate GJ2022121397612 | 12/13/2022 | Bradley Crate | Bradley Crate; Bradley Crate and/or Red Curve Solutions, LLC; 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; 5. Donald J. Trump for President, Inc; a. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems. b. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC.; c. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures II LLC; 6. Optimized Mobile Data LLC; 7. Realtime Media LLC; and/or 8. RTMUK Limited. |
| GJ414 Google GJ2022120897478 | 12/16/2022 | Google LLC | XX.donaldtrump.XX;<br>XX@victory.trump.XX;<br>XX@theamericanvoter.XX;<br>XX@mail.secureconservative.XX; and<br>XX@ourpresident45.XX |
| GJ415 SalesForce GJ2022120897479 | 12/16/2022 | SalesForce, Inc. | XX.donaldtrump.XX;<br>XX@victory.trump.XX;<br>XX@theamericanvoter.XX;<br>XX@mail.secureconservative.XX; and<br>XX@ourpresident45.XX |
| GJ416 GoDaddy GJ2022120897476 | 12/16/2022 | GoDaddy.com, LLC | XX.donaldtrump.XX;<br>XX@victory.trump.XX;<br>XX@theamericanvoter.XX;<br>XX@mail.secureconservative.XX: and<br>XX@ourpresident45.XX |
| GJ421 Compass Legal Services GJ2022121597720 | 12/19/2022 | Compass Legal Services, Inc. | Compass Legal Services, Inc.<br>Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC, and/orDonald J. Trump for President, Inc. |
| GJ423 Elections GJ2022121597721 | 12/19/2022 | Elections LLC | Elections LLC; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC, and/or Donald J. Trump for President, Inc. |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ147 Christopher Miller (12-20) subpoena GJ2022121397654 | 12/20/2022 | Christopher Miller | Christopher Miller; a. Arizona: Nancy Cottle, Loraine Pellegrino, Tyler Bowyer, Jake Hoffman, Anthony Kern, James Lamon, Robert Montgomery, Samuel Moorhead, Greg Safsten, Kelli Ward, Michael Ward, Karen Fann, or Thomas Lane; b. Georgia: Joseph Brannan, James "Ken" Carroll, Vikki Townsend Consiglio, Carolyn Hall Fisher, Burt Jones, Gloria Kay Godwin, David G. Hanna, Mark W. Hennessy, Mark Amick, John Downey, Cathleen Alston Latham, Daryl Moody, Brad Carver, David Shafer, Shawn Still, C.B. Yadav, John A. Isakson, Patrick Gartland, CJ Pearson, Susan Holmes, or Robert Sinners; c. Michigan: Kathleen Berden, Rose Rook, Mayra Rodriguez, Hank Choate, Meshawn Maddock, Matt Maddock, Mari-Ann Henry, John Haggard, Clifford Frost, Kent Vanderwood, Stanley Grot, Marian Sheridan, Timothy King, James Renner, Michele Lundgren, Amy Facchinello, Ken Thompson, Terry Lynn Land, Gerald Wall, or Shawn Flynn; d. New Mexico: Jewll Powdrell, Deborah W. Maestas, Lupe Garcia, Rosie Tripp, Anissa Ford-Tinnin, Harvey Yates, or Steve Pearce; e. Nevada: Michael J. McDonald, James DeGraffenreid, Durward James Hindle III, Jesse Law, Shawn Meehan, or Eileen Rice; f. Pennsylvania: Bill Bachenberg, Lou Barletta, Tom Carroll, Ted Christian, Chuck Coccodrilli, Bernadette Comfort, Sam DeMarco III, Marcela Diaz-Myers, Christie DiEsposti, Josephine Ferro, Charlie Gerow, Kevin Harley, Leah Hoopes, Ash Khare, Andre McCoy, Lisa Patton, Pat Poprik, Andy Reilly, Suk Smith, Calvin Tucker, Robert Asher, Robert Gleason, Thomas Marino, Lance Stange, Lawrence Tabas, Christine Torretti, or Carolyn Welsh; g. Wisconsin: Andrew Hitt, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Bill Feehan, Robert F. Spindell, Jr., Kathy Kiernen, Darryl Carlson, Pam Travis, Mary Buestrin, or Tom Schreibel; 1. Any member, employee, or agent of the United States Department of Justice ("DOJ"), or any component, branch, litigating unit, or office of DOJ.; 2. Bernard Kerik; 3. Mike Roman; 4. James Troupis; 5. Jenna Ellis; 6. Joe DiGenova; 7. John Eastman; 8. Kenneth Chesebro; 9. Rudy Giuliani; 10. Sidney Powell; 11. Victoria Toensing; 12. Cleta Mitchell; 13. Bruce Marks; 14. Boris Epshteyn; 15. Justin Clark; 16. Matt Morgan; 17. Joshua Findlay; Save America PAC; |
| Direct Persuasion (12-27) subpoena GJ2022122297860 | 12/27/2022 | Direct Persuasion, LLC | Direct Persuasion, LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Greenwood Consulting LLC; 3. Opn Sesame LLC; 4. OS Ventures I LLC; 5. OS Ventures II LLC; 6. Optimized Mobile Data LLC; 7. Realtime Media LLC; and/or 8. RTMUK Limited; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit") |
| Full Stack Text (12-27) subpoena GJ2022122197841 | 12/27/2022 | Full Stack Text, LLC | Full Stack Text , LLC; American Made Media Consultants, LLC entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion, LLC; 2. Greenwood Consulting LLC; 3. Opn Sesame LLC; 4. OS Ventures I LLC; 5. OS Ventures II LLC; 6. Optimized Mobile Data LLC; 7. Realtime Media LLC; and/or 8. RTMUK Limited f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit") |
| GJ440 Gary Coby (12-27) subpoena GJ2022122297862 | 12/27/2022 | Gary Coby | Gary Coby; Former President Trump, Bradley Parscale, Alex Cannon, Jared Kushner, Sydney Powell, Jenna Ellis, Eric Hirschman, and/or Rudolph Giuliani; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities associated with former President Donald J. Trump (the "Trump Entities"): a. Save America; b. Save America Joint Fundraising Committee; c. Trump Make America Great Again Committee; d. Make America Great Again PAC; and/or e. Donald J. Trump for President, Inc.; c. Gary Coby, and/or any of the following entities owned, managed, or associated with Gary Coby (the "Coby Entities"): a. Direct Persuasion LLC; b. Full Stack Text LLC; c. Greenwood Consulting LLC; d. Opn Sesame LLC; e. OS Ventures I LLC; f. OS Ventures II LLC; g. Optimized Mobile Data LLC; h. Realtime Media LLC; and/or i. RTMUK Limited. d. Brady Parscale, and/or any of the following entities owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): a. Aurora Strategic Marketing LLC; b. Parscale Strategy; c. The American Greatness Fund; d. BCVM Services LLC; e. Campaign Nucleus, LLC; f. Conservative Campaign Technology LLC; g. HCHK Technologies; h. Red State LLC; i. Medina Software and Holdings, LLC; j. Influenceable, LLC; and/or k. Angel Protection Systems, LLC.; e. The following entities registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): a. Belmont Strategies LLC; b. Maja Ventures LLC; and/or c. Surabian Realty, LLC.; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: a. Justlikit Limited ("Justlikit"). |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ441 Greenwood Consulting (12-27) subpoena GJ2022122297861 | 12/27/2022 | Greenwood Consulting, LLC | Greenwood Consulting, LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Direct Persuasion, LLC; 2. Opn Sesame LLC; 3. OS Ventures I LLC; 4. OS Ventures II LLC; 5. Optimized Mobile Data LLC; 6. Realtime Media LLC; and/or 7. RTMUK Limited; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit") |
| GJ442 Optimized Mobile Data (12-27) subpoena GJ2022122297859 | 12/27/2022 | Optimized Mobile Data, LLC | Optimized Mobile Data, LLC; a. American Made Media Consultants, LLC ("AMMC").; b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I, LLC; 6. OS Ventures II, LLC; 7. Realtime Media LLC; and/or 8. RTMUK Limited; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit"). |
| GJ443 OS Ventures I LLC (12-27) subpoena GJ2022122197846 | 12/27/2022 | OS Ventures I, LLC | OS Ventures I, LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I LLC; 6. OS Ventures II LLC; 7. Optimized Mobile Data LLC; 8. Realtime Media LLC; and/or 9. RTMUK Limited; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit"). |
| GJ444 OS Ventures II (12-27) subpoena GJ2022122197845 | 12/27/2022 | OS Ventures II, LLC | OS Ventures II, LLC; a. American Made Media Consultants, LLC ("AMMC").; b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures II LLC; 6. Optimized Mobile Data LLC; 7. Realtime Media LLC; and/or 8. RTMUK Limited; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit"). |

# Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJ445 Realtime Media LLC (12-27) subpoena GJ2022122197848 | 12/27/2022 | Realtime Media LLC | Realtime Media LLC; a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d. The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC; 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I, LLC; 6. OS Ventures II, LLC; 7. Realtime Media LLC: and/or 8. RTMUK Limited: f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit"). |
| GJ446 RTMUK Limited LLC (12-27) subpoena GJ2022122197852 | 12/27/2022 | RTMUK Limited LLC | RTMUK Limited LLC; A. All agreements, draft or final, between RTMUK Limited LLC, and one or more of the following entities: a. American Made Media Consultants, LLC ("AMMC"). b. The following entities registered, owned, managed, or associated with Bradley Parscale (the "Parscale Entities"): 1. Aurora Strategic Marketing LLC; 2. Parscale Strategy; 3. The American Greatness Fund; 4. BCVM Services LLC; 5. Dyspatchit Email and Text Services LLC; 6. Conservative Campaign Technology LLC; 7. Campaign Nucleus LLC; 8. HCHK Technologies; 9. Medina Software Holdings, LLC; 10. Red State LLC; 11. Influenceable, LLC; 12. Hexagon Partners LTD; and/or 13. Angel Protection Systems; c. The following entities associated with former President Donald J. Trump (the "Trump Entities"): 1. Save America; 2. Save America Joint Fundraising Committee; 3. Trump Make America Great Again Committee; 4. Make America Great Again PAC; and/or 5. Donald J. Trump for President, Inc.; d The following entity registered to, owned, managed, or associated with Andrew Surabian (the "Surabian Entities"): 1. Belmont Strategies LLC; 2. Maja Ventures LLC; and/or 3. Surabian Realty, LLC; e. The following entities registered to, owned, managed, or associated with Gary Coby ("Coby Entities"): 1. Full Stack Text LLC: 2. Direct Persuasion, LLC; 3. Greenwood Consulting LLC; 4. Opn Sesame LLC; 5. OS Ventures I, LLC; 6. OS Ventures II, LLC: 7. Realtime Media LLC; and/or 8. Optimized Mobile Data LLC.; f. The following entity registered to, owned, managed, or associated with Simon Wardropper: 1. Justlikit Limited ("Justlikit"). |
| GJE0005 Red State Partners LLC GJ20230118-E0005 SERVICE | 1/18/2023 | Red State Partners LLC | Red State Partners LLC; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; and/or Donald J. Trump for President, Inc. |
| GJE0006 Pericles LLC GJ20230118-E0006 | 1/18/2023 | Pericles, LLC | Pericles, LLC; Save America; Save America Joint Fundraising Committee: Trump Make America Great Again Committee: Make America Great Again PAC; and/or Donald J. Trump for President, Inc. |
| GJE0060 Paychex GJ20230119-E0060 SERVICE | 1/19/2023 | Paychex Business Solutions, LLC | Campaign Nucleus, LLC; Bradley Parscale |
| GJE0061 ADP GJ20230119-E0061 SERVICE | 1/19/2023 | ADP TotalSoure, Inc. | Bradley Parscale; Parscale Strategy, LLC |
| GJE0062 Bank of America GJ20230119-E0062 SERVICE | 1/19/2023 | Bank of America | Pericles, LLC; Vince Haley; Ross Worthington; |
| GJE0067 Regions Bank GJ20230123-E0067 SERVICE | 1/23/2023 | Regions Bank | John M Philips Client Trust Account |
| GJE0068 Paychex GJ20230124-E0068 | 1/24/2023 | Paychex | Compass Professional Inc. and/or any customer associated with National Capital Bank account ; Conservative Partnership Institute Inc. and/or any customer associated with National Capital Bank account; Center for Renewing America Inc. and/or any customer associated with National Capital Bank account: Compass Legal Services Inc. and/or any customer associated with National Capital Bank account; America First Legal Foundation and/or any customer associated with National Capital Bank . |
| GJE0069 ADP GJ20230124-E0069 | 1/24/2023 | ADP | Elections, LLCand/or any customer associated with JPMorgan Chase bank account; Conservative Partnership Institute Inc. and/or any customer associated with National Capital Bank account; Centerfor Renewing America Inc. and/or any customer associated with National Capital Bank account; Compass Legal Services Inc. and/or any customer associated with National Capital Bank account; America First Legal Foundation and/or any customer associated with National Capital Bank account |
| GJE0087 ADP TotalSource GJ20230127-E0087 SERVICE | 1/27/2023 | ADP TotalSoure, Inc. | Conservative Partnership Institute Inc. and/or any customer associated with National Capital Bank account; Center for Renewing America Inc. and/or any customer associated with National Capital Bank account; Compass Legal Services Inc. and/orany customer associated with National Capital Bank account; America First Legal Foundation and/or any customer associated with National Capital Bankaccount |
| GJE0089 Republic Bank GJ20230131-E0089 | 1/31/2023 | Republic Bank | Nicholas Luna; CIC VENTURES LLC |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0090 Wells Fargo GJ20230131-E0090 SERVICE | 1/31/2023 | Wells Fargo Bank, N.A | Anthony Dolan; TVR. LLC |
| GJE0092 Chain Bridge Bank DJT MAGA GJ20230201-E0092 | 2/1/2023 | Chain Bridge Bank | Donald J Trump for President Inc./Make America Great Again (MAGA) PAC |
| GJE0093 Chain Bridge Bank TMAGAC GJ20230201-E0093 | 2/1/2023 | Chain Bridge Bank | Trump Make America Great Again Committee (TMAGAC) - Contribution Refund & Rev; Trump Make America Great Again Committee (TMAGAC) - OPR; Trump Make America Great Again Committee (TMAGAC) – Vendor Refunds, Aegis Rev, Conv Rev, Merkle Revenue, DJTFP Holding, Stripe Revenue; Trump Make America Great Again Committee (TMAGAC) – Stripe; RNC; |
| GJE0094 Chain Bridge Bank Save America GJ20230201-E0094 | 2/1/2023 | Chain Bridge Bank | Save America; Save America Joint Fundraising Committee |
| GJE0095 Chain Bridge Bank RNC GJ20230201-E0095 | 2/1/2023 | Chain Bridge Bank | Republican National Committee: RNC Contribution Account; RNC Recount; RNC OPR |
| GJE0096 Stripe Inc GJ20230201-E0096 | 2/1/2023 | Stripe, Inc. | Trump Make America Great Again Committee (TMAGAC) – Stripe Rev |
| GJE0097 Bank of America GJ20230201-E0097 | 2/1/2023 | Bank of America | Gabriel Strategies LLC; Robert Gabriel |
| GJE0098 Cameron Seward GJ20230201-E0098 | 2/1/2023 | Cameron Seward | Cameron Seward |
| GJE0099 Patrick Corrigan GJ20230201-E0099 | 2/1/2023 | Patrick Corrigan | Patrick Corrigan |
| GJE0100 Ed Corrigan GJ20230201-E0100 | 2/1/2023 | Ed Corrigan | Ed Corrigan |
| GJE0066 JP Morgan Chase GJ20230123-E0066 | 2/7/2023 | JP Morgan Chase | Elections, LLC; Justin Clark; Stefan Passantino |
| GJE0109 WinRed final subpoena GJ20230207-E0109 | 2/7/2023 | WinRed | Trump Make America Great Again Committee (TMAGAC); Save America; Save America Joint Fundraising Committee |
| GJE0110 Silicon Valley Bank GJ20230208-E0110 | 2/8/2023 | Silicon Valley Bank | Gary Coby; Account Number:; Account Number:; Account Number: |
| GJE0111 Morgan Stanley GJ20230208-E0111 | 2/8/2023 | Morgan Stanley | Gary Coby; Direct Persuasion, LLC; Opn Sesame, LLC |
| GJE0112 Fidelity NFS GJ20230208-E0112 | 2/8/2023 | Fidelity Investments/National Financial Services LLC | Gary Coby; Direct Persuasion, LLC; Opn Sesame, LLC |
| GJE0113 Bill.com GJ20230208-E0113 | 2/8/2023 | Bill.com, LLC | Gary Coby; Direct Persuasion, LLC; Opn Sesame, LLC |
| GJE0119 Save America JFC GJ20230210-E0119 | 2/10/2023 | Save America Joint Fundraising Committee | Save America Joint Fundraising Committee; The Oath Keepers; The Proud Boys; 1st Amendment Praetorian; Brandon Akerill; Joseph Biggs; Charles Bowman; Thomas Caldwell; Donovan Crowell; Joseph Hackett; Kenneth Harrelson; Joshua James; Robert Patrick Lewis; Connie Meggs; Kelly Meggs; Roberto Minuta; David Moerschel; Ethan Nordean; Dominic Pezzola; Ivan Raiklin; Zachary Rehl; Elmer Stewart Rhodes III; Kellye SoRelle; Rusell Taylor; Henry "Enrique" Tarrio a/k/a Enrique Tarrio; Brian Ulrich; Edward Vallejo; Jessica Watkins |
| GJE0120 Save America GJ20230210-E0120 | 2/10/2023 | Save America | Save America; The Oath Keepers; The Proud Boys; 1st Amendment Praetorian; Brandon Akerill; Joseph Biggs; Charles Bowman; Thomas Caldwell; Donovan Crowell; Joseph Hackett; Kenneth Harrelson; Joshua James; Robert Patrick Lewis; Connie Meggs; Kelly Meggs; Roberto Minuta; David Moerschel; Ethan Nordean; Dominic Pezzola; Ivan Raiklin; Zachary Rehl; Elmer Stewart Rhodes III; Kellye SoRelle; Rusell Taylor; Henry "Enrique" Tarrio a/k/a Enrique Tarrio; Brian Ulrich; Edward Vallejo; Jessica Watkins |
| GJE0121 MAGA PAC GJ20230210-E0121 | 2/10/2023 | Make America Great Again PAC | Make America Great Again PAC; The Oath Keepers; The Proud Boys; 1st Amendment Praetorian; Brandon Akerill; Joseph Biggs; Charles Bowman; Thomas Caldwell; Donovan Crowell; Joseph Hackett; Kenneth Harrelson; Joshua James; Robert Patrick Lewis; Connie Meggs; Kelly Meggs; Roberto Minuta; David Moerschel; Ethan Nordeau; Dominic Pezzola; Ivan Raiklin; Zachary Rehl; Elmer Stewart Rhodes III; Kellye SoRelle; Rusell Taylor; Henry "Enrique" Tarrio a/k/a Enrique Tarrio; Brian Ulrich; Edward Vallejo; Jessica Watkins |

# Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0122 TMAGAC GJ20230210-E0122 | 2/10/2023 | Trump Make America Great Again Committee | Trump Make America Great Again Committee; The Oath Keepers; The Proud Boys; 1st Amendment Praetorian; Brandon Akerill; Joseph Biggs; Charles Bowman; Thomas Caldwell; Donovan Crowell; Joseph Hackett; Kenneth Harrelson; Joshua James; Robert Patrick Lewis; Connie Meggs; Kelly Meggs; Roberto Minuta; David Moerschel; Ethan Nordean; Dominic Pezzola; Ivan Raiklin; Zachary Rehl; Elmer Stewart Rhodes III; Kellye SoRelle; Rusell Taylor; Henry "Enrique" Tarrio a/k/a Enrique Tarrio; Brian Ulrich; Edward Vallejo; Jessica Watkins |
| GJE0123 Ed Corrigan GJ20230210-E0123 | 2/10/2023 | Ed Corrigan | Ed Corrigan |
| GJE0124 Cameron Seward GJ20230210-E0124 | 2/10/2023 | Cameron Seward | Cameron Seward |
| GJE0130 Truist Financial GJ20230214-E0130 | 2/15/2023 | Truist Financial (SunTrust) | Justin Clark; Stefan Passantino; Known Account: # |
| GJE0131 Navy Federal GJ20230214-E0131 | 2/15/2023 | Navy Federal Credit Union | Justin Clark; Stefan Passantino; Known Account: # |
| GJE0132 Gabriel Strategies GJ20230214-E0132 | 2/15/2023 | Gabriel Strategies LLC | Gabriel Strategies LLC; Save America; Save America Joint Fundraising Committee;Trump Make America Great Again Committee; Make America Great Again PAC; and/or Donald J. Trump for President, Inc. |
| GJE0133 Robert Gabriel GJ20230214-E0133 | 2/15/2023 | Robert Gabriel | Robert Gabriel: Arizona: Nancy Cottle, Loraine Pellegrino, Tyler Bowyer, Jake Hoffman, Anthony Kern, James Lamon, Robert Montgomery, Samuel Moorhead, Greg Safsten, Kelli Ward, Michael Ward, Karen Fann, or Thomas Lane; b. Georgia: Joseph Brannan, James "Ken" Carroll, Vikki Townsend Consiglio, Carolyn Hall Fisher, Burt Jones, Gloria Kay Godwin, David G. Hanna, Mark W. Hennessy, Mark Amick, John Downey, Cathleen Alston Latham, Daryl Moody, Brad Carver, David Shafer, Shawn Still, C.B. Yadav, John A. Isakson, Patrick Gartland, CJ Pearson, Susan Holmes, or Robert Sinners; c. Michigan: Kathleen Berden, Rose Rook, Mayra Rodriguez, Hank Choate, Meshawn Maddock, Matt Maddock, Mari-Ann Henry, John Haggard, Clifford Frost, Kent Vanderwood, Stanley Grot, Marian Sheridan, Timothy King, James Renner, Michele Lundgren, Amy Facchinello, Ken Thompson, Terry Lynn Land, Gerald Wall, or Shawn Flynn; d. New Mexico: Jewll Powdrell, Deborah W. Maestas, Lupe Garcia, Rosie Tripp, Anissa Ford-Tinnin, Harvey Yates, or Steve Pearce; e. Nevada: Michael J. McDonald, James DeGraffenreid, Durward James Hindle III, Jesse Law, Shawn Meehan, or Eileen Rice; f. Pennsylvania: Bill Bachenberg, Lou Barletta, Tom Carroll, Ted Christian, Chuck Coccodrilli, Bernadette Comfort, Sam DeMarco III, Marcela Diaz-Myers, Christie DiEsposti, Josephine Ferro, Charlie Gerow, Kevin Harley, Leah Hoopes, Ash Khare, Andre McCoy, Lisa Patton, Pat Poprik, Andy Reilly, Suk Smith, Calvin Tucker, Robert Asher, Robert Gleason, Thomas Marino, Lance Stauge, Lawrence Tabas, Christine Torretti, or Carolyn Welsh; g. Wisconsin: Andrew Hitt, Kelly Ruh, Carol Brunner, Edward Scott Grabins, Bill Feehan, Robert F. Spindell, Jr., Kathy Kiernen, Darryl Carlson, Pam Travis, Mary Buestrin, or Tom Schreibel; Any member, employee, or agent of the United States Department of Justice ("DOJ"), or any component, branch, litigating unit, or office of DOJ. Bernard Kerik; Mike Roman; James Troupis; Jenna Ellis; Joe DiGenova; John Eastman; Kenneth Chesebro; Rudy Giulian; Sidney Powell; Victoria Toensing; Cleta Mitchell; Bruce Marks; Boris Epshteyn; Justin Clark; Matt MorganJoshua Findlay; Dominion Voting Systems Corp., Smartmatic, Smartmatic USA, the ownership or control of any such company or company's parent, subsidiary, or affiliate, any executive of any such company, |
| GJE0142 JP Morgan Chase GJ20230221-E0142 | 2/21/2023 | JP Morgan Chase | Nicholas Luna |
| GJE0143 USAA GJ20230221-E0143 | 2/21/2023 | USAA Federal Savings Bank | Sean Dollman |
| GJE0154 Patrick Corrigan GJ20230223-E0154 | 2/23/2023 | Patrick Corrigan | Patrick Corrigan |
| GJE0155 Wesley Denton GJ20230223-E0155 | 2/23/2023 | Wesley Denton | Wesley Denton |
| GJE0150 Iterable GJ20230222-E0150 | 3/1/2023 | Iterable, Inc. | Iterable, Inc.; XX.donaldtrump.XX; XX@victory.trump.XX; XX@theamericanvoter.XX; XX@mail.secureconservative.XX; XX@ourpresident45.XX; Trump Make America Great Again Committee; The Republican National Committee; Donald J. Trump for President; DataPier; Alex Cannon; Sean Dollman; Darren Centinello |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0161 American Express GJ20230302-E0161 | 3/2/2023 | American Express/Datamark | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0162 Bank of America GJ20230302-E0162 | 3/2/2023 | Bank of America, N.A. | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0163 Barclays GJ20230302-E0163 | 3/2/2023 | Barclays Bank of Delaware | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0164 Citibank GJ20230302-E0164 | 3/2/2023 | Citibank, N.A. | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0165 Discover GJ20230302-E0165 | 3/2/2023 | Discover Financial Services | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0166 Elan GJ20230302 E0166 | 3/2/2023 | Elan Financial Services | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0167 JP Morgan Chase GJ20230302-E0167 | 3/2/2023 | JP Morgan Chase | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0168 PNC GJ20230302-E0168 | 3/2/2023 | PNC Bank | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0169 TIAA GJ20230302-E0169 | 3/2/2023 | TIAA Bank | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0170 USAA GJ20230302-E0170 | 3/2/2023 | USAA Federal Savings Bank | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0187 The McEntee Group GJ20230306-E0187 | 3/6/2023 | The McEntee Group | The McEntee Group |
| GJE0188 Larry Weitzner GJ20230307-E0188 | 3/7/2023 | Larry Weitzner | Larry Weitzner; The Republican National Committee; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President. Inc.; Jason Miller;Jared Kushner, and/or Donald J. Trump; Carlos Cruz, and/or any other person that worked for or with Jamestown Associates; Benjamin Angle; Gary Coby; Alex Cannon; Stewart Crossland; Boris Ephystein; James Fitzpatrick; Newt Gingrich; Rudy Giuliani; Ken Kurson; Jared Kushner; Ronna McDaniel; John McLaughlin; Mark Meadows; Molly Michael; Jason Miller; Tim Murtaugh; Zach Parkinson; Michael Roman; William Stepien; Evan Tracey; Donald J. Trump; Harris Sikes Media, or any employee, agent, contractor, or representative of Harris Sikes Media; The Republican National Committee, or any employee, agent, contractor, or representative of the Republican National Committee; Donald J. Trump for President, Inc.; Save America; Save America Joint Fundraising Committee; Make America Great Again PAC; and/or Trump Make America Great Again Committee, or any employee, agent, contractor, or representative of any of those entities; Any media buyer or representative or agent thereof; and/or Any media outlet or representative or agent of any media outlet, including, but not limited to CBS; RFD TV; Fox News; Fox Business News; OANN, Newsmax, and/or Sinclair. |
| GJE0189 Jamestown Associates GJ20230307-E0189 | 3/7/2023 | Jamestown Associates | Jamestown Associates; The Republican National Committee; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; Jason Miller:Jared Kushner, and/or Donald J. Trump; Benjamin Angle; Gary Coby; Alex Cannon; Stewart Crossland; Boris Ephystein; James Fitzpatrick; Newt Gingrich; Rudy Giuliani; Ken Kurson; Jared Kushner; Ronna McDaniel; John McLaughlin; Mark Meadows; Molly Michael; Jason Miller; Tim Murtaugh; Zach Parkinson; Michael Roman; William Stepien; Evan Tracey; Donald J. Trump; Harris Sikes Media, or any employee, agent, contractor, or representative of Harris Sikes Media; The Republican National Committee, or any employee, agent, contractor, or representative of the Republican National Committee; Donald J. Trump for President, Inc.; Save America; Save America Joint Fundraising Committee; Make America Great Again PAC; and/or Trump Make America Great Again Committee, or any employee, agent, contractor, or representative of any of those entities; Any media buyer or representative or agent thereof; and/or Any media outlet or representative or agent of any media outlet, including, but not limited to CBS; RFD TV; Fox News; Fox Business News; OANN, Newsmax, and/or Sinclair. |
| GJE0190 Iberia GJ20230307-E0190 | 3/7/2023 | Iberia Bank | Bradley Parscale; Candice Parscale |
| GJE0193 Bank of America GJ20230307-E0193 | 3/8/2023 | Bank of America | DirectSnd LLC |
| GJE0194 Citizens Bank GJ20230307-E0194 | 3/8/2023 | Citizens Bank, N.A. | Simpatico Software Systems, Inc |
| GJE0195 PNC Bank GJ20230307-E0195 | 3/8/2023 | PNC Bank | Berkeley Research Group, LLC; East Bay Dispute & Advisory, LLC; Known Acct: # |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0201 Bay State Savings Bank GJ20230309-E0201 | 3/9/2023 | Bay State Savings Bank | Audrew Surabian; Account Number: |
| GJE0217 FP1 Strategies subpoena GJ20230314-E0217 | 3/15/2023 | FP1 Strategies | FP1 Strategies; the Republican National Committee, The Trump Make America Great Again PAC, Donald J. Trump for President Inc., Save America and/or the Save America Joint Fundraising Committee, or their agents, contractors, and/or representatives; FP1, any of its employees, agents, and/or contractors (including, but not limited to Chris Georgia), and anyone affiliated, directly or indirectly, with any of the Entities (including but not limited to Austin Boedigheimer, Kevin Zambrano, Gary Coby, Jared Kushner, Sean Dollman, and/or Alex Cannon |
| GJE0220 Alex Murglin GJ20230315-E0220 | 3/15/2023 | Alex Murglin | Alex Murglin; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle: Rudy Giuliani: Jason Miller: Andrew Surabian: Donald Trump, Jr.: Eric Trump: Lara Trump: Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Michael Ahrens; Hanna Allred; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters; and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0222 Kevin Zambrano GJ20230315-E0222 | 3/15/2023 | Kevin Zambrano | Kevin Zambrano; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; , Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Michael Ahrens; Hanna Allred; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; and/or Richard Walters; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0223 Michael Ahrens GJ20230315-E0223 | 3/15/2023 | Michael Ahrens | Michael Ahrens; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC. Save America. and/or Save American Joint Fundraising Committee; Trello: Salesforce, FP1 Strategies; WinRed. Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer. Julia Trent; Richard Walters and/or Kevin Zumbrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0224 Hanna Allred GJ20230315-E0224 | 3/15/2023 | Hanna Allred | Hanna Allred; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Michael Ahrens; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Romna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters; and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0225 Austin Boedigheimer GJ20230315-E0225 | 3/15/2023 | Austin Boedigheimer | Austin Boedigheimer; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed. Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Michael Ahrens; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Romna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters; and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save AmericaJFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0226 Cassie Docksey GJ20230315-E0226 | 3/15/2023 | Cassie Docksey | Cassie Docksey; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Michael Ahrens; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters; and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0258 Red Spark Strategy (mkv) subpoena GJ20230314-E0219 | 3/15/2023 | Red Spnrk Strategy | Red Spark Strategy; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; and/or Donald J. Trump for President, Inc. |
| GJE0218 Christopher Georgia GJ20230314-E0218 | 3/17/2023 | Christopher Georgia | Christopher Georgia; Republican National Committee, The Trump Make America Great Again PAC, Donald J. Trump for President Inc., Save America and/or the Save America Joint Fundraising Committee, or their agents, contractors, and/or representatives; FP1, any of its employees, agents, and/or contractors (including, but not limited to Chris Georgia), and anyone affiliated, directly or indirectly, with any of the Entities (including but not limited to Austin Boedigheimer, Kevin Zambrano, Gary Coby, Jared Kushner, Sean Dollman, and/or Alex Cannon |
| GJE0227 Atlassian GJ20230316-E0227 | 3/20/2023 | Atlassian Inc. | The Republican National Committee; Trump Make America Great Again Committee; The Republican National Committee; Donald J. Trump for President; Accounts associated with the domain @gop.com, including accounts with users associated with<br>the following email addresses:<br>a. XX@gop.com<br>b. XX@gop.com<br>c. XX@gop.com<br>d. XX@gop.com<br>e. XX@gop.com |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0232 Alex Blinkoff GJ20230317-E0232 | 3/20/2023 | Alex Blinkoff | Alex Blinkoff; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC. Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0235 Karla Howard GJ20230317-E0235 | 3/20/2023 | Karla Howard | Karla Howard; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion |
| GJE0236 Ashley Grace Novak GJ20230317-E0236 | 3/20/2023 | Ashley Grace Novak | Ashley Grace Novak; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Joe Ascioti; Jeff Aubin; Austin Bodeigheimer; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20. 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0242 StraTech Solutions GJ20230320-E0242 | 3/20/2023 | StraTech Solutions, a/k/a StraTech LLC | StraTech Solutions, a/k/a StraTech LLC; Save America; Save America Joint Fundraising Committee; Trump Make America Great Again Committee; Make America Great Again PAC; Donald J. Trump for President, Inc.; American Voting Rights Foundation; Cyber Ninjas, Inc.; Michael Roman; Steven Miller (as spelled in subpoena); Douglas Logan; Arizona State Senate; and/or Any member of the Arizona State Senate and/or an any affiliate thereof; Conservative Partnership Institute, American Voting Rights Foundation, Trump Make America Great Again Committee, Make America Great Again PAC, Donald J. Trump for President, Inc., Save America, and/or the Save America Joint Fundraising Committee; Donald J. Trump, Mark Meadows, Cleta Mitchell, Stephen Miller, Patrick Corrigan, Edward Corrigan, Thomas Datwyler, Michael Roman, Christina Bobb, Douglas Logan and/or any representative or employee of any of those individuals or any representative or employee of National Capital Bank regarding or related Cyber Ninjas, Inc.; American Voting Rights Foundation |
| GJE0253 Joe Ascioti (mkv) subpoena GJ20230317-E0237 | 3/20/2023 | Joe Ascioti | Joe Ascioti; the Republican Nationnl Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle; Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Jeff Aubin; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC. Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |

# Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0254 Jeff Aubin (mkv) subpoena GJ20230317-E0231 | 3/20/2023 | Jeff Aubin | Jeff Aubin; the Republican National Camnuttee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategics; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle: Rudy Giuliani; Jason Miller: Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who wasemployed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Joe Ascioti; Austin Bodcigheimer: Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save AmericaJFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategics; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0255 Julia Trent (mkv) subpoena GJ20230317-E0234 | 3/20/2023 | Julia Trent | Julia Trent; the Republican National Committee, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee; Trello; Salesforce, FP1 Strategies; WinRed, Harris Sikes Media; Opn Sesame; and/or Direct Persuasion; Benjamin Angle: Rudy Giuliani; Jason Miller; Andrew Surabian; Donald Trump, Jr.; Eric Trump; Lara Trump; Any individual who was employed by the Republican National Committee between November 1, 2020 and January 20, 2021, including but not limited to, Hanna Allred; Joe Ascioti; Austin Bodeigheimer; Alex Blinkoff; Cassie Docksey; Karla Howard; Ethan Katz; Jenna Kirsch; Ronna McDaniel; Alex Murglin; Ashley Grace Novak; Michael Reed; Justin Reimer; Julia Trent; Richard Walters and/or Kevin Zambrano; Any employee, contractor, or agent of Donald J. Trump for President, Inc., including but not limited to Alex Cannon; Darren Centinello; Justin Clark; Dan Cleary; Gary Coby; Sean Dollman; Jacki Kotkiewicz; Jared Kushner; Tim Murtaugh; Jason Miller; Zachary Parkinson; Bradley Parscale; William Stepien; Andrew Surabian; Matt Van Hyfte; and/or Matt Wolking; Any individual who had an official or unofficial role in the White House between November 1, 2020 and January 20, 2021, including but not limited to Jared Kushner; Any employee, contractor, or agent of Make America Great Again PAC, Trump Make America Great Again Committee; Save America and/or Save America JFC; and/or Any employee, contractor, or agent of Salesforce, FP1 Strategies; WinRed, Harris Sikes Media, Opn Sesame; and/or Direct Persuasion. |
| GJE0247 Merrill Lynch GJ20230321-E0247 | 3/21/2023 | Merrill Lynch, Pierce, Fenner & Smith, Inc. | Jeffrey Clark; John Eastman; Rudy Giuliani |
| GJE0249 Iterable GJ20230322-E0249 | 3/23/2023 | Iterable, Inc. | Iterable, Inc.; DataPier, Donald J. Trump for President, Inc. ("Trump Campaign"), the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising Committee and/or any employees, agents, and/or representatives, including but not limited to Alex Cannon, Sean Dollman, and/or Darren Centinello |
| GJE0250 Silicon Valley Bank GJ20230323-E0250 | 3/23/2023 | Silicon Valley Bridge Bank, N.A. | Gary Coby; Account Number: ; Account Number: : Account Number: |
| GJE0251 Navy Federal GJ20230323-E0251 | 3/23/2023 | Navy Federal Credit Union | Sean Dollman |
| GJE0252 Bank of America GJ20230323-E0252 | 3/23/2023 | Bank of America, N.A. | Sean Dollmm |
| GJE0262 Save America JFC GJ20230324-E0262 | 3/24/2023 | Save America Joint Fundraising Committee | Save America Joint Fundmising Committee; the Trump Administration and/or Donald J. Trump for President and current and/or former employees, contractors. agents and/or representatives of Save America, Make America Great Again PAC, Trump Make America Great Again Committee, Save America Joint Fundraising Committee, Mar-A-Lago LLC, and/or the 45 Office who are or who have had any legal bills paid by one or more of Save America, Make America Great Again PAC, Trump Make America Great Again Committee and/or Save America Joint Fundraising Committee; Abel Bean Law P.A.; Akin Gump Strauss Hauer & Feld; Bedell, Dittmar, DeVault, Pillans; Brand Woodward Law; Cadwalader, Wickersham & Taft; Clark Hill PLC; Compass Legal Group; Compass Legal Services, Inc; Dhillon Law Group Inc; Earth & Water Law LLC; Elections, LLC; Greenberg Traurig; Jones Day; JPRowley Law PLLC; Kasowitz, Benson, Torress LLP; Marino, Tortorella & Boyle, P.C.; McGuireWoods LLP; Mintz Levin Cohn Ferris Glovsk; Neal & Harwell, PLC; Nelson Mullins Riley & Scarborough; Parlatore Law Group, LLP; Squire Patton Boggs (US) LLP; Statecraft PLLC; The Binnall Law Group; The Garber Group LLCC. Documents sufficient to show all retainer payments and/orother payments made to any attorney and/or law firm to represent any of the individuals in Topic B since Janumy 6, 2021. |

## Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0263 Save America GJ20230324-E0263 | 3/24/2023 | Save America | Save America; all former employees, contmctors, agents and/or representatives of the Trump Administmtion and/or Donald J. Trump for President and current and/or former employees, contractors, agents and/or representatives of Save America, Make America Great Again PAC, Trump Make America Great Again Committee, Save America Joint Fundmising Committee, Mar-A-Lago LLC, and/or the 45 Office who are or who have had any legal bills paid by one or more of Save America, Make America Great Again PAC, Trump Make America Great Again Committee and/or Save America Joint Fundraising Committee since January 6, 2021.; 1. Abel Bean Law P.A.; 2. Akin Gump Stmuss Hauer & Feld; 3. Bedell, Dittmar, DeVault, Pillams; 4. Brand Woodward Law; 5. Cadwalader, Wickersham & Taft; 6. Clark Hill PLC; 7. Compass Legal Group; 8. Compass Legal Services, Inc; 9. Dhillon Law Group Inc; 10. Earth & Water Law LLC; 11. Elections, LLC; 12. Greenberg Tmurig; 13. Jones Day; 14. JPRowley Law PLLC; 15. Kasowitz, Benson, Torress LLP; 16. Marino, Tortorella & Boyle, P.C.; 17. McGuireWoods LLP; 18. Mintz Levin Colm Ferris Glovsk; 19. Neal & Harwell, PLC; 20. Nelson Mullins Riley & Searborough; 21. Parlatore Law Group, LLP; 22. Squire Patton Boggs (US) LLP; 23. Statecraft PLLC; 24. The Binnall Law Group; 25. The Garber Group LLC; |
| GJE0264 MAGA PAC GJ20230324-E0264 | 3/24/2023 | Make America Great Again PAC | Make America Great Again PAC; the Trump Administration and/or Donald J. Trump for President and current and/or former employees, coutractors, agents and/or representatives of Save America, Make America Great Again PAC, Trump Make America Great Again Committee, Save America Joint Fundraising Committee, Mar-A-Lago LLC, and/or the 45 Office who are or who have had any legal bills paid by one or more of Save America, Make America Great Again PAC, Trump Make America Great Again Committee and/or Save America Joint Fundraising Committee; Abel Bean Law P.A.; Akin Gump Strauss Hauer & Feld; Bedell, Dittmar, DeVault, Pillans: Brand Woodward Law; Cadwalader, Wickersham & Taft; Clark Hill PLC; Compass Legal Group; Compass Legal Services, Inc; Dhillon Law Group Inc; Earth & Water Law LLC; Elections, LLC; Greenberg Traurig; Jones Day; JPRowley Law PLLC; Kasowitz, Benson, Torress LLP, Marino, Tortorella & Boyle, P.C.; McGuireWoods LLP; Mintz Levin Colm Ferris Glovsk; Neal & Harwell, PLC; Nelson Mullins Riley & Scarborough; Parlatore Law Group, LLP; Squire Patton Boggs (US) LLP; Statecraft PLLC; The Binnall Law Group; The Garber Group LLCC. Documents sufficient to show all retainer payments and/or other payments made to any attorney and/or law firm to represent any of the individuals in Topic B since January 6, 2021. |
| GJE0265 TMAGAC GJ20230324-E0265 | 3/24/2023 | Trump Make America Great Again Committee | Trump Make America Great Again Committee; the Trump Administration and/or Donald J. Trump for President and current and/or former employees, contmctors, agents and/or representatives of Save America, Make America Great Again PAC, Trump Make America Great Again Committee, Save America Joint Fundraising Committee, Mar-A-Lago LLC, and/or the 45 Office who are or who have had any legal bills paid by one or more of Save America, Make America Great Again PAC, Trump Make America Great Again Committee and/or Save America Joint Fundraising Committee; Abel Bean Law P.A.; Akin Gump Strauss Hauer & Feld; Bedell, Dittmar, DeVault, Pillans; Brand Woodward Law; Cadwalader, Wickersham & Taft; Clark Hill PLC; Compass Legal Group; Compass Legal Services, Inc; Dhillon Law Group Inc; Earth & WaterLaw LLC; Elections, LLC; Greenberg Traurig; Jones Day; JPRowley Law PLLC; Kasowitz, Benson, Torress LLP; Marino, Tortorella & Boyle, P.C.; McGuireWoods LLP; Mintz Levin Colm Ferris Glovsk; Neal & Harwell, PLC; Nelson Mullins Riley & Scarborough; Parlatore Law Group, LLP; Squire Patton Boggs (US) LLP; Statecraft PLLC; The Binnall Law Group; The Garber Group LLCC. Documents sufficient to show all retainer payments and/orother payments made to any attorney and/or law firm to represent any of the individuals in Topic B since January 6, 2021. |
| GJE0248 JP Morgan Chase GJ20230322-E0248 | 3/28/2023 | JP Morgan Cha iase | Trump Media & Technology Group Corp; Including, but not limited to account number: |
| GJE0277 Matthew Wolking GJ20230403-E0277 | 4/4/2023 | Matthew Wolking | Matthew Wolking; the Donald J. Trump for President, Inc. ("Trump Campaign"), the Republican National Committee, the Trump Make American Great Again Committee, the Make America Great Again PAC, Save America, and/or Save American Joint Fundraising ; American Made Media Consultants |
| GJE0290 Chain Bridge Bank (mkv) subpoena GJ20230406-E0290 | 4/7/2023 | Chain Bridge Bank | Any and all itemtions of Make America Great Again and related entities; Known account ending in ; Known account ending in |
| GJE0291 Chain Bridge Bank (mkv) subpoena GJ20230406-E0291 | 4/7/2023 | Chain Bridge Bank | Justin Clark; Known Account: |
| GJE0292 Capital One GJ20230406-E0292 | 4/7/2023 | Capital One, N.A. | Justin Clark |
| GJE0296 Flagstar GJ20230410-E0296 | 4/11/2023 | Flagstar Bank, N.A. | Rudolph Giuliani; Rudolph W Giuliani PLLC; Giuliani Partners LLC; Giuliani Security & Safety LLC |
| GJE0297 Apple GJ20230413-E0297 | 4/14/2023 | Apple, Inc. | DJT and the J6 Prison Choir |
| American Fuuds Service Company (ebp) subpoena GJ20230419-E0307 | 4/20/2023 | American Funds Service Company | Jeffree Clark |
| GJE0308 Coinbase GJ20230419-E0308 | 4/20/2023 | Coinbase, Inc. | Jeffrey Clark |

Compiled by Senate Judiciary Committee Staff

| | | | |
|---|---|---|---|
| GJE0309 Early Warning Services GJ20230419-E0309 | 4/20/2023 | Early Warning Services LLC | Jeffrey Clark; John Eastman |
| GJE0310 Fidelity GJ20230419-E0310 | 4/20/2023 | Fidelity Investments | Jeffrey Clark; John Eastman |
| Wells Fargo (ebp) subpoena GJ20230419-E0312 | 4/20/2023 | Wells Fargo Bank, N.A. | Jeffrey Clark |
| GJE0333 PNC Bank-BBVA USA GJ20230504-E0333 | 5/8/2023 | PNC Bank/BBVA USA dba BBVA Compass Bank | 2M Document Management & Imaging, LLC |
| GJE0338 JP Morgan Chase (mkv) subpoena GJ20230510-E0338 | 5/11/2023 | JP Morgan Chase | Robert R Gasaway |
| GJE0351 JP Morgan Securities (ebp) subpoena GJ20230519-E0351 | 5/19/2023 | JP Morgan Securities, LLC | Robert R Gasaway |
| GJE0352 JP Morgan Chase (ebp) subpoena GJ20230519-E0352 | 5/19/2023 | JP Morgan Chase | Sean Dollman |
| GJE0371 Vanguard Group GJ20230601-E0371 | 6/1/2023 | The Vanguard Group, Inc. | Robert R Gasaway |

# Mike Lindell Says American Express Slashed MyPillow's Credit Line

BI www.businessinsider.com/mike-lindell-says-american-express-slashed-mypillow-credit-line-2023-9

Kwan Wei Kevin Tan

September 27, 2023



MyPillow CEO Mike Lindell Octavio Jones via Getty Images

- Mike Lindell said MyPillow was left crippled after American Express slashed their credit line.
- "No reason, no explanation, just dropped it down last Tuesday," he said on the "War Room" podcast.
- A Minnesota bank previously terminated Lindell as a client after calling him a "reputation risk."

MyPillow CEO Mike Lindell said that his company has been crippled by American Express's decision to slash its credit line.

"Steve, we really need everybody's help right now. We have things going on I'm going to let you all know this week," Lindell told fellow Trump ally Steve Bannon on the latter's "War Room" podcast on Monday.

EXHIBIT D

Lindell said on the podcast that a sudden reduction in MyPillow's credit line with American Express was seriously affecting the company. Lindell told Bannon that MyPillow had been using American Express's services for the past 15 years.

"Out of the blue, they took our credit line from a million dollars down to $100,000," Lindell said. "Just cripples MyPillow. No reason, no explanation, just dropped it down last Tuesday."

A spokesperson for American Express told Insider that they weren't able to address Lindell's claims directly.

"We can't comment on specific customer accounts or applications, but I can tell you that American Express does not make customer decisions based on personal views or political affiliations," the spokesperson said.

This isn't the first time Lindell has had trouble securing credit for his company.

In February 2022, Lindell was terminated as a client by the Minnesota Bank & Trust a month after the bank called him a "reputation risk."

The pillow magnate has been a staunch advocate of former President Donald Trump's groundless election fraud claims. Lindell's avowed support for Trump, however, has greatly impacted his pillow business.

In July, Lindell auctioned off equipment from his pillow factory in Minnesota. Lindell said at the time that he was hawking equipment after the company lost more than $100 million in retail sales.

Lindell is also fending off a billion-dollar defamation lawsuit from voting technology company Dominion Voting Systems, and another from Smartmatic over claims that he made about both companies' role in the 2020 election.

Representatives for MyPillow did not immediately respond to a request for comment from Insider sent outside regular business hours.

***Editor's note: September 28, 2023 — This story has been updated with comments from an American Express representative.***

# Fox News stops running MyPillow commercials in a payment dispute with election denier Mike Lindell



FILE - MyPillow chief executive Mike Lindell, speaks to reporters outside federal court in Washington, June 24, 2021. MyPillow chief executive and prominent election denier Mike Lindell said Friday, Jan. 12, 2024 that Fox News has stopped running his company's commercials, disputing the network's assertion that it's simply because he hasn't paid his bills. (AP Photo/Manuel Balce Ceneta, File) Read More



BY STEVE KARNOWSKI
Updated 8:35 PM CST, January 12, 2024



How bomb cyclones form and create dangerous conditions

MINNEAPOLIS (AP) — MyPillow chief executive and prominent election
Fox News has stopped running his company's commercials, disputing t
because he hasn't paid his bills.

Lindell went public by tweeting that Fox, which had been one of MyPill
canceled him. He said in his tweet that he didn't know why but that he suspected that the network was trying

EXHIBIT E

to silence him. Fox denied that.

Losing Fox was just the latest in a series of financial and legal setbacks for Minnesota-based MyPillow and Lindell, who continues to propagate former President Donald Trump's lies that the 2020 election was stolen from him, in part by rigged voting machine systems. Several big-box retailers, including Walmart, have discontinued his products, and lawyers who were defending him against defamation lawsuits by voting machine companies quit.

ADVERTISEMENT

"As soon as their account is paid, we would be happy to accept their advertising," Fox spokeswoman Irena Briganti said.

In an interview with The Associated Press, Lindell acknowledged that MyPillow owes money to Fox. He put the figure at $7.8 million, but he insisted that the sum is within his credit line with the network. He said MyPillow has long spent an average of $1 million a week to run its ads on Fox. And he said the network had long allowed him 12 weeks of credit until it recently cut that to eight weeks.

Lindell said he believes Fox wants to silence him "because I want to secure our election platforms" — an assertion that Fox disputes. And he said he suspects the network is sore because his Lindell TV/FrankSpeech online channel recently hired former Fox Business host Lou Dobbs, whose debut show on Monday night featured an interview with Trump, who made further false claims that the 2020 election was rigged.

Fox last April agreed to pay Dominion Voting Systems nearly $800 million to avert a trial in the voting machine company's lawsuit that would have exposed how the network promoted lies about the 2020 election on shows by Dobbs and other hosts. Fox canceled Dobbs' show three years ago.

State of the Union LIVE Winter weather Kara Braxton dies Kash Patel Attia resigns



Save $1000/month vs. owning a car

Zipcar covers gas, plus your first month of membership. Jc
instantly and drive in minutes.

AD Zipcar LEA

Lindell acknowledged in an interview in October that he owed two law firms that were defending him against lawsuits by Dominion and Smartmatic millions of dollars that he couldn't pay, which is why they quit. He said MyPillow had been "decimated."

But Lindell insisted Friday that MyPillow is "doing great." He said it's still running ads on another conservative network, Newsmax, and on his own platforms. But he conceded that losing Fox will hurt the business and said he would run his ads there again if Fox would take them.

"Obviously, it would be great if Fox said, 'Hey, come back,'" Lindell said.



**STEVE KARNOWSKI**

Karnowski covers politics and government from Minnesota for The Associated Press. He also covers the ongoing fallout from the murder of George Floyd, courts and the environment, among other topics.

## Conversation

All comments are subject to our Community Guidelines.

Please note that comments are not moderated immediately — every post is reviewed before appearing publicly to ensure it meets our community guidelines. This means there may be a delay before your comment is visible.

Start the conversation

ALL COMMENTS

NEWEST

Powered by viafoura

News Article ⓘ

# Mike Lindell Insists MyPillow Is Not Going Out of Business

PUBLISHED UPDATED

OCT 27, 2023 AT 11:57 AM EDT OCT 27, 2023 AT 04:29 PM EDT



MyPillow CEO Mike Lindell greets guests at the Trump National Golf Club on June 13 in Bedminster, New Jersey. Despite recent statements suggest **Read More** | *Spencer Platt/Getty Images/Spencer Platt/Getty Images*

**EXHIBIT F**

Newsweek U.S. Global Lifestyle Opinion Rankings Social Extra Sub

Prefer Newsweek on Google to see more of our trusted coverage when you search.

Despite recent statements suggesting the contrary, Mike Lindell insisted on Thursday that his business, MyPillow, is not about to go out of business.

Lindell owes much of his fame and capital to the founding of the company, which sells a special pillow filled with interlocking pieces of shredded foam. However, he has recently come under the spotlight for the struggle he's facing funding his legal defense in three defamation cases where he's accused of spreading lies about the 2020 presidential election.

ADVERTISING

Lindell has been a loyal Donald Trump supporter and adviser for years, as well as one of the main people financing the former president's attempts to overturn the results of the 2020 election and spreading claims that it was rigged due to widespread voter fraud. Such claims of electoral fraud, meanwhile, have been repeatedly rejected in court and by independent election experts.

Read More

Ron DeSantis Slammed by Florida's Largest Newspaper in Scathing Article
5 min read





**Mike Lindell Says MyPillow Facing 'Full-Blown Attack'**

4 min read



For his role in spreading these claims, Lindell is now facing defamation cases brought about by voting machine manufacturers Dominion Voting Systems, Smartmatic and Eric Coomer, a former Dominion employee. The voting machine manufactures have argued their reputations were significantly damaged by Lindell's claims. The MyPillow CEO has also said he faces several Internal Revenue Service (IRS) audits.



MyPillow CEO Mike Lindell greets guests before the start of a speech by former U.S. President Donald Trump at the Trump National Golf Club on J **Read More** | *Spencer Platt/Getty Images/Spencer Platt/Getty Images*

Legal processes have left Lindell on the brink of bankruptcy, leading him to say that he "lost everything, every dime." Earlier this month, Lindell told *Newsweek* he hadn't been able to pay his

ADVERTISING

"We haven't been able to pay them [lawyers] for the past couple of months," he said. "These lawyers were courageous. They took on a case where every other lawyer in this country are afraid to take on any case against the electronic voting machines and the evil that's out there. This was a great group of attorneys... and they need to get paid; and if there's no money to pay them, they can't keep going."

Speaking to Jack Posobiec on Real America's Voice on Thursday, Lindell said his company had suffered a few financial blows in the past few months, but was still selling pillows.

"They're attacking my employees," he said. "We're being defunded, debanked, our merchant server...they come after MyPillow in so many ways because they want me silenced about fixing our election platforms or securing them. But at MyPillow we're getting through. For the last four or five months, they turned up the heat on us."

The MyPillow CEO accused the IRS of reaching out to his employees working from home to tell them that it doesn't want them to work on commission from home, and added that American Express debanked them "out of the blue."

ADVERTISING

Debanking happens when a bank closes all of a customer's accounts, making it impossible for the customer to continue operating with them. Minnesota Bank & Trust debanked Lindell last year, Business Insider reported.

"It's an all-out attack, I believe it's really planned. I believe it's whatever they can do to destroy MyPillow. But you know what, everyone responded with sales, everyone is buying our great products," Lindell told Posobiec during their interview.

*Newsweek* contacted MyPillow, the IRS and American Express for comment by email.

Speaking previously with Steve Bannon, former White House senior adviser to Trump and now host of the War Room podcast, Lindell vowed that he would not settle with Dominion and Smartmatic and that he'd "never stop fighting no matter" while reiterating false claims about the 2020 election.

ADVERTISING

10.29.2025

# *NEW: Jack Smith Subpoenaed Records for Over 400 Republican Targets As Part of Arctic Frost*

**WASHINGTON** – Senate Judiciary Committee Chairman Chuck Grassley (R-Iowa) today made public 197 subpoenas former Special Counsel Jack Smith and his team issued as part of the indiscriminate election case against President Trump. Smith's case began at the Biden Federal Bureau of Investigation (FBI) under the codename "Arctic Frost."

The subpoenas, which were provided to Grassley through legally protected whistleblower disclosures, were sent to 34 individuals and 163 businesses. These 197 subpoenas requested testimony, communications and records related to at least 430 named Republican individuals and entities. Some of the records Smith subpoenaed from banks, individuals and businesses included:

- Communications with media companies such as CBS, Fox News, Fox Business, Newsmax, Sinclair and others.
- Communications with "any member, employee or agent of the Legislative Branch of the U.S. Government."
- Communications with White House advisors, such as Stephen Miller, Dan Scavino, Jared Kushner, Lara Trump and others.
- Statistical data and analysis relating to donors and fundraising efforts.
- Broad financial data relating to conservative individuals and entities.

Grassley unveiled the subpoenas during a press conference alongside Senate Permanent Subcommittee on Investigations Chairman Ron Johnson (R-Wis.) and members of the Senate Judiciary Committee.

**Grassley at today's press conference said, in part:**

"Arctic Frost was the vehicle by which partisan FBI agents and DOJ prosecutors could improperly investigate the entire Republican political apparatus. Contrary to what [Jack] Smith has said publicly, this was clearly a fishing expedition.

"If this happened to the Democrats, they'd be as rightly outraged as we are.

"We're making these records public in the interest of transparency and so that the American people can draw their own conclusions."

A master list of the organizations and individuals Smith subpoenaed is available HERE, compiled by Senate Judiciary Committee staff.

Copies of Smith's subpoenas can be found HERE.

**Learn more about Grassley's Arctic Frost oversight:**

- October 23, 2025: Grassley Responds to Jack Smith Request for a Hearing
- October 23, 2025: Grassley Reveals Garland, Monaco, Wray Gave Personal Sign-Off to Open Arctic Frost
- October 14, 2025: Grassley Demands Telecommunications Companies, Federal Entities Turn Over All Records Provided to Jack Smith
- October 10, 2025: Grassley and Johnson Lead Colleagues in Seeking Release of All DOJ, FBI Records Detailing Biden Administration's Targeting of Sitting Members of Congress
- October 10, 2025: ICYMI: Grassley Oversight of Arctic Frost Yields Ongoing Results and Draws National Attention
- October 6, 2025: Biden FBI Spied on Eight Republican Senators as Part of Arctic Frost Investigation, Grassley Oversight Reveals
- September 16, 2025: Grassley Opens Senate Judiciary FBI Oversight Hearing, Releases Additional Records Demonstrating Political Weaponization and Misconduct at Biden FBI
- April 8, 2025: Grassley, Johnson Release Additional Arctic Frost Records Detailing Sweeping Anti-Trump Investigation
- March 14, 2025: Grassley, Johnson Release Records Showing FBI Obtained Trump, Pence Cell Phones, Conducted Sweeping Interviews to Advance Anti-Trump Arctic Frost Investigation
- February 3, 2025: Grassley Underscores FBI Supervisor Misconduct in Trump-Targeted Arctic Frost Investigation
- January 30, 2025: Grassley Opening Statement on Kash Patel's Nomination to be FBI Director
- January 30, 2025: Grassley, Johnson Make Public Whistleblower Records Revealing DOJ and FBI Plot to Pin Trump in Jack Smith Elector Case



EXHIBIT G

IN THE UNITED STATES
DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE WESTERN
DIVISION

FEDERAL EXPRESS CORPORATION,

Plaintiff,

v.

MY PILLOW, INC. and MICHAEL J. LINDELL,

Defendants.

Civil Action NO. 2:25-cv-02222-JPM-atc

**DECLARATION OF JEREMIAH PILON IN SUPPORT OF DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENTS**

STATE OF MINNESOTA )
)SS.
COUNTY OF CARVER )

I, Jeremiah Pilon, state as follows:

1. I am General Counsel of My Pillow, Inc. ("My Pillow"). I submit this declaration in support of Defendants' Motion to Vacate the Default Judgments. This declaration is based upon my own personal knowledge.

2. I am aware that Plaintiff Federal Express Corporation ("FedEx") claims that, in March of 2025, Joe Schmieg, My Pillow's vice president of sales, signed for FedEx's initial Complaint on behalf of My Pillow. I was not aware of this initial Complaint until after FedEx began its collection efforts, and it is my understanding that neither My Pillow nor Michael J. Lindell ("Lindell") were ever made aware of this

Complaint until after FedEx had obtained default judgments against My Pillow and Lindell and began its collection activities.

3. Schmieg is not an executive officer of My Pillow because he has never been elected by My Pillow's Board of Directors, as required by My Pillow's bylaws. It is my understanding that Schmieg has never had any executive responsibilities; he makes no strategic decisions, and he is not and never has been authorized to bind My Pillow or to accept service of process on behalf of My Pillow. I am also aware that My Pillow has never appointed or otherwise authorized Schmieg to accept service on behalf of My Pillow.

4. I never learned about, or received, FedEx's First Amended Complaint, its motion for default, its motion for default judgment, or the entry of the default and default judgment, or any other documents, notifications, or filings in this matter until after FedEx began its collection efforts.

5. I understand that FedEx has certified that it mailed its Motion for Entry of Default Judgment to My Pillow and Lindell. I did not receive those mailings, and it is my understanding that no one else at My Pillow received those mailings.

6. My Pillow and Lindell would have responded timely if My Pillow, Lindell, or I had been aware of the pending default and subsequent default judgment. We were not.

7. In Paragraph 15 of FedEx's First Amended Complaint, FedEx states that it is quoting from a letter I wrote. I believed that all of the statements I set forth in that letter to be true at the time I wrote that letter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 11, 2026 s/Jeremiah Pilon